# EXHIBIT 2

*DEFENDANTS RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR MANDATORY PRELIMINARY INJUNCTION*

DECLARATION OF

MACK D. MCGHEE,

Deputy Director of the South Carolina Department of Juvenile Justice

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
### COLUMBIA DIVISION

| | |
|---|---|
| South Carolina State Conference Of NAACP; <br><br> Disability Rights of South Carolina; and <br><br> Justice 360; <br>         *Plaintiffs*, <br><br> v. <br><br> South Carolina Department of Juvenile Justice; and <br><br> Eden Hendrick, individually and in her official capacity as Executive Director of the South Carolina Department of Juvenile Justice; <br><br>         *Defendants*. | Case No.: 0:22-cv-01338-MGL-PJG <br><br><br><br> **DECLARATION OF MACK D. MCGHEE** |

    I, Mack D McGhee, upon my personal knowledge, hereby submit this declaration pursuant to 28 U.S.C.§ 1746 and declare under penalty of perjury:

### Background

1. My name is Mack D McGhee. I began work as the Deputy Director of the South Carolina Department of Juvenile Justice (SCDJJ) in April 2022. I have 29 years of progressive experience working in the juvenile justice field. I have worked with youth in the community through diversion programs such as afterschool programs, evening reporting centers, and pre-trial services to youth in secure detention settings as well as youth in long-term correctional settings. I have extensive experience in working with justice involved youth from the least restrictive settings to most secure residential settings. I have run and supervised staff in not only large juvenile detention and treatment centers for both boys and girls involved in the juvenile delinquency system, but also have overseen multiple facilities.

2. I have worked nationally in various jurisdictions from the Cook County Juvenile Temporary Detention Center in Chicago IL to Washington DC's Department of Youth Rehabilitation Services and New York City's Administration for Children Services, Department of Youth & Family Justice. In my career, I have had the opportunity to assist two jurisdictions in successfully exiting federal consent decrees related to conditions of

confinement and now will assist SCDJJ in complying with its current settlement agreement with the Department of Justice.

3. My current role is as the Deputy Director of Security and Operations for SCDJJ. This role requires for me to provide oversight for the five secure facilities operated by SCDJJ which includes the Broad River Road Complex (BRRC), Juvenile Detention Center (JDC), Midlands Evaluation Center (MEC), Upstate Evaluation Center (UEC), and Coastal Evaluation Center (CEC). In this role, I am responsible for the custody, care, security and management of all youth who come into our care from admission to release. It is my role to ensure the care, welfare, safety and security for all youth and staff through implementing best practices and nationally accepted security and safety measures related to staffing ratios and safety & security protocols.

4. SCDJJ has been in the process of assessing all security infrastructure within all facilities to include doors, windows, locks, cameras and all other security issues and concerns system wide. Doors and windows in multiple facilities found to not be secure or not be built with secure materials are being replaced. Locks on certain spaces that did not meet security requirements were removed and replaced. That work is substantial across all of the five facilities and continues.

5. State-of-the-art cameras have been added to BRRC to provide full coverage of all spaces where youth may be, to include the school, pods, units, hallways, courtyards, outdoor areas, gyms, multi-purpose spaces, offices, and the like. The camera installation at BRRC is almost complete and should be fully installed by the end of June 2022.

6. SCDJJ is currently working actively with our new Human Resources Director as well as an outside recruitment firm to aggressively recruit and onboard Juvenile Correctional Officers (JCOs) with the goal of not only meeting the 1:8 staff to youth ratio at all SCDJJ facilities but eventually exceed that standard in particular units with more challenging populations. More staff and the addition of cameras will allow for more active supervision of youth. We have recently seen an uptick in candidates and hiring.

