IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| South Carolina State Conference of NAACP;<br><br>Disability Rights of South Carolina;<br><br>Justice 360,<br><br>   *Plaintiffs*,<br><br>v.<br><br>South Carolina Department of Juvenile Justice;<br><br>Eden Hendrick, individually and in her official capacity as Executive Director of the South Carolina Department of Juvenile Justice,<br><br>   *Defendants*. | Case No.: 0:22-cv-01338-MGL-PJG<br><br><br>**DEFENDANTS' MOTION TO STAY DISCOVERY OR, IN THE ALTERNATIVE, MOTION FOR A PROTECTIVE ORDER** |

Pursuant to Local Civil Rule 16.00(C) (D.S.C.), Defendants South Carolina Department of Juvenile Justice (DJJ) and Eden Hendrick, individually and in her official capacity as Executive Director of the DJJ (Director Hendrick), by and through the undersigned counsel, respectfully move to stay discovery pending the Court's resolution of Defendants' motion to dismiss Plaintiffs South Carolina State Conference of NAACP (SCNAACP), Disability Rights of South Carolina (DRSC), and Justice 360's Complaint. *See* ECF No. 10. In the alternative, Defendants respectfully request that the Court enter a Protective Order shielding them from responding to Plaintiffs' discovery until the Court rules on the motion to dismiss. *See* Fed. R. Civ. P. 26(c).

Pursuant to the Court's instructions in its Conference and Scheduling Order, the parties conducted a Rule 26(f) conference on June 8, 2022. During the conference, the parties discussed "the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case." Fed. R. Civ. P. 26(f)(2). They also discussed Rule 26(a)(1) disclosures and a

discovery plan.  *See id.*  As relevant here, the parties "attempt[ed] in good faith to agree on the proposed discovery plan."  *Id.*  Indeed, the parties had a productive discussion.  Following the conference, Plaintiffs were to prepare the Rule 26(f) report, proposed ESI protocol, and a draft Confidentiality Order given their preference for something other than the Court's standard order.  Defendants, for their part, agreed to prepare a proposed draft amended Scheduling Order.

Eight days later, counsel for Defendants reached out to local counsel for Plaintiffs to discuss one of Plaintiffs' declarants, Teci Owen, repeatedly emailing Director Hendrick with charged accusations related to this lawsuit.  *See* Ex. A, Owen Emails to Exec. Dir. Hendrick.  In one of the emails, Ms. Owen informed Director Hendrick that the NAACP asked her to be its spokesperson to the media.  *Id.* at 3.  Defendants' counsel explained that Director Hendrick takes these matters seriously, but because she is a named defendant and represented by counsel, she did not intend to respond to those missives.

During the call, Defendants' counsel also inquired about the status of the draft Rule 26(f) report and documents Plaintiffs were preparing after the conference.  Plaintiffs' counsel indicated that they were forthcoming.  When asked about the status of Defendants' position on the number of depositions and the draft amended Scheduling Order, Defendants' counsel said both were forthcoming, as well, and reminded Plaintiffs' counsel that the undersigned counsel was out of the country on his honeymoon.

While the parties' counsel were discussing various discovery issues, it was not mentioned that Plaintiffs intended to serve voluminous discovery requests on Defendants minutes later prior to forwarding the agreed upon documents.  *See* Ex. B, Service Email & Pls.' Req. for Prod.  Now that Defendants' counsel have had time to review the discovery—as well as Plaintiffs' proposed Rule 26(f) documents—and to discuss these issues with DJJ, this matter comes before the Court

2

on Defendants' motion to stay discovery. The basis for this motion is that Defendants firmly believe Plaintiffs failed to demonstrate standing to maintain this action and, therefore, the Court lacks jurisdiction. Plaintiffs do not and cannot identify any members to avail themselves of associational standing, and they have not suffered an injury in fact to pursue claims under an organizational theory of standing. Further, given the DOJ agreement, Plaintiffs' claims are either not redressable, moot, or some combination of the two. As previously explained, Defendants are also entitled to sovereign immunity.

But even if Plaintiffs could clear these insurmountable jurisdictional hurdles, Plaintiffs still cannot move forward with this action because they admittedly did not exhaust administrative remedies as required by the PLRA, IDEA, ADA, and Rehabilitation Act. To the extent exceptions to these mandatory exhaustion requirements exist, which Defendants deny, Plaintiffs failed to offer any legitimate excuse. And despite their salacious allegations regarding unidentified juveniles and others already represented by counsel, Plaintiffs failed to state any plausible claims for relief, and they are not entitled to the drastic mandatory preliminary injunctive relief they demand.[1]

Yet Plaintiffs' requests for production are far-ranging. By way of example, Plaintiffs seek position descriptions for all employees, hiring and separation records, a year and a half worth of timekeeping logs for every single employee at every DJJ facility, and employees' files detailing any and all disciplinary history. *See* Ex. B, at ¶¶ 5, 6, 8, 9 & 14. Although Plaintiffs believe the DOJ agreement is irrelevant to their claims here, as they have relegated its existence to a mere sentence in almost every filing with this Court, they demand all correspondence between DJJ and DOJ regarding the settlement and the DOJ investigation that preceded it. *Id.* at ¶ 16.

