IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| South Carolina State Conference of NAACP; Disability Rights South Carolina; Justice 360, | ) ) ) | C/A No. 0:22-1338-MGL-PJG |
| Plaintiffs, | ) ) | |
| v. | ) ) | **REPORT AND RECOMMENDATION** |
| South Carolina Department of Juvenile Justice; Eden Hendrick*, individually and in her official capacity as Executive Director of the South Carolina Department of Juvenile Justice*, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This civil rights matter is before the court for a Report and Recommendation on the defendants' motion to dismiss the Complaint. See 28 U.S.C. § 636(b); Local Civil Rule 73.02(B)(2) (D.S.C.). The crux of the motion is whether the plaintiff organizations have standing to sue. The motion has been fully briefed, and the court held oral argument on the motion on July 26, 2022. Having carefully considered the parties' submissions and arguments and the applicable law, the court concludes that the motion should be granted and the case dismissed for lack of subject matter jurisdiction.

## BACKGROUND

Plaintiffs are three special interest groups that seek injunctive relief to redress alleged inadequate care and treatment of the individuals held at the South Carolina Department of Juvenile Justice ("DJJ"). Plaintiff South Carolina State Conference of the NAACP ("NAACP")—a state conference branch of the national NAACP civil rights organization—is a nonprofit, nonpartisan membership organization that, on behalf of its members and other constituents, "advocates for a society in which all individuals have equal rights, all children have access to a free, high quality

public education, and all persons are free from disproportionate incarceration and racially motivated practices." (Compl. ¶¶ 8-9, ECF No. 1 at 3-4.) Plaintiff Disability Rights South Carolina ("Disability Rights") is a South Carolina nonprofit corporation that serves as South Carolina's Protection and Advocacy system, as defined in the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI"), 42 U.S.C. §§ 10801, et seq.; and is thus authorized to "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State." (Id. ¶ 10, ECF No. 1 at 4.) Plaintiff Justice 360 is a South Carolina nonprofit organization whose mission is to "promote fairness, reliability, and transparency in the criminal justice system for children facing lengthy sentences and individuals facing the death penalty in South Carolina"; this organization provides direct representation to children in the custody of DJJ. (Id. ¶¶ 12-13, ECF No. 1 at 5.)

Plaintiffs allege various violations of the United States Constitution and certain federal statutes. (See generally id. ¶¶ 179-227, ECF No. 1 at 40-53.) Specifically, the Complaint asserts four causes of action pursuant to 42 U.S.C. § 1983 based on the following alleged violations of the Fourteenth Amendment: (1) "Failure to Protect Children Entrusted to DJJ Care"; (2) "Prolonged and Punitive Use of Solitary Confinement for Children"; (3) "Failure to Provide Rehabilitative Services"; and (4) "Substandard Conditions of Confinement." The remaining causes of action, Counts 5-7, respectively assert violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq.; the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, et seq.; and the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, et seq. (See generally Compl. ¶¶ 202-227, ECF No. 1 at 44-48.) The Complaint alleges a long history of violations at DJJ and focuses on many of the recent findings by the U.S. Department of Justice ("DOJ") and the South Carolina Legislative Audit Council that resulted in a lawsuit, which was recently settled.

Plaintiffs detail specific examples of acts of violence on numerous individuals, both by other juvenile inmates and by DJJ guards. They further allege the improper use of isolation of juveniles, the failure to provide education and mental health treatment, the failure to protect these individuals from harm, overcrowding, understaffing, and inhumane conditions of confinement. In their prayer for relief, Plaintiffs detail five pages of mandatory injunctive relief they seek the court to impose. (Compl., ECF No. 1 at 48-54.)

## DISCUSSION

### A. Subject Matter Jurisdiction

Dismissal under Federal Rule of Civil Procedure 12(b)(1) examines whether the complaint fails to state facts upon which jurisdiction can be founded. It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). To resolve a jurisdictional challenge under Rule 12(b)(1), the court may consider undisputed facts and any jurisdictional facts that it determines. The court may dismiss a case for lack of subject matter jurisdiction on any of the following bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Johnson v. United States, 534 F.3d 958, 962 (8th Cir. 2008) (quoting Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)).

