

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| SOUTH CAROLINA STATE CONFERENCE § <br> OF NAACP; DISABILITY RIGHTS SOUTH § <br> CAROLINA; and JUSTICE 360, § <br>       Plaintiffs, § <br> § <br> vs. § <br> § <br> SOUTH CAROLINA DEPARTMENT OF § <br> JUVENILE JUSTICE; and EDEN HENDRICK,§ <br> *Individually and in her official capacity as* § <br> *Executive Director of the South Carolina* § <br> *Department of Juvenile Justice*, § <br>       Defendants. § | Civil Action No. 0:22-01338-MGL |

**ORDER REJECTING THE REPORT AND RECOMMENDATION,
DENYING DEFENDANTS' MOTION TO DISMISS AS TO STANDING,
AND REFERRING THE CASE BACK TO THE MAGISTRATE JUDGE**

Plaintiffs South Carolina State Conference of the NAACP (NAACP), Disability Rights South Carolina (DRSC), and Justice 360 (collectively, Plaintiffs) filed this civil action against Defendants South Carolina Department of Juvenile Justice (SCDJJ) and Eden Hendrick (collectively, Defendants), alleging violation of their rights under 42 U.S.C. § 1983; violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; violation of the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*; and violation of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.*

This matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge recommending the Court grant Defendants' motion to dismiss

for lack of subject matter jurisdiction.  The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to this Court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with the Court.  *Mathews v. Weber*, 423 U.S. 261, 270 (1976).  The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).

The Magistrate Judge filed the Report on August 31, 2022, Plaintiffs objected on September 14, 2022, and Defendants replied on September 28, 2022.  The Court has carefully reviewed Plaintiffs' objections and will sustain those objections regarding organizational standing.  It will therefore enter judgment accordingly.

To establish standing, Plaintiffs must demonstrate they have "(1) suffered an injury in fact," (2) caused by the challenged conduct of the Defendants, (3) "that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

An injury-in-fact is "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Id*. at 339.  Moreover, "[t]o satisfy standing's causation requirement, the alleged injury must be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'"  *DiCocco v. Garland*, 52 F.4th 588, 592 (4th Cir. 2022) (internal alterations omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992)).  "At the motion-to-dismiss stage, this burden is relatively modest[.]"  *Id.* (internal quotation marks omitted).  Finally, the redressability prong is satisfied if "it [is] likely, as opposed to merely speculative, that the injury

will be redressed by a favorable decision." *Lujan*, 504 U.S. at 562 (internal quotation marks omitted).

Although only one of the Plaintiffs must demonstrate standing, *see Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014) ("the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." (quoting *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006))), at least one Plaintiff must show standing as to each cause of action, *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1650 (2017) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." (internal quotation marks omitted)).

Plaintiffs contend the Magistrate Judge misapplied organizational standing doctrine and ignores Plaintiffs' alleged organizational harms. Defendants avouch that the Magistrate Judge properly determined any organizational harms must arise from a legally protected interests arising under the statutes giving rise to the causes of action, and that Plaintiffs have failed to identify any organizational harms.

The Court takes care to ensure it refrains from using "standing to slam the courthouse door against plaintiffs who are entitled to full consideration of their claims on the merits." *Assoc. of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 159, 178 (1970) (Brennan, J., concurring in part and dissenting in part); *see also Griffin v. Dep't of Lab. Fed. Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019) ("It is important that we do not take a cramped view of standing in civil rights cases, lest we impair the remedial purpose Congress had in mind when enacting civil rights statutes.").

On the other hand, the Court acknowledges that "[w]hen a plaintiff is not the direct subject of government action, but rather when the asserted injury arises from the government's allegedly

3

unlawful regulation (or lack of regulation) of someone else, satisfying standing requirements will be substantially more difficult." *Lane v. Holder*, 703 F.3d 668, 673 (4th Cir. 2012) (internal quotation marks omitted).

