IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| South Carolina State Conference of NAACP; | ) | C/A No. 0:22-1338-MGL-PJG |
| Disability Rights South Carolina; Justice 360, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| South Carolina Department of Juvenile | ) | |
| Justice; Eden Hendrick, *in her official* | ) | |
| *capacity as Executive Director of the South* | ) | |
| *Carolina Department of Juvenile Justice*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This civil rights matter is back before the court for a Report and Recommendation on the defendants' amended motion to dismiss the Complaint (ECF No. 81) and the plaintiffs' amended motion for preliminary injunction (ECF No. 82). See 28 U.S.C. § 636(b); Local Civil Rule 73.02(B)(2) (D.S.C.). The motions have been fully briefed and are ready for resolution. (See ECF Nos. 89, 94, 88, 97.) Having carefully considered the parties' comprehensive submissions and the applicable law, the court finds that the extensive arguments included in the parties' briefing are more than sufficient for the court to make a recommendation in this matter and that oral argument is not necessary. The court further concludes that the defendants' amended motion to dismiss should be granted and the plaintiffs' amended motion for a preliminary injunction denied.

## BACKGROUND

The plaintiffs are three advocacy groups that seek injunctive relief to redress alleged inadequate care and treatment of the individuals held at the South Carolina Department of Juvenile Justice ("DJJ"). Plaintiff South Carolina State Conference of the NAACP ("NAACP")—a state conference branch of the national NAACP civil rights organization—is a nonprofit, nonpartisan membership organization that, on behalf of its members and other constituents, "advocates for a

society in which all individuals have equal rights, all children have access to a free, high quality public education, and all persons are free from disproportionate incarceration and racially motivated practices." (Compl. ¶¶ 8-9, ECF No. 1 at 3-4.) Plaintiff Disability Rights South Carolina ("Disability Rights" or "DRSC") is a South Carolina nonprofit corporation that serves as South Carolina's Protection and Advocacy system, as defined in the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI"), 42 U.S.C. §§ 10801, et seq.; and is thus authorized to "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State." (Id. ¶ 10, ECF No. 1 at 4.) Plaintiff Justice 360 is a South Carolina nonprofit organization whose mission is to "promote fairness, reliability, and transparency in the criminal justice system for children facing lengthy sentences and individuals facing the death penalty in South Carolina"; this organization provides direct representation to children in the custody of DJJ. (Id. ¶¶ 12-13, ECF No. 1 at 5.)

The plaintiffs allege various violations of the United States Constitution and certain federal statutes. (See generally id. ¶¶ 179-227, ECF No. 1 at 40-53.) Specifically, the Complaint asserts four causes of action pursuant to 42 U.S.C. § 1983 based on the following alleged violations of the Fourteenth Amendment: (1) "Failure to Protect Children Entrusted to DJJ Care"; (2) "Prolonged and Punitive Use of Solitary Confinement for Children"; (3) "Failure to Provide Rehabilitative Services"; and (4) "Substandard Conditions of Confinement." The remaining causes of action, Counts 5-7, respectively assert violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq.; the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, et seq.; and the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, et seq. (See generally Compl. ¶¶ 202-27, ECF No. 1 at 44-48.) The Complaint alleges a long history of violations at DJJ and focuses on many of the recent findings by the U.S. Department of Justice ("DOJ") and the

South Carolina Legislative Audit Council that resulted in a lawsuit, which was recently settled. The plaintiffs detail specific examples of acts of violence on numerous individuals, both by other juvenile inmates and by DJJ guards. They further allege the improper use of isolation of juveniles; the failure to provide education and mental health treatment; the failure to protect these individuals from harm, overcrowding, understaffing, and inhumane conditions of confinement. In their prayer for relief, the plaintiffs detail five pages of mandatory injunctive relief they seek the court to impose. (Compl., ECF No. 1 at 48-54.)

## DISCUSSION

### A.    Amended Motion to Dismiss

#### 1.    Rule 12(b)(6) Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). The court "may also consider documents attached to the complaint, see Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006)). "An integral document is a document that by its very existence, and *not the mere information it contains,* gives rise to the

legal rights asserted." <u>Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC</u>, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (internal quotation marks omitted).

Plausibility requires that, accepting the factual allegations as true, the plaintiff raises a right to relief above the speculative level. <u>Robertson v. Sea Pines Real Est. Companies, Inc.</u>, 679 F.3d 278, 288 (4th Cir. 2012) (quoting <u>Twombly</u>, 550 U.S. at 555). Importantly, the pleading requirement that the plaintiff's claim be "plausible," is a rejection of the old pleading standard that allowed plaintiffs to survive a motion to dismiss whenever their pleading left open the *possibility* that a plaintiff might later establish some set of undisclosed facts to support their claim. <u>McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.</u>, 780 F.3d 582, 587 (4th Cir. 2015) (quoting <u>Twombly</u>, 550 U.S. at 561).

### 2.    Plaintiffs' Claims

#### a.    Fourteenth Amendment Generally

The Complaint is filed pursuant to 42 U.S.C. § 1983, which " 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979)). To state a claim upon which relief can be granted under § 1983, the plaintiffs must allege: (1) that their rights secured by the Constitution or laws of the United States were violated, and (2) that the alleged violations were committed by a person acting under the color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). Pertinent to the plaintiffs' § 1983 claims, the Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Due Process Clause guarantees a fair procedure in connection with any deprivation of life, liberty, property by a state, but it also provides substantive guarantees that protect individuals' liberty

against certain government actions, regardless of the fairness of the procedures used to implement them. Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). The United States Supreme Court has held that such substantive protections apply to those who are involuntarily committed by the State. See Youngberg v. Romeo, 457 U.S. 307, 315 (1982) (stating that a person involuntarily committed to a state mental institution is not deprived of all substantive liberty interests under the Fourteenth Amendment merely because they were committed under proper procedures).