7. Further, SCDJJ is revising its investigations policy to require an incident review of certain types of incidents, to include youth assaults. SCDJJ will ensure that all uses of force or restraint, allegations of physical harm to youth from other youth, and even the improper use of isolation receive an initial review, including review of the incident report, use of force report, and video, if applicable. SCDJJ will track every use of force or restraint, allegation of youth-on-youth harm, or the improper use of isolation incident that receives an initial review, the outcome of that review, and the basis for that determination.

8. All incidents where: (1) a youth or someone on the youth's behalf files a grievance or an informal complaint of youth-on-youth physical harm from fights or assaults, uses of force or restraint, or the improper use of isolation; or (2) where the initial review described above indicates conduct may be in violation of criminal law (excluding Assault and Battery 3rd degree involving a youth perpetrator) or agency policy will be fully investigated by trained investigators with no involvement or personal interest in the underlying event. A full

investigation conducted by a SCDJJ investigator will be completed within ten business days of the investigator receiving the allegation for investigation.

9. Our current Investigations policy draft indicates that a full investigation must include, but may not be limited to:
    i. Interviews with the alleged victim, the alleged perpetrator, all officers present during the incident, and any other witnesses;
    ii. Review of any documentation that exists, including the incident report, youth's grievance, if applicable, use of force report, and witness statements;
    iii. Review of a video of the incident, if one exists; and
    iv. A written report documenting the investigation and the conclusion(s).

If the initial review of a use of force or restraint does not result in a full investigation, the investigator will send all documentation, including the incident report, use of force report, and video, if available, to the impacted Deputy Director(s). The impacted Deputy Director(s) will ensure that the employee's Senior Manager reviews the documentation and video, if available, to evaluate proper techniques and de-escalation efforts. Upon this review, the Senior Manager will provide staff feedback as appropriate to reinforce or correct staff.

10. These processes are new to SCDJJ but will result in better oversight of fights, assaults and other incidents. All of this will be documented and reviewed for sufficiency. We recognize that youth nor staff should be subjected to assaults and should be protected.

11. SCDJJ has a mixed population of youth, some of whom have significant mental health needs. Our facility mental health team does an excellent job despite challenging circumstances. SCDJJ coordinates with the Department of Mental Health (DMH) to ensure they serve the seriously mentally ill youth who enter the DJJ system. We have made multiple efforts to see that these youth are served in the least restrictive system and have recently requested $20 million to build a facility that will be run by DMH specifically for youth with these needs. Our plan is for DMH to identify placements for youth with serious mental illness and ensure transfer of them to DMH custody for treatment. Currently, we are assessing youth, staffing them for placement and following up with DMH to place them.

12. The population surge at JDC has resulted in processes put in place to manage youth such as splitting up groups for recreation and allowing some youth out while others stay in their rooms so that staff are able to more safely supervise youth. This is not ideal but has been done for safety purposes. Youth on occasion do sleep on molded beds with mattresses on them on the floor when space is at a premium. Though we would rather each youth have a room, these beds are used nationally and can be found in nearly every facility as an option when a facility is over regular bed capacity. SCDJJ is actively working with judges and others to reduce the number of youth in detention and hire more staff to supervise the youth who are there.

13. SCDJJ has actively worked with the legislature to pass juvenile justice reform laws that would lessen the number of youth detained, especially for status offenses, however the

legislature has not passed it yet despite our efforts, and this means SCDJJ has to manage those youth in our facilities.

14. SCDJJ is currently acting to significantly reduce the use of youth-requested and involuntary isolation. First, we have significantly decreased isolation usage at BRRC in the past six months. Where there were often multiple youth in isolation for extended periods of time, we have a process in place where the facility administrator has to approve isolation use and discussions and options to manage behavior without isolating youth have been successful. Often there are no youth at all in isolation.

15. We are currently revising our isolation policy to disallow isolation for punitive or disciplinary measures, protective custody or suicidality. Youth will only be isolated when the youth poses a serious and immediate danger to self or others and staff has made reasonable efforts to attempt and exhaust de-escalation strategies. Prior to using isolation, staff will utilize less restrictive techniques, such as talking with the youth to de-escalate the situation, removing the youth from other youths with whom he is in conflict, and placing the youth in another housing unit if safe to do so. Only after less restrictive techniques have failed may the facility use isolation.