---

[1] Defendants have already fully briefed these issues, *see* ECF Nos. 10, 16 & 17, and certainly are not trying to get another bite at the apple here. Rather, Defendants are merely outlining the issues in summary fashion to provide context for this motion.

What is more, even though Plaintiffs have not identified a single *member* residing in a DJJ facility and their Complaint does not claim any injury in fact arising out of DJJ's three evaluation centers, Plaintiffs demand countless records regarding all juvenile detainees at every DJJ facility. *Id.* at ¶¶ 12, 13, 17–25 & 28–34. For instance, Plaintiffs seek records regarding each time a detainee was placed in isolation over the last year and a half, how DJJ implemented IEPs for every child who has one in any DJJ facility, and communications between DJJ and detainees' parents or guardians. *Id.* at ¶¶ 17–22. Moreover, Plaintiffs ask for videos and reports regarding ongoing investigations into incidents that recently occurred in DJJ's facilities. *Id.* at ¶¶ 12, 13, 16, 28–30 & 32–36. Plaintiffs demand this information despite acknowledging in prior filings with this Court that those individual youths are already represented by counsel. *E.g.*, ECF No. 19, at 2 n.1.

Respectfully, DJJ cannot just give out information identifying juvenile detainees to Plaintiffs when they bear no relation to the child and are not "legal counsel to the child." S.C. Code Ann. § 63-19-2010. At a minimum, that would violate FERPA, HIPAA, and section 63-19-2020 of the South Carolina Code—just to name a few. Again, Plaintiffs have not brought a class action. So they are not entitled to discovery to help them identify members of a class. Instead, if Plaintiffs are allowed to move forward at all, it would only be on behalf of actual members. In the event discovery proceeds, if Plaintiffs identify those members and provide Defendants signed parental permission to release those members' records to Plaintiffs' counsel, only then could DJJ consider disclosing some of the information sought in Plaintiffs' extensive discovery.

Again, however, this is putting the cart before the horse. Defendants have raised serious issues regarding Plaintiffs' ability to maintain this lawsuit, and Defendants were surprised that Plaintiffs served discovery before the parties (1) agreed on ESI protocol, a draft Confidentiality Order, and deadlines; or (2) had a chance to exchange in writing their ideas about the contours of

discovery.  Responding to Plaintiffs' 42 requests to produce, compiling and redacting thousands of documents from DJJ's five facilities, and performing a privilege review of all documents will require an inordinate amount of time and agency resources.  Shifting DJJ's resources away from implementing the reforms in the DOJ agreement toward responding to discovery related to all facilities on countless issues is not warranted, particularly where, as here, the motion to dismiss could resolve the case in full (or at least narrow the claims or limit the facilities at issue).

Given the breadth of Plaintiffs' discovery, coupled with the serious jurisdictional and legal defects raised in Defendants' motion to dismiss, Defendants therefore request that the Court stay discovery and initial disclosures pending resolution of their motion to see (1) if the case moves forward at all; and (2) if so, under what claims and parameters.  *See* Local Civil Rule 16.00(C) (D.S.C.).  In the alternative, for good cause shown, Defendants request a Protective Order shielding Defendants from responding to discovery until after the Court has had the opportunity to rule on Defendants' motion to dismiss.  *See* Fed. R. Civ. P. 26(c).

Although "[n]o consultation . . . is required" for this motion, Local Civil Rule 16.00(C) (D.S.C.), the undersigned nevertheless consulted with Plaintiffs' counsel in good faith given the alternate request for a Protective Order, *see* Fed. R. Civ. P. 26(c)(1).  Indeed, while reserving their rights to be heard on this motion and the motion to dismiss, Defendants have consulted—and will continue consulting—in good faith about discovery issues while these motions are pending.  But the parties are at an impasse on the timing and necessity of discovery at this juncture.  Accordingly, Defendants are constrained to seek the Court's intervention.

*(Signature page to follow)*

        Respectfully submitted,

        /s/Vordman Carlisle Traywick, III
        Robert E. Tyson, Jr. (Fed. ID 7815)
        J. Michael Montgomery (Fed. ID 10290)
        Vordman Carlisle Traywick, III (Fed. ID 12483)
        ROBINSON GRAY STEPP & LAFFITTE, LLC
        Post Office Box 11449
        Columbia, South Carolina 29211
        (803) 929-1400
        rtyson@robinsongray.com
        mmontgomery@robinsongray.com
        ltraywick@robinsongray.com

        Clarence Davis (Fed. ID 433)
        GRIFFIN | DAVIS LLC
        Post Office Box 999
        Columbia, South Carolina 29202
        (803) 744-0800
        cdavis@griffindavislaw.com

        *Counsel for Defendants SCDJJ and*
        *Executive Director Eden Hendrick*

Columbia, South Carolina
June 23, 2022