### B. Defendants' Motion

The defendants focus on the settlement agreement signed April 13, 2022 between DOJ and DJJ that they contend resolved a four-year DOJ investigation (C/A No. 3:22-1221-MGL). The

defendants assert that the agreement focused on several areas of concern: (1) protecting youth from violence; (2) staffing; (3) video surveillance; (4) rehabilitative programming; (5) behavioral management; (6) use of force; (7) investigations into youth-on-youth physical harm, excessive or unnecessary use of force, or improper use of isolation; (8) isolation policies; (9) housing vulnerable youth and youth on suicide watch; (10) training staff; and (11) quality assurance. The defendants point out they have an in-house settlement agreement coordinator to ensure compliance and have jointly selected a subject matter expert to provide technical assistance to help implement systemwide reforms. Dismissal of the prior action on April 20, 2022 included "retention of jurisdiction and reinstatement upon the United States' motion for the purpose of resolving any claim that" DJJ "materially breached any provision of the Agreement." United States of America v. S.C. Dep't of Juv. Just., C/A No. 3:22-1221-MGL, ECF No. 8 (D.S.C. Apr. 20, 2022).

The defendants argue that Plaintiffs filed this action six days later because they disagree with the settlement. The defendants note that a class action has not been filed and no juvenile detainee has been named as a plaintiff, unlike the case Plaintiffs heavily rely on, Alexander S. ex rel. Bowers v. Boyd, 876 F. Supp. 773, 777 (D.S.C. 1995) (deciding "an action initiated by juveniles incarcerated at the four correctional institutions maintained and operated by" DJJ). And in any event, the defendants argue, no individual has exhausted such claims.

## C.     Standing Generally

Standing is one of the core doctrines of justiciability that determines which matters the federal courts can hear and decide. See Warth v. Seldin, 422 U.S. 490, 498 (1975). Although standing is "perhaps the most important" jurisdictional question federal courts face, it is also "one of the [most] amorphous (concepts) in the entire domain of public law." Justice 360 v. Stirling, 42 F.4th 450, 458 (4th Cir. 2022) (citations and internal quotation marks omitted).

The Constitution limits federal court jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2. "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013) (internal quotation marks omitted); see also Pye v. United States, 269 F.3d 459, 466 (2001) ("Standing is a threshold jurisdictional question which ensures that a suit is a case or controversy appropriate for the exercise of the courts' judicial powers under the Constitution of the United States.") (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998)).

> To satisfy the constitutional standing requirement, a plaintiff must provide evidence to support the conclusion that: (1) "the plaintiff . . . suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "there [is] a causal connection between the injury and the conduct complained of"; and (3) "it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458 (4th Cir. 2005) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)); see also David v. Alphin, 704 F.3d 327, 333 (4th Cir. 2013) (quoting Sprint Commc'ns Co., L.P. v. APCC Servs., Inc., 554 U.S. 269, 273, 74 (2008)). The party invoking jurisdiction bears the burden of establishing these elements, and at the motion to dismiss stage, "general factual allegations of injury resulting from the defendant's conduct may suffice" to show standing. Lujan, 504 U.S. at 561.

Precedential case law instructs that to show an injury in fact as required by the first prong of the Article III standing analysis, "plaintiffs must demonstrate that their claim rests upon 'a distinct and palpable injury' to a legally protected interest."[1] Lane v. Holder, 703 F.3d 668, 672

---

[1] While this injury in fact is required for all plaintiffs whether individual or organizational, where there are multiple plaintiffs in a case, only one plaintiff need establish an injury in fact sufficient to satisfy Article III. See Town of Chester, N.Y. v. Laroe Ests., Inc., 137 S. Ct. 1645, 1651 (2017) (holding that when there are multiple plaintiffs, "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint").

(4th Cir. 2012) (quoting Warth, 422 U.S. at 501). The alleged injury must "affect the plaintiff in a personal and individual way." Lujan, 504 U.S. at 560 n.1. Generally, to show the requisite injury in fact, a plaintiff must show that the government action it challenges affects him or her directly, and that the harm essentially causes an absolute deprivation of the legally protected interest. See Lane, 703 F.3d at 672-73. To show the second element, traceability, a plaintiff must show that the alleged injury to him or her is "fairly traceable" to the challenged law. Id. at 672. "[W]hen a plaintiff is not the direct subject of government action, but rather when the asserted injury arises from the government's regulation (or lack of regulation) of someone else, satisfying standing requirements will be substantially more difficult." Id. at 673 (cleaned up) (discussing traceability). For redressability, the plaintiff must establish "a non-speculative likelihood that the [alleged] injury would be redressed by a favorable decision." Justice 360, 42 F.4th at 459 (alteration in original).