Nevertheless, "[a] private organization may bring suit to vindicate its own concrete interest in performing those activities for which it was formed." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 611–12 (1982) (Brennan, J., concurring) (gathering cases). It must have more than "a mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem[.]" *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972).

The Fourth Circuit has explained that an organization must have both "expended resources" and had their activities "perceptibly impaired" as a result of the alleged violations to have organizational standing. *Maryland Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 362 (4th Cir. 2020) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).

In other words, to the extent the organization's reallocation of resources is voluntary—a judgment call based on shifting priorities—it fails to establish organizational standing. *See Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 486 (1982) ("[S]tanding is not measured by the intensity of the litigant's interest or fervor of [its] advocacy."). But to the extent the organization cannot achieve its stated goals and conduct its regular business until the alleged violations are addressed, it can establish organizational standing. *Maryland Shall Issue*, 963 F.3d at 362.

Case law disfavoring third-party standing has explained that such claims often "depend[] on the unfettered choices made by independent actors not before the courts and whose exercise of

4

broad and legitimate discretion the courts cannot presume either to control or to predict[.]" *Lujan*, 504 U.S. at 562 (internal citation omitted).

This is not an issue here, where the children in SCDJJ's custody are there involuntarily, and thus their choices fail to affect whether they are subject to the alleged violations. No intermediary "stands directly between plaintiffs and the challenged conduct in a way that breaks the causal chain[.]" *Frank Krasner Enters., Ltd. v. Montgomery Cnty., Md.¸* 401 F.3d 230, 236 (4th Cir. 2005).

The authority cited by Defendants requires no different result. *Warth v. Seldin*, 422 U.S. 490 (1975), for example, explains that an individual third-party has standing if a law "causes specific harm to [them], harm that a constitutional provision or statute was intended to prevent[.]" *Id.* at 505. This portion of the discussion in *Warth*, however, referred to individual third parties, and failed to address organizational standing. *Id.*

Instead, *Warth* acknowledged, "[t]here is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Id.* at 511. Notably, *Warth* was decided seven years before *Havens*, which clarified organizational standing.

In fact, *Havens* itself undermines Defendants' contentions. In *Havens*, Housing Opportunities Made Equal (HOME), a non-profit equal housing organization, as well as individual plaintiffs, sued under the Fair Housing Act (FHA), 42 U.S.C. § 3604, asserting that the defendants refused to rent to Black people. 455 U.S. at 368. The Supreme Court held that HOME had organizational standing due to the alleged "steering practices hav[ing] perceptibly impaired HOME's ability to provide counseling and referral services for low-and moderate-income homeseekers." *Id.* at 379.

It failed to rest its determination of injury on any determination that HOME's injuries themselves were explicitly protected under the FHA. *Cf. id.* at 373 (holding that individual testers had standing in part because the Congress "conferred on all 'persons' a legal right to truthful information about available housing" in the FHA).

The Court has found no authority requiring that organizational plaintiffs must allege harm to the interests protected by the statutes at issue in the causes of action. Although the injury needs to be caused by violation of the statute, it does not need to be the type of injury the statute was designed to prevent. *See Warth*, 422 U.S. at 505 ("[T]he indirectness of the injury does not necessarily deprive the person harmed of standing to vindicate [its] rights.").

By making such a requirement, the Magistrate Judge collapses the organizational standing inquiry with that of individual standing. The Supreme Court has made clear that, although organizational standing doctrine fails to provide a free pass for organizations to file suit merely because particular conduct offends them, it does present its own separate, related analysis as set forth above.

HOME's injury in *Havens* is similar to the injuries alleged by the Plaintiffs in this case. The diversion of resources they allege is not "unilateral and uncompelled[.]" *N.C. State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 301 (4th Cir. 2020) (internal citation omitted).

Justice 360, for example, represents that it is impossible for it to engage in its regular advocacy activities because of the trauma faced by the children it represents as a result of each of the alleged violations. It must expend extra resources not only based on the increased amount of time it takes to engage with clients, but also to train its staff to address such issues. Therefore, it must take on fewer juvenile and capital cases.