The plaintiffs rely on precedent specifically recognizing that the Due Process Clause guarantees to juveniles who are in custody the right to reasonably safe conditions of confinement, freedom from unreasonable bodily restraint, and minimally adequate training to protect those interests. Alexander S. By & Through Bowers v. Boyd, 876 F. Supp. 773, 797-98 (D.S.C. 1995) (citing Youngberg, 457 U.S. at 307); accord J.H. v. Williamson Cnty., Tennessee, 951 F.3d 709, 717 (6th Cir. 2020); Vazquez v. Cnty. of Kern, 949 F.3d 1153, 1163 (9th Cir. 2020); A.J. by L.B. v. Kierst, 56 F.3d 849, 854 (8th Cir. 1995); but see Ingraham v. Wright, 430 U.S. 651, 669 (1977) (reserving the question of whether the Cruel and Unusual Punishment Clause applies to detained juveniles); Nelson v. Heyne, 491 F.2d 352, 355 (7th Cir. 1974) (applying the Eighth Amendment's Cruel and Unusual Punishment Clause to claims about conditions of confinement at a juvenile facility). The safety guaranteed by the Due Process Clause is a right to reasonable protection from the aggression of other juveniles and staff. Alexander S., 876 F. Supp. at 797-98 (citing Thomas S. by Brooks v. Flaherty, 699 F. Supp. 1178, 1200 (W.D.N.C. 1988), aff'd, 902 F.2d 250 (4th Cir. 1990)). Freedom from unreasonable bodily restraint includes freedom from unreasonably restrictive conditions of confinement that are not reasonably related to the legitimate security or safety needs of the institution. Alexander S., 876 F. Supp. at 798. The minimally adequate training

required can generally be defined as training which is reasonable in light of the identifiable liberty interests and the circumstances of the case. See Youngberg, 457 U.S. at 319, n.25. In other words, the hallmark of the Due Process Clause's protection is the reasonableness of the State's methods of protecting the juveniles, but the court must show deference to the professional judgment of professionals who administer the facility, and federal intrusions into operation of state institutions should be minimized. Id. at 322-23.

        **b.**        **Disability Statutes Generally**

Claims pursuant to Title II of the ADA and the Rehabilitation Act can be analyzed together because they are substantially the same, differing only on the third element. To state a claim, the plaintiffs must plausibly allege that (1) they have a disability; (2) they are otherwise qualified to receive the benefits of a public service, program, or activity; and (3) they were denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disabilities. Wicomico Nursing Home v. Padilla, 910 F.3d 739, 750 (4th Cir. 2018) (quoting Nat'l Fed'n of the Blind v. Lamone, 813 F.3d 494, 503 (4th Cir. 2016)). Generally, under the Rehabilitation Act, the plaintiffs must plausibly allege that they were excluded "solely by reason of" their disability, whereas the ADA requires only that the disability was "a motivating cause" of the exclusion. Wicomico Nursing Home, 910 F.3d at 750 (quoting Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 461 (4th Cir. 2012)).

Likewise, the IDEA requires that all children with disabilities, as defined by 20 U.S.C. § 1401(3), receive a free appropriate public education ("FAPE"). The FAPE must provide the children with meaningful access to the educational process in the least restrictive and appropriate environment, with the child participating, to the extent possible, in the same activities as non-

disabled children.  MM ex rel. DM v. Sch. Dist. of Greenville Cnty., 303 F.3d 523, 526 (4th Cir. 2002) (citing 20 U.S.C. § 1412(a)(5)(A)).

>    **3.    Defendants' Motion to Dismiss**

>        **a.    Pleading Deficiencies—All Claims**

The defendants argue that the plaintiffs fail to plausibly allege that they are entitled to relief on their claims.  Specifically, the defendants argue that the Complaint fails to allege facts that plausibly show that the plaintiffs have been harmed by the purported violations of federal constitutional and statutory law.  (Defs.' Am. Mot. Dismiss, ECF No. 81 at 25-26.)  The court agrees.

**Iqbal v. Ashcroft**.  The Supreme Court's opinion in Iqbal compels this conclusion, especially in connection with the § 1983 claims.  In Iqbal, a Muslim federal pretrial detainee alleged violations of his due process rights based on the conditions of his confinement following the 9/11 attacks.  Iqbal alleged that he was unconstitutionally subjected to 23-hour isolation periods and other harsh conditions of confinement.  See Iqbal, 556 U.S. at 668.  Thus, although Iqbal's claim was based on the Fifth Amendment's Due Process Clause rather than the Fourteenth Amendment's, the claims in Iqbal are analogous to the ones pressed in the present case based on the conditions at DJJ, as both cases assert similar types of deprivations of due process.

The amended complaint in Iqbal asserted twenty-one causes of action and spanned fifty-four pages.  See Am. Compl., Elmaghraby et al. v. Ashcroft, C/A No. 1:04-cv-1809-JG-SMG (E.D.N.Y. Sept. 30, 2004), ECF No. 35.  The Court observed that the Iqbal complaint contained various allegations against defendants or actors who were not then before the court.  Iqbal, 556 U.S. at 668.  For instance, the Iqbal complaint alleged that Iqbal's jailors kicked him in the stomach, punched him in the face, and dragged him across his cell without justification; subjected

him to serial strip and body cavity searches; and refused to let him pray because he was a "terrorist." With respect to the defendants then before the Court—Attorney General Ashcroft and FBI Director Mueller—the Iqbal complaint asserted that they adopted an unconstitutional policy that subjected Iqbal to harsh conditions of confinement on account of his race, religion, and national origin. See Am. Compl. ¶¶ 69, 96, Elmaghraby et al. v. Ashcroft, C/A No. 1:04-cv-1809-JG-SMG (E.D.N.Y. Sept. 30, 2004), ECF No. 35 at 13-14, 17-18. Thus, the Supreme Court's discussion of the sufficiency of Iqbal's pleading of his due process claims based on the defendants' alleged policy resulting in unconstitutional conditions of confinement are particularly instructive to the analysis of the instant Complaint's averments under § 1983. See Iqbal, 556 U.S. at 675 (noting that a Bivens claim is the "federal analog" to suits brought against state officials under § 1983. And in light of the fact that Iqbal's claims were based on assertions of discrimination, they are also relevant to the analysis of the instant Complaint's statutory causes of action asserting discrimination based on the juveniles' disabilities.