16. The agency is moving in a direction more consistent with national practices around isolation use. SCDJJ's isolation procedures will include that youth will not remain in isolation for longer than four hours, except when approved by security leadership in the chain of command from Assistant Facility Administrator to Deputy Director. Within the first 24 hours of isolation, and every day thereafter, a qualified mental health professional must examine the youth in-person and document whether:

    a. The youth poses a serious and immediate danger to self or others;
    b. The continued use of isolation will be detrimental to the youth's current mental health; and
    c. Less restrictive measures may help to eliminate the serious and immediate danger to the youth or others.

    Prior to extending isolation beyond four hours, and every day thereafter, the Assistant Facility Administrator, Facility Administrator, or other security leadership in the chain of command up to Deputy Director must visit the youth in-person, review any completed findings of the mental health staff, talk to relevant staff, and document whether staff used less restrictive measures prior to using isolation and the effectiveness of those measures; and if the youth poses a serious and immediate danger to self or others.

17. SCDJJ will ensure that documentation of isolation identifies with specificity what youth action created a serious and immediate danger to self or others necessitating the use of isolation, and what less restrictive techniques an officer used prior to using isolation. SCDJJ has developed an electronic Youth Activity Management System (YAMS) that tracks youth entry and exit into isolation for more accurate data. This bar code/QR code system can also be used to track youth going to school, getting medications, and any other activity for which SCDJJ needs tracking. The IT Division is expected to have the QR Code

cases made and installed by mid-June. Once those are ready, they will work with the FA to inform BRRC staff and begin the process of using YAMS, to include training, implementation and tracking of progress. If successful, the YAMS system may be rolled out to other DJJ facilities statewide.

18. SCDJJ has been working on improving food service and items to include cleanliness and safe handling. We recently deep cleaned the kitchen at BRRC, which serves youth at BRRC, JDC and MEC, and have contracted with a registered dietician to improve the amount of food the youth are offered as well as the quality of each meal. Youth always have access to clean water. Recently, water coolers have been placed in designated recreation areas such as gyms.

19. In addition to treatment and education, order and structure are vital to juvenile facilities. We are moving to a clear and detailed facility schedule that will set the day for each facility and its youth. At BRRC for example, there has historically been a lack of schedule adherence, some of it due to lack of staffing. We are currently building a 24-hour schedule for each unit that will be followed and oversight provided via quality assurance measures. Keeping youth busy and physically active, in school for a full day, in therapeutic groups, working, and improving themselves is only possible through a structured day.

20. Other improvements at our facilities include the removal of gang graffiti and cleaning and reorganizing of spaces to allow for room for counseling with youth. We are instituting new search procedures to ensure contraband, such as markers, are recovered. We have other plans to move, at BRRC for example, to a more secure front gate, disallowing constant car traffic and requiring staff walk in and through a magnetometer with personal items x-rayed. Contraband flow can disrupt the work staff are doing to create a positive, clean and orderly environment.

21. The root causes of challenges at our facilities is my main focus. Facility culture, expectations, training, oversight, relationships, presence and a positive and rehabilitative mindset are the cornerstones to a good facility and one where youth can thrive and grow. SCDJJ is on the precipice of change, new leadership, a new vision and an optimistic and determined view of how we can serve the youth under our care is guiding sweeping changes that will positively impact kids, their families, our staff and the state of South Carolina. Change like this is not quick. The work required to build the underlying structure for better facilities is significant. Some current work will be able to be finalized quicky, some will take more time, but SCDJJ is working diligently in all of these areas to ensure youth are safe and secure inside our facilities.

_____
Mack D. McGhee

June 7, 2022