### 1.    *Organizational Standing*

Plaintiffs NAACP, Justice 360, and Disability Rights all argue that they have organizational standing. "An organizational plaintiff may establish standing to bring suit on its own behalf when it seeks redress for an injury suffered by the organization itself." White Tail Park, 413 F.3d at 458 (citing Warth, 422 U.S. at 511 (explaining that an organizational plaintiff may have standing to sue on its own behalf "to vindicate whatever rights and immunities the association itself may enjoy")); see also Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982). In determining whether a party has standing, the court is not to consider the merits, but rather "whether the plaintiff is the proper party to bring [the] suit." White Tail Park, 413 F.3d at 460 (quoting Raines v. Byrd, 521 U.S. 811 (1997)). A plaintiff must demonstrate that it has a sufficiently "personal stake" in the lawsuit to justify invoking federal jurisdiction. White Tail

Park, 413 F.3d at 461 (citing Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 38 (1976)). When determining whether an organization has standing, courts must conduct the same analysis it would for an individual plaintiff. Lane, 703 F.3d at 674.

Each plaintiff organization in the case at bar argues that it has been injured by the defendants' actions. Specifically, each alleges that its core mission is being frustrated. The NAACP alleges that it has had to divert resources from other areas to address issues stemming from DJJ. (Murphy Decl. ¶ 11, ECF No. 13-6 at 3.) Justice 360 similarly contends that its attorneys are having to spend time addressing DJJ issues rather than defending their clients and cannot have productive meetings with their clients in the morning because they are sleep deprived. (Vann Decl. ¶ 13, ECF No. 13-8 at 2.) Justice 360 essentially argues that the constitutional and statutory violations by DJJ make one aspect of their mission—providing legal representation to juveniles facing lengthy sentences—more difficult. (Id. ¶¶ 8-10.) Disability Rights makes a similar argument with respect to its statutory duty to advocate for people with disabilities. (Ross Decl. ¶ 5, ECF No. 13-2 at 2.)

Harm in the form of frustration of an organization's mission by a defendant's violation of the organization's federally protected legal interest, along with the accompanying diversion of resources to combat those practices, has, in certain circumstances, been held to constitute an injury in fact for organizational standing purposes. See, e.g., Havens, 455 U.S. at 378-79 (organizational plaintiff expended resources to combat the defendant's alleged violation of the Fair Housing Act which infringed on the organization's legally protected interest in receiving truthful housing information). However, Supreme Court and Fourth Circuit precedent compel the conclusion that, on these facts, none of the purported harm identified by Plaintiffs is sufficient to confer organizational standing as required by Article III.

Plaintiff NAACP has not identified any injury to it as an organization that is fairly traceable to the alleged violations of federal law by DJJ.  Moreover, while Plaintiffs Disability Rights and Justice 360[2] contend that they themselves as organizations have suffered injury—for example, because the conditions at DJJ make the fulfillment of their core missions more difficult—they have similarly failed to show that any legally protected interest of the organizations is concretely and particularly invaded by the alleged action or inaction by DJJ.  See White Tail Park, 413 F.3d at 458 (quoting Lujan, 504 U.S. at 560-61).

Here, Plaintiffs' purported organizational harm fails to confer standing because the harm they assert is indirect, and the organizational interests they rely on are not protected by the federal laws they contend are being violated.  Crucially, Plaintiffs have failed to show a nexus between any legally protected interest of the organizations and the conduct of DJJ that is complained of here—that is, alleged violations of the Fourteenth Amendment, ADA, Rehabilitation Act, or IDEA.  Cf. Linda R.S. v. Richard D., 410 U.S. 614, 618 (1973) (discussing the required nexus between a plaintiff's injury and her claim to show she is the proper and appropriate party to invoke federal judicial power).  While the challenged conduct may affect the legally protected interests of the *juveniles*, the *organizations* have not identified any harm to a legally protected interest that is fairly traceable to those purported violations.  Cf. White Tail Park, 413 F.3d at 461 n.5 (noting that the plaintiff failed to identify its own liberty interest at stake so it did not have standing to assert a

---

[2] In its brief and at oral argument, Justice 360 relied on a decision of a district judge finding that Justice 360 had organizational standing in a case alleging violations of the First Amendment. See Justice 360 v. Stirling, No. 3:20-03671-MGL, 2021 WL 4462406, at *5 (D.S.C. Sept. 29, 2021).  But that decision was recently reversed by the Fourth Circuit, which found that Justice 360 lacked standing to assert that claim because the injury it asserted was not redressable by the court action it sought.  Justice 360 v. Stirling, 42 F.4th 450, 460 (4th Cir. 2022) ("[E]ven if we were to strike down the [challenged statute and related Attorney General's opinion], Justice 360 still would have no legal right . . . to demand the information it seeks.").  In any event, generally an Article III standing analysis is a fact-specific inquiry unique to each case.