Justice 360 admits in a declaration from its Executive Director that "[j]uvenile detention reform is not a core purpose" of the organization. Lindsey S. Vann Declaration ¶ 17. But, the alleged violations of law, it insists, have frustrated their ability to represent their clients, and thus to achieve its core purpose "to promot[e] fairness, reliability, and transparency in the criminal justice system for juveniles facing lengthy sentences and individuals facing the death penalty in South Carolina." *Id.* ¶ 3. That this suit lies outside Justice 360's regular business supports its assertion of standing: rather than merely attempting to vindicate its values, it feels it must bring this suit to continue its normal operations uninhibited.

Justice 360 is looking for more than "satisfaction of a win and the inevitable accompanying press tour," Defendants' Reply at 12, and have alleged more potential harm than just the cost of this lawsuit and "abstract social interests," *Havens*, 455 U.S. at 379; *see also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 285 (3d Cir. 2014) ("organizations may not satisfy the injury in fact requirement by making expenditures solely for the purpose of litigation[.]").

What is more, as described above, it has suffered injury beyond "decid[ing] to spend its money on educating members, responding to member inquiries, or undertaking litigation in response to legislation[.]" *See Lane*, 703 F.3d at 675 (reasoning that conferring standing based on such tenuous grounds "would be to imply standing for organizations with merely abstract concerns with a subject that could be affected by an adjudication." (internal alterations and quotation marks omitted)).

Justice 360 has alleged that Defendants' conduct as to each cause of action concretely hinders its ability to achieve its mission. *Cf. White Tail Park*, *Inc. v. Stroube*, 413 F.3d 451, 462 (4th Cir. 2005) (holding White Tail, an organization that ran a park, lacked organizational standing

in a First Amendment case because it failed to show "the precise nature of [its] interest" in a nudist association continuing to run summer camps on its property, or even that an interest existed).

In short, Justice 360 has "alleged such a personal stake in the outcome of the controversy as to warrant [its] invocation of federal-court jurisdiction[.]" *Havens*, 455 U.S. at 378–79 (quoting *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 261 (1977)).

Justice 360, at the very least, has provided evidence to support the existence of a concrete and particularized injury-in-fact to its legally protected right to "perform[] those activities for which it was formed." *Alfred L. Snapp & Son, Inc.*, 458 U.S. at 611–12 (Brennan, J., concurring), that is caused by Defendants' alleged violations, albeit indirectly.

Moreover, its injuries are likely redressable by a court decision mandating improved conditions at SCDJJ, because improved conditions for the children will result in the ability for more efficient advocacy. *See White Tail Park, Inc.*, 413 F.3d at 458 (explaining that, for redressability, a plaintiff must establish "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." (alteration in original) (quoting *Lujan*, 504 U.S. at 561)).

Therefore, the Court determines Plaintiffs have met their burden as to organizational standing at this early stage in the litigation. Accordingly, the Court will sustain Plaintiffs' objections as to organizational standing, and it need not address the arguments related to associational standing. *See Karsten v. Kaiser Found. Health Plan of Mid-Atlantic States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest *dicta*.").

After a thorough review of the Report and the record in this case under the standard set forth above, sustains Plaintiffs' objections regarding organizational standing, and rejects the Report.  Therefore, Defendants' motion to dismiss is **DENIED** as to the issue of standing.

This matter is referred back to the Magistrate Judge for a Report and Recommendation on the other issues in Defendants' motion to dismiss, such as mootness, exhaustion of remedies, and failure to state a claim, as well as on Plaintiffs' pending motion for a preliminary injunction and Defendants' pending motion to strike.

**IT IS SO ORDERED**.

Signed this 2nd day of February 2023, in Columbia, South Carolina.

s/ Mary Geiger Lewis  
MARY GEIGER LEWIS  
UNITED STATES DISTRICT JUDGE