Despite its length and detail, the Supreme Court found that Iqbal's complaint did not satisfy Rule 8's pleading standard. The Supreme Court demanded a two-step analysis. The first step requires a court to identify allegations that are no more than conclusions, which are not entitled to any assumption of truth, and disregard them. See id. at 679. But if the conclusions are supported by factual allegations, the second step requires the court to assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. This requires the plaintiff to assert facts that show the conduct complained of is more than simply consistent with unlawful behavior. Unless the facts complained of are not only compatible with, but indeed are more likely explained by, unlawful behavior, the complaint must be dismissed. Id. at 680 (discussing Twombly, 550 U.S. at 567).

**Allegations in the Complaint.**  In response to the defendants' motion, the plaintiffs cite to specific paragraphs in the Complaint to support their claim that they have been harmed by the defendants' actions.  (Pls.' Resp. Opp'n, ECF No. 89 at 10.)  Employing Iqbal's two-step process, this court must initially disregard the conclusory averments devoid of factual context.  Only factual allegations can be accepted as true.  Turning specifically to the paragraphs the plaintiffs rely on in their memorandum to show that they have been harmed, the court depicts in strike-out font the Complaint's conclusory or unsupported allegations that must be disregarded.

> Consistent with the national NAACP's mission, the South Carolina NAACP, on behalf of its members and the other constituents it serves, advocates for a society in which all individuals have equal rights, all children have access to a free, high quality public education, and all persons are free from disproportionate incarceration and racially motivated practices.  ~~The South Carolina NAACP has seen its mission substantially impaired by DJJ's policies and practices challenged in this lawsuit.~~  The majority of the children detained ~~and traumatized~~ by DJJ are Black.  ~~DJJ's failure to keep these children safe or to provide them with basic rehabilitative services harms the South Carolina NAACP's efforts to promote greater equality across the state.~~
> . . .
> DRSC operates to protect and advance the legal, civil, and human rights of people with disabilities in South Carolina.  ~~It has been harmed by DJJ's persistent constitutional and statutory violations.~~  DRSC represents all disabled children within DJJ custody.  DJJ has directly harmed these children by failing to protect them, by exposing them to unreasonable dangers, by forcing them to endure prolonged periods of isolation, ~~and by failing to provide them with adequate services.~~  ~~This has meaningfully impaired DRSC's ability to carry out its organizational mission of advocating for detained youth who are disabled and in the custody of DJJ.~~  The interest DRSC seeks to protect through its participation in this action—to ensure that DJJ meets its constitutional and statutory obligations to disabled minors in DJJ custody—is germane to DRSC's purpose.
> . . .
> Justice 360 provides direct representation to children in the custody of DJJ and the South Carolina Department of Corrections.  Justice 360 also provides legal resources and engages in public education and advocacy around youth detention and capital punishment.  The interest Justice 360 seeks to protect in this action—that DJJ complies with its constitutional and statutory obligations to minors in DJJ custody—is germane to its purpose.  ~~Justice 360's ability to carry out its mission,~~

~~including direct representation of children in DJJ custody, has been substantially impaired by DJJ's constitutional and statutory violations~~.

(Compl. ¶¶ 9, 11, 13, ECF No. 3-5.)

**Court's Analysis.** Put simply, the plaintiffs' allegations of harm are conclusory and unsupported by facts, and the plaintiffs' allegations fail to plausibly show that the defendants' purported constitutional and statutory violations caused their injuries. These allegations are precisely the type of "threadbare recitals" of an element of a cause of action that are prohibited. Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The plaintiffs assert that the defendants' conduct has "harmed" or "meaningfully or substantially impaired" the plaintiff organizations' ability to carry out their missions without explaining how. Id. (stating Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). No allegations of fact accompany these conclusions to support them.

Similarly, the plaintiffs fail to provide any allegations that would connect the constitutional injuries suffered by the juveniles, which are extensively detailed, to the purported harms suffered by the plaintiffs. Id. Without providing specific facts, the plaintiffs allege that constitutional and statutory injuries to unidentified juveniles in DJJ's custody impact the NAACP's efforts to promote equality, Disability Rights's ability to advocate for detained youth, and Justice 360's representation of detained children. Though the Complaint includes over 150 paragraphs of factual allegations, mostly detailing how the *juveniles* in DJJ's custody are harmed by purported constitutional and statutory violations, none of those paragraphs specifies how the injuries suffered by the juveniles impact the operation of the plaintiff organizations. Again, the Complaint is devoid of allegations that plausibly show that any protected liberty interest of the plaintiff organizations is harmed by the juveniles' constitutional and statutory injuries.