claim under the Fourteenth Amendment); Lane, 703 F.3d at 672 (discussing injury in fact and finding that the plaintiffs did not have standing to challenge laws and regulations that neither applied to them nor affected them directly).  Here, Plaintiffs are not prevented from exercising their own legal rights under the Fourteenth Amendment, ADA, Rehabilitation Act, or IDEA; nor are they directly burdened by DJJ's deficiencies that allegedly violate those provisions.  See Lane, 703 F.3d at 672-73 (discussing injury in fact and finding no standing for gun rights plaintiffs that were not prevented from exercising their right to obtain handguns but were merely burdened by additional costs and logistical hurdles).

As binding authorities have held, "when a plaintiff is not the direct subject of government action, but rather when the asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, satisfying standing requirements will be substantially more difficult." Lane, 703 F.3d at 673 (cleaned up); see also Lujan, 504 U.S. at 561-62.  The Supreme Court expressly addressed indirect injury in Warth v. Seldin, 422 U.S. 490, 504-05 (1975).  The Warth Court recognized that the fact that the harm to the plaintiff may be indirect does not necessarily preclude standing.  "When a governmental prohibition or restriction imposed on one party causes specific harm to a third party, *harm that a constitutional provision or statute was intended to prevent*, the indirectness of the injury does not necessarily deprive the person harmed of standing to vindicate his rights." Warth, 422 U.S. at 505 (emphasis added).  But here, the harm Plaintiffs assert is not the harm that the Fourteenth Amendment, ADA, Rehabilitation Act, or IDEA was intended to prevent.  Thus, the indirect harm Plaintiffs rely on as resulting from the defendants' violation of those federal provisions cannot form the basis for Article III standing. See also Lane, 703 F.3d at 672-73 (discussing the requisite injury in fact and finding none because

the challenged government action did not burden the plaintiffs directly and did not impair a legally protected interest).

Plaintiffs rely on the case of <u>Havens Realty Group v. Coleman</u>, 455 U.S. 363 (1982), but this case is distinguishable for at least two reasons. In <u>Havens</u>, the plaintiff organization itself had a statutory right under the Fair Housing Act to truthful information. <u>See</u> <u>id.</u> at 373 (recognizing that Congress conferred a legal right to truthful information on all persons). The organization's legally protected interest under the Fair Housing Act was being infringed upon by the conduct of the defendant, who was allegedly lying about the availability of housing when the applicant was Black. <u>See</u> <u>id.</u> at 379. The complaint alleged that the defendant's violations of the Fair Housing Act directly frustrated the plaintiff organization's efforts to assist equal access to housing through counseling and other referral services. <u>Id.</u> Notably, in <u>Havens</u>, the Fair Housing Act established an enforceable right by any person to truthful information and the harm flowing from the defendant's alleged steering practices was precisely the type of injury the statute was intended to guard against. <u>Id.</u> at 373. Here, unlike the plaintiff in <u>Havens</u>, the Plaintiffs have not identified any legally protected interest of the organizations that is being harmed by DJJ's alleged conduct. <u>Cf.</u> <u>Warth</u>, 422 U.S. at 511 (explaining that an organizational plaintiff may have standing to sue on its own behalf "to vindicate *whatever rights and immunities the association itself may enjoy*") (emphasis added). Unlike the plaintiff organization in <u>Havens</u> which had the same legally protected interest under the Fair Housing Act that the individual plaintiff had, Plaintiffs have identified no rights or immunities of their own under the Fourteenth Amendment, the ADA, the ADEA, or IDEA to vindicate here. And unlike the organizational plaintiff in <u>Havens</u>, the harms Plaintiffs assert here is not to any interest that the Fourteenth Amendment, the ADA, the Rehabilitation Act, or the IDEA was intended to protect. <u>Havens</u>, 455 U.S. at 373; <u>Warth</u>, 422

U.S. at 504-05; see also Sierra Club v. Morton, 405 U.S. 727, 734-35 (1972) ("But the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured."). While Plaintiffs here focus on the harm they purport to suffer from the defendants' allegedly violative practices, they fail to show that the harm is to any of their own legally protected interests.