Relatedly, the Complaint fails to provide specific facts that plausibly show that the organizations have a connection to any specific juveniles that are currently or likely to experience the purported unconstitutional and statutory harms upon which their claims are based. The plaintiffs' Complaint is full of anecdotal allegations about how current and past juveniles in DJJ custody have experienced some of the purported federal violations, but the Complaint fails to include facts showing that any of those juveniles are in any way associated with their organizations.[1]

**Why the Plaintiffs' Arguments Cannot Prevail.** The plaintiffs argue that the court's order finding that Justice 360 has organizational standing to sue precludes a finding that Justice 360 has not plausibly alleged a claim upon which relief can be granted. However, the plaintiffs conflate the distinct standards for Article III standing and Rule 8's pleading requirement to state a plausible claim. While the district judge held that Justice 360 has alleged facts sufficient to claim that it has suffered a concrete injury that is redressable, (Order, ECF No. 68 at 7-8), Justice 360 fails to plead facts that plausibly show that it is *entitled to the relief* it has standing to seek. See Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[1] In affidavits filed in support of their amended motion for a preliminary injunction, filed the same day as DJJ's amended motion to dismiss, the plaintiffs indicate that three juveniles who are clients of Justice 360 are still in DJJ custody. However, the plaintiffs have not moved to amend their pleading to include or incorporate these allegations, and the plaintiffs may not amend their pleadings through affidavits attached to an amended motion for a preliminary injunction. See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011) (stating a court cannot consider new facts or evidence that go beyond the pleadings when ruling on a Rule 12(b)(6) motion); see, e.g., Advanced Fraud Sols., LLC v. Core Techs., Inc., C/A No. 1:17CV1080, 2018 WL 4688393, at *2 (M.D.N.C. Sept. 29, 2018) (declining to consider documents related to the plaintiff's motion for preliminary injunction and expedited discovery when ruling on the defendant's motion to dismiss because the documents were not attached to, or incorporated by reference in, the complaint).

alleged.") (internal quotation marks omitted) (citing <u>Twombly</u>, 550 U.S. at 556); <u>see also</u> <u>Justice</u> <u>360 v. Stirling</u>, C/A No. 3:20-3671-MGL, 2021 WL 4462406 (D.S.C. Sept. 29, 2021), <u>rev'd on</u> <u>other grounds by</u> 42 F.4th 450 (4th Cir. 2022). It is not enough for Justice 360 to plausibly allege violations of federal constitutional and statutory law; Justice 360 must also allege facts that show that Justice 360 itself is entitled to relief for the purported violations. <u>See</u> Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that *the pleader* is entitled to relief[.]") (emphasis added). If the organizational plaintiffs are indeed suffering harm because of some action or inaction by DJJ, no facts are provided in the Complaint that support that conclusion.

The plaintiffs also argue that they plausibly alleged claims for relief based on "associational injuries" for Disability Rights and NAACP because their members or constituents held at DJJ are exposed to unconstitutional conditions. The plaintiffs again rely on the district judge's findings on Justice 360's standing to support their claim for relief, but the Complaint identifies no harms to Disability Rights or NAACP themselves that plausibly show they are entitled to relief for the claims they assert. Significantly, the district judge found Justice 360 had organizational standing, but expressly did not address associational standing. Also, the district judge's order on standing did not find that Disability Rights or NAACP plausibly alleged it was harmed by the defendants. Though the district judge found that Justice 360's standing was imputable to the other defendants pursuant to <u>Bostic v. Schaefer</u>, 760 F.3d 352, 370 (4th Cir. 2014), the district judge did not find that Disability Rights or NAACP could plausibly show that the defendants' purported violations entitled those plaintiffs to relief. <u>Compare</u> <u>Bostic</u>, 760 F.3d at 370 (rejecting the defendant's argument that every plaintiff must have standing to satisfy the case-or-controversy requirement, and noting that a case is justiciable if some, but not necessarily all, of the plaintiffs have standing

as to a particular defendant) <u>with</u> <u>Friends of Animals v. Zinke</u>, 373 F. Supp. 3d 70, 91 (D.D.C. 2019) (finding the plaintiff had organizational standing to bring a claim, but that the plaintiff failed to state a claim upon which relief can be granted), <u>aff'd sub nom.</u> <u>Friends of Animals v. Bernhardt</u>, 961 F.3d 1197 (D.C. Cir. 2020); <u>see also</u> <u>Meyer v. Fay Servicing, LLC</u>, 385 F. Supp. 3d 1235, 1241 (M.D. Fla. 2019); <u>Ainsworth v. Owenby</u>, 326 F. Supp. 3d 1111, 1121 (D. Or. 2018).

The cases cited by the plaintiffs actually bolster the court's conclusion that they have failed to state a plausible claim.  <u>See</u>, <u>e.g.</u>, <u>Savidge v. Fincannon</u>, 836 F.2d 898, 900 (5th Cir. 1988); <u>Alexander S. By & Through Bowers v. Boyd</u>, 876 F. Supp. 773 (D.S.C. 1995); <u>United States v. Hinds Cnty.</u>, C/A No. 3:16-CV-489-CWR-BWR, 2023 WL 1116530 (S.D. Miss. Jan. 30, 2023). In those cases, federal courts proceeded with merits determinations on federal constitutional and statutory claims similar to those raised by the plaintiffs.  However, the claims in the cases cited by the plaintiffs were asserted to vindicate the rights of the institutionalized persons *directly* harmed by the unlawful conditions, not organizations that were *indirectly* injured by the harm to institutionalized persons.  For instance, in <u>Alexander S.</u>, the plaintiffs were themselves juveniles housed in DJJ suing for injunctive relief and damages to vindicate the harm they suffered as a result of unlawful conditions of confinement.  <u>Savidge</u> was brought by a minor who alleged the defendants' unconstitutional conduct directly harmed him.  <u>Hinds County</u> considered a consent decree arising out of an investigation by the United States Department of Justice.[2]  The plaintiffs rely on "courts across the country allowing similar claims to proceed to the merits stage," (Pls.' Resp. Opp'n, ECF No. 89 at 10), but they do not cite to any such cases brought by organizations suing for indirect harm that is incident to the direct (and discrete) harm to institutionalized persons.