Similarly, Plaintiffs have failed to show that the defendants' actions have "perceptibly impaired" Plaintiffs' ability to operate and function, resulting in a drain on Plaintiffs' resources. See Havens, 455 U.S. at 379. Post-Havens, courts have limited attempts by advocacy groups to confer organizational standing upon themselves absent a qualitative and functional showing in this regard. See, e.g., Moseke v. Miller & Smith, Inc., 202 F. Supp. 2d 492, 497-98 (E.D. Va. 2002) (discussing lower courts' struggles following Havens to analyze the degree of requisite injury in fact to organizations in Fair Housing Act cases); CASA de Maryland, Inc. v. Trump, 971 F.3d 220, 238, 239 (4th Cir. 2020) (discussing the difference between a perceptible impairment to the organization's function and whether an organization "felt moved to act in a particular manner," and comparing the Havens plaintiff's allegation that the defendant's actions "directly frustrated its mission" with the CASA plaintiff's harm to its "theoretical ability to *effectuate* its objectives in its ideal world"), vacated for reh'g en banc, 981 F.3d 311 (4th Cir. 2020) (dismissed Mar. 11, 2021);[3] People for Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Md., Inc., 843 F. App'x 493, 496 (4th Cir. 2021) ("Post-Havens Realty and Lane, this court has reaffirmed that a plaintiff has suffered an organizational injury if the challenged policy or practice frustrated both its purpose and caused a drain on its resources."); Florida State Conf. of NAACP v. Browning,

_____

[3] The CASA panel decision was vacated when the court granted rehearing *en banc*. See 4th Cir. R. 35(c); 4th Cir. I.O.P. 40.2. However, the *en banc* hearing never took place because the parties voluntarily dismissed the appeal. No. 19-2222, ECF Nos. 210 & 211.

522 F.3d 1153, 1165 (11th Cir. 2008) (observing that "Havens held that an organization has standing to sue on its own behalf if the defendant's illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts" and that the injuries were sufficiently concrete if they were more than "abstract social interests"). Here, Plaintiffs have not alleged or shown that DJJ's actions have "directly impaired" their "ability to operate and to function." CASA de Maryland, 971 F.3d at 239.

Although the parties and court have failed to identify precedential authority precisely on point, the decision of the Fourth Circuit in Lane v. Holder, 703 F.3d 668 (4th Cir. 2012), relied upon by the defendants, is more apposite here than Havens. There, the organizational plaintiff, the Second Amendment Foundation—along with three individuals—challenged the constitutionality of federal and state laws restricting interstate transfers of handguns. The plaintiffs asserted that the laws resulted in "a restriction on the range of retailers available to consumers of constitutionally-protected articles." Id. at 672 (quoting Appellants' Brief). But the Fourth Circuit found that because the challenged laws did not affect the plaintiffs directly, they could not show the requisite injury in fact. Id.

Moreover, even though the organizational plaintiff there contended that its resources were drained because it had to devote time and money to the issue of interstate handgun transfer provisions, it could not establish its own injury in fact because its harm resulted from its own budgetary choices, not the actions of the defendant. Id. at 675 (discussing organizational standing); Fair Emp. Council of Greater Washington, D.C. v. BMC Mktg. Corp., 28 F.3d 1268, 1276 (D.C. Cir. 1994) ("The diversion of resources . . . might well harm the [organizational plaintiff's] other programs, for money spent on testing is money that is not spent on other things. But this particular harm is self-inflicted; it results not from any actions taken by [the defendant allegedly violating

the organization's own interest conferred by Title VII], but rather from the [organizational plaintiff's] own budgetary choices."). When the diversion of resources is not directly required by the government action being challenged, courts have found no standing. See CASA de Maryland, 971 F.3d at 238 ("[T]he DHS Rule forced CASA to do absolutely nothing as a matter of law . . . CASA's unilateral and uncompelled response to the shifting needs of its members cannot manufacture an Article III injury."); People for the Ethical Treatment of Animals v. U.S. Dep't of Agriculture, 797 F.3d 1087, 1099 (D.C. Cir. 2015) ("[A] plaintiff's voluntary expenditure of resources to counteract governmental action that only indirectly affects the plaintiff does not support standing.").

To the extent Plaintiffs Justice 360 and Disability Rights rely on harms other than the diversion of resources, in addition to the problem of that harm not invading the interest that is legally protected by the statutes they invoke, their alleged injury also does not constitute a perceptible impairment of their ability to function. Compare CASA de Maryland, 971 F.3d at 239 (finding no organizational injury where "no action by the defendant [] directly impaired the organization's ability to operate and to function") with Havens, 455 U.S. at 379 (finding standing where the defendant's unlawful practices perceptibly impaired the organizational plaintiff's ability to function). "To determine that an organization that decides to spend its money on educating members, responding to member inquiries, or undertaking litigation in response to legislation suffers a cognizable injury would be to imply standing for organizations with merely 'abstract concern[s] with a subject that could be affected by an adjudication.' " Lane, 703 F.3d at 675 (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 (1976)). That is precisely the case here.