---

[2] As explained in the Complaint, DJJ and the Department of Justice entered into a settlement agreement on April 14, 2022, resolving a DOJ investigation into conditions of confinement at DJJ's Broad River Road Complex.

And even if such a claim were cognizable, the plaintiffs' Complaint here fails to plausibly allege that they are entitled to relief on such a claim.  Although the plaintiffs raise claims of constitutional violations that may affect the legally protected interests of the juveniles, they fail to allege facts in the Complaint that plausibly suggest any harm to a legally protected interest of their organizations that proximately flows from those purported violations.

### b.     Additional Reasons for Dismissal of § 1983 Claims

**Zone of Interest.**  As discussed above, even if a plaintiff has Article III standing, its pleading may nevertheless fail to state a claim upon which relief can be granted.  See Friends of Animals, 373 F. Supp. 3d at 91; Meyer, 385 F. Supp. 3d at 1241; Ainsworth, 326 F. Supp. 3d at 1121.  This may be the case, for example, when the litigant's asserted interests do not fall within the "zone of interest" arguably protected or regulated by the statute or constitutional provision underlying its claims.  Although the United States Supreme Court has rejected the nomenclature previously used to address this requirement, see Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 125-127 (2014) (rejecting the terms "prudential standing" and "statutory standing" as misnomers as applied to the "zone of interest" analysis), precedent makes clear that in determining whether the scope of a private remedy created by Congress includes the relief sought by a particular plaintiff, that plaintiff must fall within the "zone of interest" of the statutory protection.  The statutory language is the key.  Id.  In interpreting the statutory language, the court must determine whether " 'this particular class of persons ha[s] the right to sue under this substantive statute.' "  Id. at 127 (quoting Ass'n of Battery Recyclers, Inc. v. EPA, 716 F.3d 667, 675-676 (D.C. Cir. 2013)).  Thus, the pertinent question is whether the organizational plaintiffs here fall within the class of plaintiffs whom Congress has authorized to sue under § 1983, the ADA, the Rehabilitation Act, and the IDEA.  Lexmark Int'l, 572 U.S. at 128.  In considering this

question, the Supreme Court has directed that courts use a straightforward statutory interpretation analysis to determine whether the cause of action in the statute in question extends to plaintiffs like the ones in the case at bar. Id. at 129.

Four statutes are invoked here. The court turns first to the language of 42 U.S.C. § 1983,[3] which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Shorn to its most pertinent for purposes of this case, the statutory language dictates that "[e]very person who, under color of [state law] . . . subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Thus, the plain language imposes liability on the state actor only to the person *subjected to and injured by* a deprivation of a right, privilege, or immunity secured by the Constitution or law. By use of the definite article "the," Congress conveyed that the person deprived and the party injured must be the same. See, e.g., Nielsen v. Preap, 139 S. Ct. 954, 965 (2019) ("[G]rammar and usage establish that 'the' is a function word indicating that a following noun or noun equivalent is definite or has been previously specified by context.") (internal quotation marks omitted); Cochise v. Consultancy, Inc. v. U.S. ex rel. Hunt, 139 S. Ct. 1507, 1514 (2019) (stating that Congress's use of the definite article

---

[3] Both parties loosely refer to whether the organizational plaintiffs fall within the "zone of interest" of the Fourteenth Amendment, but this poses the question too broadly. The Fourteenth Amendment creates no cause of action. Rather, the pertinent question is whether the plaintiffs fall within the zone of interest of the remedial statute Congress passed to pursue redress for violations of the Fourteenth Amendment—that is, § 1983. Therefore, the court must look to the language of § 1983 for an answer to this question.

"the" in describing the official covered by a statute generally indicates there is only one person covered); see also Inmates v. Owens, 561 F.2d 560, 562-63 (4th Cir. 1977) ("In order to state a civil rights claim upon which relief can be granted under 42 U.S.C. § 1983, one must allege that he, himself, sustained a deprivation of a right, privilege or immunity secured to him by the Constitution and laws of the United States.").[4]  Here, although the organizational plaintiffs assert their own distinct injury, they simply are not the persons subjected to the constitutional deprivation of which they complain.  Significantly, no facts show that any liberty interest of the plaintiff organizations has been impaired.  Cf. White Tail Park, Inc. v. Stroube, 413 F.3d 451, 461 (4th Cir. 2005) (observing that the plaintiff entity with organizational standing was pursuing constitutional claims different from the ones raised by the individual plaintiffs).  Unlike the juveniles who are allegedly subjected to violations of the Fourteenth Amendment, the organizational plaintiffs— even if they have Article III standing—lie outside the zone of interests protected by § 1983, which provides a remedy only for *federally protected* rights.  See, e.g., Vote.Org v. Callanen, 39 F.4th 297, 304 (5th Cir. 2022) (stating that even if the plaintiff organization could show it was harmed

---

[4] Notably, courts may allow organizations to assert the federal rights of third parties when certain circumstances are present.  See generally Erwin Chemerinsky, Federal Jurisdiction § 2.3.4 at 92-93 (8th ed. 2021) (discussing limitations and exceptions regarding third-party standing); see also Hunt v. Washington State Apple Advert. Comm'n, 432 U.S. 333 (1977) (providing for associational standing to bring suit on behalf of an association's members).  But the plaintiffs have specifically disclaimed reliance on the theory of permissible third-party standing (Pls.' Resp. Opp'n Mot. Dismiss, ECF No. 15 at 15-16), and therefore, their citations to third-party cases such as Planned Parenthood S. Atl. v. Wilson, 26 F.4th 600, 608 n.* (4th Cir. 2022), vacated on other grounds by 2022 WL 2900658 (4th Cir. July 21, 2022), are misplaced.  Further, the assigned magistrate judge has previously found that the plaintiffs failed to plead facts sufficient to show associational standing.  (Report and Recommendation, ECF No. 45; cf. Order, ECF No. 68 (expressly not addressing the plaintiffs' objections regarding associational standing)).  And Allee v. Medrano, 416 U.S. 802 (1974), does not help the plaintiffs either, as that case involved a union asserting its own constitutional rights, as well as those of its members.  Thus, the union in that case would have had organizational standing to assert *its own constitutional rights*, and associational standing to assert the constitutional rights of its *members*.  The plaintiff organizations here have neither.