The United States Court of Appeals for the Fifth Circuit has reasoned similarly to Lane, and its decision persuasively lends support to this court's conclusion that Plaintiffs lack standing here. See Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trustees, 19 F.3d 241, 244 (5th Cir. 1994). There, the court concluded that a PAIMI advocacy group—similar to Plaintiff Disability Rights—did not have organizational standing. The Dallas Court reasoned that, even though the advocacy group had a statutory charge to provide disabled individuals with legal representation, that was not the type of "invasion of a legally-protected interest" defined in Lujan. Id. at 244. Significantly, the court held that the group had no legally protected interest in not expending their resources on behalf of individuals for whom it was an advocate, at least not where the resources "lost" were only the costs of the advocacy lawsuit. The Dallas Court compared other cases where organizational standing had been found. Predictably, in those cases, the organization's legally protected interest stemmed from the federal law it contended was being violated: the Fair Housing Act, which was the subject of Havens.[4]

The Fifth Circuit in Dallas went on to provide the following telling example, finding that if the advocacy group were found to have organizational standing, "then . . . indigent defender

---

[4] Significantly, many of the cases that have found organizational standing deal with the Fair Housing Act, which confers a private right of action on "aggrieved persons," the definition of which encompasses organizational plaintiffs. See 42 U.S.C. § 3602(i)(1) (providing that an "aggrieved person" is "*any person* who claims to have been injured by a discriminatory housing practice; or believes that such person will be injured by a discriminatory housing practice that is about to occur."); Havens, 455 U.S. at 372 (providing that Congress eliminated the prudential barriers to confer standing in suits brought pursuant to the Fair Housing Act to the fullest extent possible by Article III, and finding that organizations may establish standing by establishing showing a distinct and palpable injury); see, e.g., Spann v. Colonial Vill., Inc., 899 F.2d 24, 27-31 (D.C. Cir. 1990); Vill. of Bellwood v. Dwivedi, 895 F.2d 1521, 1526 (7th Cir. 1990); Moseke v. Miller & Smith, Inc., 202 F. Supp. 2d 492, 499 (E.D. Va. 2002) (all finding that the plaintiff organizations had standing because the defendants' purported violation of the Fair Housing Act greatly increased the resources the plaintiff organizations were required to devote to resist the defendants' violations and frustrated the organizations' purpose to combat discrimination in housing).

organizations established pursuant to the Criminal Justice Act or any other self-styled advocacy group could assert standing to sue whenever it believed the rights of its targeted beneficiaries had been violated." Id. Such a result would be contrary to Lujan. Id. (stating that "[t]his result is at odds with Lujan's definition of injury in fact as the invasion of a legally-protected interest") (internal quotation marks omitted). The same reasoning applies here to Plaintiff Disability Rights, which is charged by federal statute to advocate for its constituents, and even more so with respect to Justice 360 and the NAACP, which are not.

This conclusion is further supported by the Fourth Circuit's decision in North Carolina State Conference of NAACP v. Raymond, 981 F.3d 295 (4th Cir. 2020). There, the North Carolina chapter of the NAACP, like the Florida chapter in the Browning case discussed below, challenged a state voting law. Although the Raymond Court found that the NAACP did have *associational* standing in that case,[5] it expressly discussed Havens and intimated that the NAACP did not have *organizational* standing to challenge the North Carolina voting law. The Raymond Court noted the Supreme Court's rule in Havens that "[w]hen an action 'perceptibly impair[s]' an organization's ability to carry out its mission and 'consequent[ly] drain[s] . . . the organization's resources,' 'there can be no question that the organization has suffered injury in fact.' " Raymond, 981 F.3d at 301 (quoting Havens, 455 U.S. at 379). But the Raymond Court further observed the Havens "standard is not met simply because an organization makes a 'unilateral and uncompelled' choice to shift its resources away from its primary objective to address a government action." Id. (citing CASA de Maryland, 971 F.3d at 238). Here, the NAACP and other Plaintiffs similarly do not gain organizational standing simply because they have chosen to focus resources on the conditions at DJJ rather than other aspects of their missions.