by the challenged statute, the plaintiff likely failed to state a claim upon which relief can be granted because the plaintiff's § 1983 claims sought to vindicate the right of third parties who were not named in the suit) (citing Lexmark Int'l, 572 U.S. at 127-28 n.4)); see also Warth v. Seldin, 422 U.S. 490, 499 (1975) ("The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. . . . [E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

The plaintiffs' arguments to the contrary are unpersuasive with respect to their § 1983 claims. The plaintiffs cite to the language in Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), stating that "the Civil Rights Act was intended to provide a remedy, to be broadly construed, against all forms of official violation of federally protected rights." Id. at 700-01. But that language is in the context of a discussion of who can be sued, not who can sue.

And Congress knows how to express when it means otherwise. See Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute when it means and means in a statute what it says there."). For example, notably, the language of § 1983 contrasts with that of the ADA and Rehabilitation Act, whose zones of interest have been construed to be equivalent with Article III standing. Unlike § 1983, the remedial language of those statutes use the word "any" rather than "the". 42 U.S.C. § 12133 (ADA); 29 U.S.C. § 794a (Rehabilitation Act). Courts have therefore concluded that under the ADA and Rehabilitation Act, the phrase "any person" includes entities and individuals—the statutory remedies are not limited to qualified individuals with disabilities. See, e.g., Disability Rts. Penn. v. Penn. Dep't of Hum.

<u>Servs.</u>, C/A No. 1:19-CV-737, 2020 WL 1491186, at *8-9 (M.D. Pa. Mar. 27, 2020) (citing

<u>Addiction Specialists, Inc. v. Twp. of Hampton</u>, 411 F.3d 399, 407 (3d Cir. 2005)).  Similarly, the

IDEA's text permitting "any party aggrieved" to bring a civil action has been held to extend to any

party with Article III standing.  See <u>Family & Children's Ctr., Inc. v. Sch. City of Mishawaka</u>, 13

F.3d 1052, 1061 (7th Cir. 1994) (holding that the language of the IDEA implicitly permitted a

broad group of plaintiffs to bring a lawsuit and only Article III standing need be satisfied).  Based

on the plain language of those statutes, courts have found that if a party has Article III standing,

then it falls within the statute's zone of interests.  See, <u>e.g.</u>, <u>Disability Rights of Penn.</u>, 2020 WL

1491186, at *9.  But that is not the case with § 1983.

   **Proximate cause requirement**.  The conclusion that the organizational plaintiffs here fail

to state a plausible claim under § 1983 is further supported by other portions of <u>Lexmark</u>.  See

<u>Lexmark Int'l</u>, 572 U.S. at 132.  As the Supreme Court held, "we generally presume that a statutory

cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the

statute."  <u>Id.</u>  Thus, the constitutional deprivation alleged here must be the proximate cause of the

organizational plaintiffs' injury.  The inquiry is "whether the harm alleged has a sufficiently close

connection to the conduct the statute prohibits."  <u>Id.</u> at 133.  Crucially, when, as here, the

organizational plaintiffs' harm is purely derivative of the "misfortunes visited upon a third person

by the defendant's acts," the proximate cause requirement is not satisfied.  <u>Id.</u>

   The plaintiffs incorrectly assert that the district judge's finding on organizational standing

precludes these arguments.  But the statutory questions of proximate cause and zone of interest

relate to elements of the cause of action, not Article III standing requirements.  See <u>Lexmark Int'l</u>,

572 U.S. at 134 n.6 (comparing the more stringent proximate cause requirement to the lesser

Article III standing requirement that the injury be "fairly traceable" to the defendant's conduct).

"[L]ike any other element of a cause of action, it must be adequately alleged at the pleading stage for the case to proceed." Id. (citing Iqbal, 556 U.S. at 678-79).  "If a plaintiff's allegations, taken as true, are insufficient to establish proximate causation, then the complaint must be dismissed . . . ." Id.

### c.    Additional Reasons for Dismissing the Disability Statutory Claims

DJJ also specifically argues that the plaintiffs fail to state an ADA, Rehabilitation Act, or IDEA claim upon which relief can be granted because they fail to identify a juvenile they represent who is housed at DJJ, identify a disability for the juveniles that is covered by the statutes, or plausibly allege that the juveniles have been denied benefits under the statutes because of their disabilities.  (Defs.' Am. Mot. Dismiss, ECF No. 81 at 29-31.)  The court agrees.

As discussed above, with respect to Iqbal's claims of discrimination, the Supreme Court concluded that the factual averments failed to plausibly show that a discriminatory motive underpinned Ashcroft's and Mueller's actions.  Iqbal, 556 U.S. at 680-83.  Such is likewise the case here with respect to the plaintiffs' claims based on disability discrimination.

In opposing the defendants' motion, the plaintiffs rely on the allegations quoted below from the Complaint to support their ADA and Rehabilitation Act claims.  The plaintiffs argue that these allegations suffice to plausibly allege that the DJJ fails to provide activities, programs, and services "by reason of" the juveniles' disabilities.  (Pls.' Resp. Opp'n, ECF No. 89 at 16.)  Again, the court disregards the conclusory or factually unsupported allegations denoted in strike-out font.