---

[5] See discussion infra Section C.2.

For all of these reasons, the case at bar is more like <u>Sierra Club</u>, <u>Warth</u>, and <u>Lane</u> than <u>Havens</u>. Aptly, in <u>Sierra Club</u>, the Court recognized in the context of the Administrative Procedures Act that the decision as to whether judicial review is sought should be in the hands of those who have a *direct stake* in the outcome. <u>Sierra Club</u>, 405 U.S. at 740. "That goal would be undermined were we to construe the [statute] to authorize judicial review at the behest of organizations or individuals who seek to do no more than vindicate their own value preferences through the judicial process." <u>Id.</u> As in <u>Sierra Club</u>, Plaintiffs' position here would permit just that. Article III concerns require a plaintiff to identify a legally protected interest, not just a societal interest. <u>See Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.</u>, 454 U.S. 464, 486 (1982) ("[S]tanding is not measured by the intensity of the litigant's interest or fervor of his advocacy."). Plaintiffs have failed to do so here.

### 2. *Associational Standing*

Plaintiffs NAACP and Disability Rights[6] also contend they have associational standing. To have associational standing, an organization must show that: (1) its members would otherwise have standing to sue as individuals; (2) the interests at stake are germane to the group's purpose; and (3) neither the claim made nor the relief requested requires the participation of individual members in the suit. <u>Friends for Ferrell Parkway, LLC v. Stasko</u>, 282 F.3d 315, 320 (4th Cir. 2002); <u>NAACP v. Molly Darcy, Inc.</u>, No. 4:11-CV-01293-RBH, 2012 WL 4473138, at *3 (D.S.C. Sept. 26, 2012) (holding that the NAACP had associational standing where one of its members alleged ongoing harm by the challenged policy).

The defendants specifically challenge the ability of the NAACP and Disability Rights to satisfy the first prong based on the Complaint before the court. The first element is satisfied even

---

[6] Justice 360 has no members and does not assert associational standing here.

if just one member of the organization would have standing in his or her own right. <u>United Food</u> <u>& Com. Workers Union Loc. 751 v. Brown Grp., Inc.</u>, 517 U.S. 544, 555 (1996); <u>Piney Run Pres.</u> <u>Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md.</u>, 268 F.3d 255, 262 (4th Cir. 2001). Thus, the organization must show that at least one of its members has suffered a concrete injury traceable to the wrong alleged. <u>See</u>, <u>e.g.</u>, <u>Maryland Highways Contractors Ass'n, Inc. v. State of Md.</u>, 933 F.2d 1246, 1252 (4th Cir. 1991).

The NAACP and Disability Rights have failed to do so here. Although Plaintiff NAACP presents an affidavit from the NAACP President stating at least one juvenile currently in DJJ is a member and that a parent of a juvenile is a member, these assertions are insufficient to establish associational standing. NAACP and Disability Rights have not pled facts showing that any of their members has a claim under the federal laws they rely upon. Although NAACP relies on the case of <u>Molly Darcy</u>, 2012 WL 4473138, that case is again distinguishable. In <u>Molly Darcy</u>, the NAACP presented an affidavit from a member that she sought to dine at the defendant's restaurant during Black Bike Week but it was closed. That member's averments precisely aligned with the federal claims being asserted by the NAACP in that case. No such allegations are present here. General assertions that an NAACP member resides or formerly resided at DJJ or that one of its members has a child residing there are insufficient to show that an NAACP member has standing to assert claims under the statutes the NAACP seeks to vindicate here. <u>See</u> <u>Lujan</u>, 504 U.S. at 560 (requiring injury to be particularized).

The NAACP's argument that it need not make such a showing here because the alleged violations are prospective and systemic is unavailing. The NAACP contends that because the Complaint requests broad injunctive relief throughout South Carolina, no individualized claims need be alleged for the Court to adjudicate the NAACP's claims, as they are systemic in nature.