> As a result of DJJ's policies and practices regarding individuals with disabilities, DRSC constituents are ~~unnecessarily~~ placed and retained in solitary confinement because of their disabilities; are denied equal access to activities, programs, and services for which they are otherwise qualified; and are denied the opportunity to receive services in the most integrated setting appropriate to their needs. ~~Thus, DJJ discriminates against "qualified individuals with a disability" within the meaning of the ADA.~~ 28 C.F.R. § 35.152(b)(2).

. . .

~~DJJ uses criteria or methods of administration that either purposely or in effect discriminate on the basis of handicap and defeat or substantially impair accomplishment of the objectives of DJJ's programs or activities with respect to handicapped persons~~. 28 U.S.C. § 42.503(b)(3).

(Compl. ¶¶ 208, 216, ECF No. 1 at 45-46.)

The Complaint relies on conclusory allegations without supporting facts. Iqbal, 556 U.S. at 678. The plaintiffs allege that Disability Rights has constituent juveniles that are in DJJ custody, but they fail to include facts about what disabilities those juveniles who that could show that they are covered by the ADA and Rehabilitation Act's definition of disability. The Fourth Circuit has found that such conclusory allegations fail to state an ADA or Rehabilitation Act claim upon which relief can be granted. For example, in Wicomico Nursing Home, the Fourth Circuit affirmed a district court's grant of the defendants' motion to dismiss as to the plaintiff nursing home's ADA and Rehabilitation Act claim brought on behalf of the nursing home's residents, finding:

> The Complaint, however, pleads only the vague generality that the Residents are "qualified individuals with a disability." J.A. 15 ¶ 23. This conclusory phrase is the sum total of the Complaint's allegations addressing the elements of an ADA claim. The remainder of the Complaint fails to provide any additional allegations as to how or why the Residents are disabled or meet the statutory requirements for disability. . . . The Complaint thus fails, on its face, to plead the necessary and basic elements of an ADA claim.

Wicomico Nursing Home, 910 F.3d at 751. Moreover, the plaintiffs' Complaint repeats the causation standard for showing violations of the ADA and Rehabilitation Act without pleading any facts that could plausibly show that DJJ's failure to provide activities, programs, and services to the juveniles is motivated by or solely caused by their disabilities. Such conclusory recitals of a claim's elements without supporting facts fail to comply with the federal pleading requirements.

See Iqbal, 556 U.S. at 678 (stating Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").[5]

In response to the motion, the plaintiffs argue that they do not have to plead facts establishing that the children's disabilities were a motivating cause of the discrimination, and instead can rely on their allegations supporting a disparate impact theory. See A Helping Hand, LLC v. Baltimore Cnty., Md., 515 F.3d 356, 362 (4th Cir. 2008) ("[C]ourts have construed Title II of the ADA to allow a plaintiff to pursue three distinct grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations."). Specifically, the plaintiffs argue that they have provided sufficient allegations that DJJ policies and practices have a disparate impact on children with disabilities and that DJJ has failed to make accommodations for those children. (Pls.' Resp. Opp'n, ECF No. 89 at 16.) The plaintiffs cite to the following paragraphs of their Complaint to support this argument:

> DJJ violates the ADA by failing to ensure that children with disabilities have access to, are permitted to participate in, and are not denied the benefits of programs, services, and activities provided by DJJ. 42 U.S.C. § 12132; 28 C.F.R. § 35.152(b)(1).

> DJJ violates the ADA by failing to make "reasonable modifications to policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7).

(Comp. ¶¶ 206-07, ECR No. 1 at 45.)

Again, the plaintiffs fail to plead facts, and instead just recite the elements of a disparate impact claim. See, e.g., Payan v. Los Angeles Cmty. Coll. Dist., 11 F.4th 729, 738 (9th Cir. 2021) ("To assert a disparate impact claim, a plaintiff must allege that a facially neutral government

---

[5] In the Complaint, the only organization listed as being harmed by the purported violations of the ADA, Rehabilitation Act, and IDEA is Disability Rights. (Compl. ¶¶ 203, 209, 211, 220, 222, ECF No. 1 at 44-48.)

policy or practice has the effect of denying meaningful access to public services to people with disabilities.") (internal quotation marks omitted); B.C. v. Mount Vernon Sch. Dist., 837 F.3d 152, 158 (2d Cir. 2016) ("To establish a prima facie case under a disparate impact theory, [a] plaintiff must demonstrate (1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices.") (internal quotation marks omitted).  Here, in addition to the defendants' previously identified failure to allege what disabilities the juveniles have that are impacted by DJJ's policies, the plaintiffs provide no facts to show *how* DJJ's policies disparately impact disabled juveniles compared to other juveniles.

Similarly, the plaintiffs cannot rely on their conclusory claim that Disability Rights's constituents fall within the definition of disability under the IDEA.  The court must disregard the sole allegation—again depicted in strike-out font below—pertaining to the IDEA claim.

> ~~DRSC's incarcerated population includes children who are or should be identified for special education and related services under the IDEA, 20 U.S.C. §§ 1400 et. seq. Therefore, they qualify as children with disabilities for purposes of the IDEA.~~

(Compl. ¶ 222, ECF No. 1 at 47.)  This is because the conclusory allegation requires the court to assume that Disability Rights's constituents are in DJJ custody *and* that Disability Rights's constituents meet the definition of a "child with a disability" in 20 U.S.C. § 1401(3).  Again, mere recitation of legal elements or assertions of legal conclusions without supporting facts does not meet the federal pleading standard.  See Iqbal, 556 U.S. at 678 (stating Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

In response to DJJ's motion, the plaintiffs cite to one allegation that arguably provides supporting facts to their statutory claim.  The plaintiffs allege:

> DJJ's policies to evaluate detained youth with intellectual disabilities and place them on an IEP are inadequate.  DJJ frequently becomes aware that children in its

custody have undiagnosed intellectual disabilities, yet does not attempt to evaluate or give additional supports to these individuals. For example, one Justice 360 client is a child who struggles with verbal communication. Despite that disability, DJJ has provided the child only one day of education over the past nine months.