Plaintiff relies on the case of <u>Florida State Conference of the NAACP v. Browning</u>, 522 F.3d 1153 (11th Cir. 2008). It would suffice to point out that the Eleventh Circuit's decision is not binding here, and Plaintiffs provide no precedential support for their position that the first element for associational standing is relaxed when the alleged harm is systemic rather than individualized. But <u>Browning</u> is not even persuasive on this point for several reasons. First, it is far from clear that even the court in <u>Browning</u> would find standing based on the allegations presented here. In <u>Browning</u>, the court found that the prospective nature of the alleged injury in fact—interference with the plaintiff organization's members' right to vote stemming from the challenged Florida law—was sufficiently imminent and substantially likely. By contrast, the Complaint at issue here fails to establish such imminent and likely harm to any member of one of the plaintiff organizations. Rather, Plaintiffs here depend on a speculative sequence of events which they assume will imminently harm someone incarcerated at DJJ that they in turn assume will be one of their members.[7] The <u>Browning</u> Court recognized that when each prospective event's occurrence was spatially and temporally indeterminate, Article III standing would not lie. <u>Id.</u> at 1162. "This open-endedness and the number of independent events needed to bring about the alleged injury combine[] to cast the injury into the realm of conjecture and speculation." <u>Id.</u> (discussing <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 105 (1983)).

Disability Rights, in turn, has not even alleged that it has a member with standing. Circuit courts are split as to whether disabled constituents of organizations that exist pursuant to PAIMI are "members" that can form the basis of associational standing. <u>Compare</u> <u>Oregon Advoc. Ctr. v. Mink</u>, 322 F.3d 1101, 1110 (9th Cir. 2003) (finding standing), <u>and</u> <u>Doe v. Stincer</u>, 175 F.3d 879,

---

[7] And they assume this sequence will occur as to all seven claims raised in the Complaint. <u>See</u> <u>Town of Chester, N.Y. v. Laroe Ests., Inc.</u>, 137 S. Ct. 1645, 1650 (2017) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.").

886 (11th Cir. 1999) (same), and State of Connecticut Off. of Prot. & Advoc. for Persons with Disabilities v. Connecticut, 706 F. Supp. 2d 266, 284 (D. Conn. 2010) (same), and Advoc. Ctr. for Elderly & Disabled v. Louisiana Dep't of Health & Hosps., 731 F. Supp. 2d 583, 591 (E.D. La. 2010) (same, and distinguishing the Fifth Circuit's 1994 decision cited below), with Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trustees, 19 F.3d 241, 244 (5th Cir. 1994) (no standing), and Missouri Prot. & Advoc. Servs., Inc. v. Carnahan, 499 F.3d 803, 810 (8th Cir. 2007) (same).  But even assuming the Fourth Circuit would permit a PAIMI organization like Disability Rights to have associational standing based on a claim of one of its constituents, Disability Rights has the same problem as does the NAACP:  it has not alleged facts showing that any of its constituents have standing to bring claims under the statutes or constitutional provisions asserted here.  To do so, Plaintiffs must show that one or more of its members (or constituents, if permitted) suffered or is in imminent danger of suffering a concrete injury that is traceable to conduct violating each statute underpinning its seven claims and redressable by a favorable decision.  See Stincer, 175 F.3d at 887 (finding that the organizational plaintiff did not have standing on behalf of its members because the Complaint did not allege that a member was denied access to his or her medical records on the basis of the challenged Florida statute or that any member within the class that the organizational plaintiff was

authorized to represent under PAIMI was receiving treatment at the medical facility).[8] Plaintiffs' Complaint fails to make that showing.

And Plaintiffs do not argue otherwise. Again, relying on the Eleventh Circuit's decision in Browning, they instead request that the court assume such imminent injury on behalf of their members because of the systemic and widespread nature of the alleged deficiencies at DJJ. But, for all the reasons discussed above, such an assumption is precisely what Lujan prohibits. See White Tail Park, 413 F.3d at 458 (quoting Lujan, 504 U.S. at 560-61) (requiring that the injury in fact be concrete and particularized). The court therefore concludes that neither the NAACP nor Disability Rights has alleged facts to establish that it has associational standing.

## RECOMMENDATION

None of the Plaintiffs has shown that it has standing to assert the claims asserted in the Complaint. The defendants' motion to dismiss for lack of subject matter jurisdiction should therefore be granted. (ECF No. 10.)

August 31, 2022
Columbia, South Carolina

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

---

[8] Courts have recognized that the organizational plaintiff need not *identify* the member from which it derives its standing, but it still must allege facts showing that an actual member (or constituent, if permitted) meets the three prerequisites of Article III standing. Compare Cmty. Legal Aid Soc'y, Inc. v. Coupe, No. CV 15-688-GMS, 2016 WL 1055741, at *3 (D. Del. Mar. 16, 2016) (finding the PAIMI-created organization had standing even though it did not specify the names of the individual constituents who were injured) with Stincer, 175 F.3d at 886-87 (requiring that the PAIMI-created organization show that at least one of its clients suffered a concrete injury traceable to the challenged statute and redressable by a favorable decision).

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).