(Compl. ¶ 142, ECF No. 1 at 33.)

However, the plaintiffs' factual averment here, though more detailed, is still insufficient—it does not identify the client or the nature of his disability, state whether the client is still in DJJ custody, or provide facts that would indicate whether the client's rights under the statutes will continue to be violated such that Justice 360 can prevail in this lawsuit. Nor does the allegation indicate what DJJ would need to do to provide this client with the benefits necessary to comply with the statutes. And even if the Complaint provided all of that information, it would not justify the sweeping, systemic injunctive relief sought by the plaintiffs, nor would it cure the pleading deficiency identified earlier—that the plaintiffs fail to allege facts suggesting that the purported harm to the juveniles at DJJ has harmed the plaintiffs themselves such that the plaintiffs have a plausible cause of action against DJJ based on any of these federal disability statutes.

For these reasons, the defendants' amended motion to dismiss should be granted.[6]

## B.     Plaintiffs' Amended Motion for Preliminary Injunction

Plaintiffs seeking a preliminary injunction must establish: (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is

---

[6] The court concludes that the defendants, at this stage of the proceedings, have failed to carry their burden to show they are entitled to dismissal on the other bases raised in their motion. Additionally, although the defendants argue that the failure to exhaust the IDEA's administrative remedies deprives the court of *subject matter jurisdiction* (Defs.' Am. Mot. Dismiss, ECF No. 81 at 18), the United States Court of Appeals for the Fourth Circuit has recently held that the "IDEA's exhaustion requirement is not a jurisdictional requirement but a claims-processing rule." K.I. v. Durham Pub. Sch. Bd. of Educ., 54 F.4th 779, 792 (4th Cir. 2022). So, the court is not required to address the exhaustion argument as a threshold matter.

in the public interest.  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction.  Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.") (internal citations omitted).  The plaintiffs must make a clear showing that the plaintiffs are likely to succeed on the merits of their claims.  Winter, 555 U.S. at 22; Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017) ("Courts considering whether to impose preliminary injunctions must separately consider each Winter factor.").

The court concludes that the plaintiffs cannot show a likelihood of success on the merits because, as explained above, the plaintiffs fail to state a claim upon which relief can be granted. See Arc of California v. Douglas, 757 F.3d 975, 993 (9th Cir. 2014) ("Although the standards for a motion for preliminary injunctive relief and dismissal under Rule 12(b)(6) are not conterminous, they overlap where a court determines that the plaintiff has no chance of success on the merits."); Benitez v. King, 298 F. Supp. 3d 530, 536 (W.D.N.Y. 2018) ("The standard for demonstrating a 'likelihood of success on the merits,' let alone a 'clear or substantial' showing of such entitlement, is far more demanding than the plausibility standard applied to survive dismissal for the failure to state a claim at the pleading stage.").  Put simply, the plaintiffs' failure to raise a plausible claim for relief in the Complaint necessarily precludes a finding that the plaintiffs can demonstrate a likelihood of success on the merits that could justify the issuance of a preliminary injunction. See, e.g., Hardnett v. M&T Bank, 204 F. Supp. 3d 851, 862 (E.D. Va. 2016) ("[T]he [plaintiffs] have not stated a claim for which relief can be granted on any of their underlying claims.  Therefore, they can show neither a likelihood of success, nor actual success, on the merits of those claims."),

aff'd 699 F. App'x 242 (4th Cir. 2017); EndoSurg Med., Inc. v. EndoMaster Med., Inc., 71 F.

Supp. 3d 525, 539 (D. Md. 2014) ("Merely providing sufficient factual allegations to meet the Fed.

R. Civ. P. 12(b)(6) standard of Twombly and Iqbal does not show a likelihood of success on the

merits.") (internal quotation marks and alterations omitted).   The plaintiffs' motion should

therefore be denied.

## RECOMMENDATION

The Complaint fails to assert facts plausibly stating a claim upon which relief can be

granted under 42 U.S.C. § 1983, the ADA, the Rehabilitation Act, and the IDEA.  Moreover, the

organizational plaintiffs are not in the zone of interest Congress intended to protect via § 1983,

which presents a separate and independent reason for dismissal of Counts 1-4.  And because the

Complaint fails to state a claim upon which relief can be granted, the plaintiffs cannot demonstrate

a likelihood of success on the merits as required for a preliminary injunction.

The court therefore recommends that the defendants' amended motion to dismiss (ECF No.

81) be granted and the plaintiffs' amended motion for a preliminary injunction (ECF No. 82) be

denied.  The court observes that throughout the year-long pendency of this case and in the face of

multiple motions to dismiss, the plaintiffs have forgone opportunities to amend the complaint.

They have not asserted that they should be given leave to amend if the court should find that the

instant Complaint fails to state a claim for relief, nor have they represented to the court that they

can plead other facts that would cure the deficiencies identified herein.  Consequently, leave to

amend should be denied and this action should be dismissed via final order.  See, e.g., Bing v.

Brivo Sys., LLC, 959 F.3d 605, 612 (4th Cir. 2020) (stating that where a party elects to stand on

the complaint as originally presented, it waives the right to later amend and the case should be

dismissed so that the district court's order is final and appealable) (citing <u>Chao v. Rivendell Woods, Inc.</u>, 415 F.3d 342, 345 (4th Cir. 2005)).


April 28, 2023                                  Paige J. Gossett
Columbia, South Carolina                        UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).