IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

South Carolina State Conference of NAACP;

Disability Rights of South Carolina;

Justice 360,

        *Plaintiffs*,

v.

South Carolina Department of Juvenile Justice;

Eden Hendrick, in her official capacity as
Executive Director of the South Carolina
Department of Juvenile Justice,

        *Defendants*.

Case No.: 0:22-cv-01338-MGL-PJG

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT**

    Defendants South Carolina Department of Juvenile Justice (DJJ) and Executive Director Eden Hendrick, by and through the undersigned counsel, submit this motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]  For the reasons below, the Court should dismiss Plaintiffs South Carolina State Conference of NAACP (SCNAACP), Disability Rights of South Carolina (DRSC), and Justice 360's amended complaint.

## INTRODUCTION

    "It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of prisons."  *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 (1973); *see also Meacham v. Fano*, 427 U.S. 215, 229 (1976) ("Federal courts do not sit to supervise state prisons, the administration of

---

[1] Under Local Civil Rule 7.04 (D.S.C.), "a supporting memorandum is not required" here.

which is of acute interest to the States.").  Indeed, it "is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley*, 482 U.S. 78, 84 (1987).  As Judge Anderson recognized, these interests apply equally to juvenile facilities at DJJ.  *Alexander S. ex rel. Bowers v. Boyd*, 876 F. Supp. 773, 804 (D.S.C. 1995).

On April 13, 2022, DJJ settled with the Department of Justice (DOJ)—following a comprehensive investigation—to "remedy the alleged constitutional violations identified by" DOJ at Broad River Road Complex (BRRC) and to "ensure that the conditions in [BRRC] support the rights of the youth confined there, encourage rehabilitation, and improve the likelihood that youth will succeed upon release."  ECF No. 1-7, at 2.  "As a result of DJJ's voluntary cooperation and willingness to implement meaningful change," the "Settlement Agreement, rather than contested litigation, represent[ed] the best opportunity to address DOJ's findings."  *Id.*  It still does.  And it is "subject to retention of jurisdiction and reinstatement upon the United States' motion" to resolve "any claim that" DJJ "materially breached any provision of the Agreement."  *United States v. S.C. Dep't of Juv. Justice*, No. 3:22-cv-01221-MGL, ECF No. 8, at 1–2 (D.S.C. Apr. 20, 2022).

Plaintiffs, however, sued DJJ and Director Hendrick on April 26, 2022.  ECF No. 1. Following a lengthy hearing, the Court issued its first report and recommendation (R&R) to dismiss the case for want of subject matter jurisdiction because Plaintiffs lacked standing.  ECF No. 45.  The district court rejected the R&R and—analyzing only Justice 360—found Plaintiffs had organizational standing, referring the matter back to this Court to address the remaining issues raised in Defendants' motion to dismiss.  ECF No. 68.

After a status conference, this Court issued a text order allowing the parties to file amended motions.  ECF No. 73.  Following extensive briefing on Defendants' amended motion to dismiss,

ECF Nos. 81, 89 & 94, Plaintiffs' amended motion for preliminary injunction, ECF Nos. 82, 88 & 97, and discovery issues, ECF Nos. 77, 78, 90 & 93, the Court issued a second R&R, finding "[t]he Complaint fails to assert facts plausibly stating a claim upon which relief can be granted under 42 U.S.C. § 1983, the ADA, the Rehabilitation Act, and the IDEA," ECF No. 99, at 25.  The Court recommended dismissing via final order because Plaintiffs never sought leave to amend.  *Id.*

Plaintiffs objected to the second R&R, and Defendants replied.  ECF Nos. 104 & 109.  On September 14, 2023, the district court adopted the R&R and dismissed Plaintiffs' original complaint, finding "the complaint itself includes only conclusory statements, which fail to state a claim as to harm for each cause of action."  ECF No. 115, at 2–3.  But the district court dismissed without prejudice, permitting Plaintiffs to file an amended complaint "no later than two weeks from the date of" the order.  *Id.* at 5–6.  Plaintiffs did so on September 28, 2023.  ECF No. 117.

The amended complaint mirrors the original.  Plaintiffs still purport to raise four Section 1983 claims, alleging DJJ violated the Fourteenth Amendment rights of "South Carolina youth" by (1) failing to protect juveniles; (2) using isolation or solitary confinement as punishment; (3) failing to provide rehabilitative services; and (4) providing substandard conditions of confinement as it relates to sanitation, nutrition, hygiene, exercise, and education.  *Id.* at ¶¶ 334–58.  Justice 360 and DRSC further assert that DJJ violated Title II of the Americans with Disabilities Act (ADA) by failing to make reasonable modifications to policies, practices, or procedures needed to avoid discriminating based on disability.  *Id.* at ¶ 364.  They also argue DJJ violated Section 504 of the Rehabilitation Act by denying juveniles with disabilities the opportunity to receive services in the most integrated setting appropriate to their needs.  *Id.* at ¶ 373.  Finally, they contend DJJ violated the Individuals with Disabilities Education Act (IDEA) by failing to provide a free and appropriate public education (FAPE).  *Id.* at ¶ 384.

Plaintiffs' six-page prayer for relief demanding "sweeping, systemic injunctive relief," ECF No. 99, at 23, within 30 days remains the same. *See* ECF No. 117, at 73–79; *cf.* 18 U.S.C. § 3626 ("The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.").

Further, the amended complaint still talks about "children" and "detained youth" in the abstract. Indeed, even when putting aside that the selective recap of the 60-year history of juvenile justice in South Carolina covers events outside the statute of limitations,[2] the first 50 pages read more like a white paper than a federal complaint. The only new material appears on pages 50–64 of the amended complaint. Toward the end, Plaintiffs again ask the Court to issue a mandatory injunction taking over South Carolina's juvenile justice system. To get there, Plaintiffs inflate organizational harms that do not result in a "drain" on resources, while simultaneously again failing to identify a juvenile member who has standing to bring these claims.

"Federal courts resolve cases and controversies, not crusades."[3] Because Plaintiffs slightly amended complaint suffers from the same problems as the original, this motion to dismiss follows.

## STANDARD

A Rule 12(b)(1) motion to dismiss asks "the fundamental question of whether a court has jurisdiction to adjudicate the matter before it." *Career Counseling, Inc. v. Amerifactors Fin. Grp.,*

---

[2] *See Owens v. Okure*, 488 U.S. 235, 245 (1989) (holding the applicable statute of limitations for Section 1983 claims is the "general or residual statute of limitations governing personal injury actions" for the state); S.C. Code Ann. § 15-3-530(5) (stating statute of limitations for personal injury claims is three years).

[3] *Timpson ex rel. Timpson v. McMaster*, 437 F. Supp. 3d 469, 472 (D.S.C. 2020), *aff'd in part, vacated and remanded in part on other grounds sub nom. Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238 (4th Cir. 2022).

*LLC*, 509 F. Supp. 3d 547, 553 (D.S.C. 2020).  "Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction."  *Pinkley, Inc. v. City of Frederick, Md.*, 191 F.3d 394, 399 (4th Cir. 1999).  In ascertaining jurisdiction, the Court "regard[s] the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the [motion] to one for summary judgment."  *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

On a Rule 12(b)(6) motion to dismiss, the Court must accept Plaintiffs' factual allegations as true and draw all reasonable inferences in their favor.  *See E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011).  But that "tenet . . . is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Further, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Facts pled that are merely consistent with liability are not sufficient."  *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).  While the Court is generally limited to the four corners of the complaint, it is "permitted to consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment."  *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015).

### ARGUMENT

The district court previously found organizational standing for Justice 360 "at this early stage of the litigation."  ECF No. 68, at 8.  But its finding was based on declarations attached to a now-moot motion for preliminary injunction filed in connection with a pleading that is no longer operative.  ECF Nos. 68 & 115.  As "the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct

5

consequences on the parties involved," "an actual controversy must be extant at all stages of review." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (cleaned up).

Given that the amended complaint supersedes the original complaint, moots all motions directed toward it, and makes some different allegations of purported harm, the slate is clean on this threshold issue of standing.[4]  Plaintiffs' alleged harm is insufficient to invoke the Court's jurisdiction.  After a year and a half of litigation and multiple rounds of motions, Plaintiffs still have not put forth a non-anonymous juvenile to support their case.  Because Plaintiffs lack standing to press their implausible claims, the Court should dismiss the amended complaint without leave to amend.  *See* ECF No. 109, at 20–27 (setting forth the reasons, which Defendants incorporate by reference here, why the Court should not grant leave to amend); *see also* ECF No. 99, at 25–26 (recommending to dismiss the original complaint without leave to amend).

I.    *Plaintiffs do not have standing to bring constitutional or statutory disability claims based on purloined alleged injuries of "South Carolina youths."*

"The plaintiff has the burden of establishing standing." *Somers v. S.C. State Elec. Comm'n*, 871 F. Supp. 2d 490, 496 (D.S.C. 2012).  Plaintiffs failed to carry that burden under any theory.

A.    *Plaintiffs lack Article III standing.*

To show constitutional standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

---

[4] *See, e.g.*, *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017) ("Because a properly filed amended complaint supersedes the original one and becomes the operative complaint in the case, it renders the original complaint 'of no effect.'" (quoting *Young v. City of Mt. Ranier*, 238 F.3d 567, 573 (4th Cir. 2001))); *Truauto, LLC v. Textron Specialized Vehicles, Inc.*, No. 2:19-cv-1381-RMG, 2019 WL 7811290, at *1 (D.S.C. Sept. 27, 2019) ("A timely filed amended pleading supersedes the original pleading."); *Perez v. Staples Contract & Commercial Inc.*, No. 3:13-cv-01775-JFA, 2013 WL 5570002, at *1 (D.S.C. Oct. 8, 2013) ("As a result, motions directed at the superseded pleading generally are to be denied as moot.").

6

An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). "The injury in fact requirement precludes those with merely generalized grievances from bringing suit to vindicate an interest common to the entire public." *Meyer v. McMaster*, 394 F. Supp. 3d 550, 559 (D.S.C. 2019) (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 156 (4th Cir. 2000). Indeed, "it is not enough that the party invoking the power of the court have a keen interest in the issue." *Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013). "[A] federal court may resolve only 'a real controversy with real impact on real persons.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (quoting *Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2103 (2019)).

"[W]here the plaintiff is an organization, the standing requirements of Article III can be satisfied in two ways. Either the organization can claim that it suffered an injury in its own right or, alternatively, it can assert 'standing solely as the representative of its members.'" *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 143 S. Ct. 2141, 2157 (2023) (quoting *Warth v. Seldin*, 422 U. S. 490, 511 (1975)).

         1.     *Plaintiffs lack associational standing.*[5]

To show associational standing, a plaintiff "must demonstrate that '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires

---

[5] The Supreme Court recently clarified that this type of standing—"standing solely as the representative of its members"—is actually called organizational standing. *See Students for Fair Admissions, Inc.*, 143 S. Ct. at 2157 ("The latter approach is known as representational or organizational standing."). Because the parties, this Court, and the district court have called it "associational standing" throughout the case, DJJ will continue to do so here.

the participation of individual members in the lawsuit.'" *Students for Fair Admissions, Inc.*, 143 S. Ct. at 2157 (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U. S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)). The law of associational standing requires "plaintiff-organizations to make specific allegations establishing that at least one *identified* member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (emphasis added). "[A]n organization cannot base standing on injury to its unnamed members or members of the public at large." *Coal. for Mercury-Free Drugs v. Sebelius*, 725 F. Supp. 2d 1, 13 (D.D.C. 2010).

This Court held, and the district court has not disagreed, that "Justice 360 has no members." ECF No. 45, at 16 n.6. And SCNAACP does not allege it has any member in DJJ custody. *See* ECF No. 117, at ¶¶ 13, 330–33. So Justice 360 and SCNAACP cannot invoke associational standing. *See Students for Fair Admissions, Inc.*, 143 S. Ct. at 2157. That leaves DRSC.

DRSC, however, "fails to establish the first prong of th[e] inquiry," *Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental Retardation Ctr. Bd. of Tr.*, 19 F.3d 241, 244 (5th Cir. 1994) ("*ARC*"), because it has not identified any members or offered evidence of an "indicia of membership," *Hunt*, 432 U.S. at 344.[6] Indeed, its "constituents" do not "elect members" of DRSC, serve in DRSC roles, or "finance its activities, including the costs of this lawsuit, through assessments levied upon them." *Id.* at 344–45. DRSC thus "bears no relationship to traditional membership groups because most of its 'clients'—handicapped and disabled people—are unable to participate in and guide the organization's efforts." *ARC*, 19 F.3d at 44. In *ARC*, the Fifth Circuit rejected a P&A system's assertion of associational standing to pursue claims

---

[6] The Fourth Circuit has not decided this issue. *Cf. Disability Rts. Pa. v. Pa. Dep't of Hum. Servs.*, No. 1:19-CV-737, 2020 WL 1491186, at *7 (M.D. Pa. Mar. 27, 2020) (noting "courts are divided as to whether an organization's status as a P&A system creates sufficient indicia of membership").

on behalf of clients. *Id.* Here, DRSC is relying on the more amorphous concept of "constituents." If the former did not work, neither can the latter.

Even if a constituent were acceptable (it's not), Plaintiffs still fail to identify even one named juvenile—in their 7 pages dedicated to DRSC—who could sue for the constitutional and statutory violations alleged in the amended complaint. As argued several times over now, DRSC cannot sue on the backs of unnamed "constituents" without saying who they might be, how they were allegedly harmed, or how "systemic relief" would redress their alleged individual problem. *See Summers*, 555 U.S. at 498–99 ("This requirement of naming the affected members has never been dispensed with in light of statistical probabilities, but only where all the members of the organization are affected by the challenged activity."); *see also Friends of Georges, Inc. v. Mulroy*, No. 2:23-cv-02163-TLP-tmp, 2023 WL 3790583, at *10 (W.D. Tenn. June 1, 2023) (rejecting a plaintiff's invitation "to find associational standing from the fact that all its members are harmed" under a tortured reading of *NAACP v. Alabama*, 357 U.S. 449 (1958), and holding its "failure to identify a single injured member dooms its associational standing claim").

And DRSC's contention that every single one of its "constituents" at all five facilities "is harmed by DJJ's use of isolation," ECF No. 117, at ¶ 322, is both speculative and unreasonable. *See E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (stating a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"). If the juvenile was never placed in isolation, then how can that "constituent" have been harmed? Unfortunately, we do not know who DRSC is talking about to engage in this most basic threshold inquiry. Regardless, this logical gap scuttles Plaintiffs' remaining claims as well.

There is no way for DJJ or the Court to determine whether the first prong of associational standing is met without knowing something so critical as the alleged constituent's identity. Simply

9

calling them Child A–G and Child 1–15 is insufficient.[7]  Although DRSC attempts to fix its prior problem by allegedly getting "consent" from the legal guardians of Children 5–13 listed in the amended complaint, *see* ECF No. 117, at ¶ 312, it still does not identify those juveniles and establish they would have standing to sue in their own right.[8]  Nor does the addition of the phrase "at least one, specific child-constituent of DRSC" to the beginning of allegations resolve this specific jurisdictional deficiency.  *See* ECF No. 117, at ¶¶ 320, 322, 325, 327, & 329; *cf. Tenn. Prot. & Advocacy*, 24 F. Supp. 2d at 816 (finding an advocacy agency could not show associational standing when it was "not filing on behalf of specific, named, injured individuals . . . [and] merely allege[d] that the defendant's conduct discriminates against all the disabled children in the Putnam County school system"); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Mere allegations "that some (unidentified) members . . . will suffer (unidentified) concrete harm as a result" of Defendants' actions is a "novel approach to the law of organizational standing," that "would make a mockery of our prior cases."  *Summers*, 555 U.S. at 498.  "Abstract

---

[7] Plaintiffs keep trying to litigate this case on behalf of minors, who are not members or clients or named plaintiffs, *cf.* Fed. R. Civ. P. 17(c)(1), in anonymity.  *But see Summers*, 555 U.S. at 498–99 ("Th[e] requirement of naming the affected members has never been dispensed with in light of statistical probabilities, but only where all the members of the organization are affected by the challenged activity.").  While DJJ, of course, recognizes minors require protection, the settled practice is to "use the initials of the minor child to protect [his or] her privacy."  *Hugger v. Rutherford Inst.*, 94 F. App'x 162, 164 n.1 (4th Cir. 2004).  Yet Plaintiffs continue assigning kids numbers, like "Child 1," ECF No. 117, at ¶ 245, or vaguely referencing "one of" the juveniles, *id.* at ¶ 299, to prevent Defendants (and this Court) from finding out who they are.  *Cf.* Local Civ. R. 5.03(B) (D.S.C.).  "Basic fairness dictates that those among the defendants' accusers who wish to participate . . . as individual party plaintiffs must do so under their real names."  *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir.1979).

[8] DRSC cannot "take formal action on behalf of individuals with legal guardians or conservators, or initiate a formal attorney/client or advocate/client relationship without appropriate consent."  42 C.F.R. § 51.42(e).  Notably, DRSC alleges only consent to the former, not the latter.

injury is not enough." *Lyons*, 461 U.S. at 101. DRSC is federally funded, to be sure, but that is insufficient to confer standing because "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 (1997). And "Congress has not abrogated prudential standing requirements by expressly authorizing this type of global challenge to state programs absent the participation of individuals seeking redress of specific injuries." *Missouri Prot. & Advoc. Servs., Inc. v. Carnahan*, 499 F.3d 803, 810 n.7 (8th Cir. 2007) (citing 42 U.S.C. §§ 10804(c) & 10807).

Plaintiffs therefore lack associational standing to pursue generalized grievances, masked as constitutional and statutory claims, through DRSC's anonymous alleged constituents.

### 2.     *Plaintiffs lack organizational standing.*

In determining whether organizational standing exists, "a court conducts the same inquiry as in the case of an individual." *Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1250 (4th Cir. 1991). That means the Court evaluates whether the organization meets the three elements of injury in fact, causation, and redressability. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. Open Band & Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013).

Courts have said that "an organization may establish injury in fact by showing that it had diverted significant resources to counteract the defendant's conduct." *NAACP v. City of Kyle*, 626 F.3d 233, 238 (5th Cir. 2010). But not just any diversion will suffice. As the Supreme Court requires, to have standing under this theory, the complained of action must "perceptibly impair" an organization's ability to carry out its mission *and* "consequent[ly] drain . . . the organization's resources." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). And as the Fourth Circuit has clarified, that "standard is not met simply because an organization makes a 'unilateral and uncompelled' choice to shift its resources away from its primary objective to address a government

action." *N.C. State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 301 (4th Cir. 2020) (quoting *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 238 (4th Cir. 2020)).

Plaintiffs' amended complaint includes new allegations about the purported harm to their organizations. Yet they do not mention the word "drain" in explaining their purported harm. Nor could they. Instead, Plaintiffs claim "[i]t should be obvious to DJJ . . . that the conditions imposed on *South Carolina youth* in DJJ facilities . . . cause material harms to the Plaintiffs." ECF No. 117, at ¶ 348 (emphasis added). Far from "obvious," though, Plaintiffs' vague explanation of their apocryphal harm is both confusing and implausible.

Justice 360, for its part, now says it is allegedly harmed in two ways. *First*, it alleges conditions at DJJ "directly harm Justice 360 by diverting its resources (here, staff time) and frustrating its mission to provide direct representation to children." ECF No. 117, at ¶ 242. And allegedly, "[a]s a result, the organization cannot represent as many children." *Id.* at ¶ 243. *Second*, it alleges DJJ "cause[s] Justice 360 to divert some of its time and attention away from education about the direct representation of juveniles and into trainings designed to improve conditions-related advocacy." *Id.* at ¶ 280. This is apparently so even though "providing trainings and support to other attorneys and practitioners is part of how Justice 360 fulfills its mission." *Id.* at ¶ 283.

Taking the latter allegation first, Justice 360 admits it held only one "session" at a virtual summit in 2021. *Id.* at ¶ 281. Notably, Justice 360 used the same summit to raise funds from sponsors. *See 2021 Virtual Summit Sponsorship Information*, Justice 360 (last visited Oct. 9, 2023), https://justice360sc.org/virtual-summit-sponsorship-information/. So its contention about a diversion of resources is perplexing. In any event, diverting "some of its time and attention" to things "not historically involved" with its mission does not satisfy the *Havens Realty* standard. *Cf. Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012) ("To determine that an organization that decides

to spend its money on educating members, responding to member inquiries, or undertaking litigation . . . suffers a cognizable injury would be to imply standing for organizations with merely 'abstract concern[s] with a subject that could be affected by an adjudication.'" (alteration in original) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 (1976))); *N.C. State Conf. of the NAACP*, 981 F.3d at 301 (clarifying "that the *Havens Realty* standard is not met simply because an organization makes a 'unilateral and uncompelled' choice to shift its resources away from its primary objective to address a government action")

As for the former, Justice 360's own allegations rebut their purported harms related to juvenile representation.  Justice 360 apparently represents only three juveniles currently in DJJ custody.  Attorney Allison Franz, though, still has time to "work with one child—Child 2" who is no longer an actual client.  ECF No. 117, at ¶¶ 233–34.  Still, Justice 360 says only that Attorney Franz meets with one of the juveniles "twice per month, for between 30 minutes and 3 hours."  *Id.* at ¶ 252.  In other words, at most, she is meeting with her three alleged juvenile clients for less than half a work week a month.  That Justice 360 cannot take on other juvenile cases because it must devote 1–3 days a month to existing clients is a marker of poor time management, not something caused by Defendants.  It has time to devote to many other cases.[9]

Talking to three difficult clients about their conditions of confinement, organizing one virtual presentation, and drafting model pleadings does not meet the *Havens* standard.  Indeed, Justice 360 does not allege that its mission has been significantly or perceptively impaired, causing

---

[9] Justice 360 has been active in the death penalty realm and frequently associates outside counsel to assist on those cases.  *E.g.*, *Justice 360 v. Stirling*, 42 F.4th 450 (4th Cir. 2022); *Bowman v. Stirling*, 45 F.4th 740 (4th Cir. 2022); *Wood v. Stirling*, 27 F.4th 269 (4th Cir. 2022); *Bryant v. Stephan*, 17 F.4th 513 (4th Cir. 2021) (en banc); *Sigmon v. Stirling*, No. 3:21-cv-01651-RBH, 2021 WL 2402279, at *1 (D.S.C. June 11, 2021); *Owens v. Stirling*, 438 S.C. 352, 882 S.E.2d 858 (2023); *Moore v. Stirling*, 436 S.C. 207, 871 S.E.2d 423 (2022).

a drain on its resources. *See Havens Realty*, 455 U.S. at 379. Instead, Justice 360 merely says it has having "to divert some of its time and attention away from education." ECF No. 117, at ¶ 280. Whatever that means, it does not establish organizational standing. *Cf. ARC*, 19 F.3d at 244 ("The mere fact that an organization redirects *some* of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization. . . . If this were not so, then, for example, indigent defender organizations . . . or any other self-styled advocacy group could assert standing to sue whenever it believed the rights of its targeted beneficiaries had been violated." (emphasis added)). Putting aside the unqualified psychological opinions Plaintiffs aver in the amended complaint, *cf. E. Shore Markets, Inc.*, 213 F.3d at 180, having hard cases and long client meetings does not give rise to a cognizable injury in fact. Rather, it is part of being a lawyer.

As for DRSC, the amended complaint still does not contain any allegations that its mission has been significantly or perceptively impaired, causing a drain on resources. By DRSC's own admission, its mission is to "ensure that the rights of individuals with mental illness are protected." ECF No. 117, at ¶ 294. Yet DRSC alleges DJJ somehow "frustrate[s] DRSC's mission and purpose [by] forc[ing] it to divert resources away from being able to advocate on behalf of children with disabilities" and "protect its constituents." *Id.* at ¶¶ 298 & 300. According to DRSC, this is so because "DRSC's monitors are at times unable to talk with the children whom they are supposed to help," *id.* at ¶ 299, and it has to spend "additional resources and time identifying which children fall within its statutory mandate," *id.* at ¶ 300.

DRSC has "no legally-protected interest in not expending their resources on behalf of individuals for whom they are advocates." *ARC*, 19 F.3d at 244. Consistent with its mission, DRSC is always monitoring the conditions and youth with disabilities at DJJ. *See* ECF No. 117,

14

at ¶ 295 (citing 42 C.F.R. § 51.42). Plaintiffs are inconsistent on that point though. *Compare* ECF No. 117, at ¶ 299 (alleging "DJJ facilities are often sometimes too dangerous for DRSC's monitors to visit, or for them to visit alone"), *with id.* at ¶ 315 (alleging "DRSC conducts routine monitoring visits at all 5 of DJJ's secure facilities"). By filing this lawsuit, however, DRSC *is* "advocat[ing] on behalf of children with disabilities in DJJ's facilities." ECF No. 117, at ¶ 298. DRSC cannot be heard to complain in this Court for having to perform its job. *See ARC*, 19 F.3d at 244. At any rate, DRSC made no effort to allege a "drain" on its resources because of DJJ's actions. *Havens Realty*, 455 U.S. at 379.

SCNAAP merely asserts it "has had to direct volunteer time and resources to investigating conditions at DJJ," including by "writing letters to the Department of Justice, reviewing and responding to the 2017 and 2021 legislative audit and discussing conditions-related advocacy." *Id.* at ¶ 332. DOJ resolved SCNAACP's complaints by settling with DJJ. SCNAACP cannot fashion an injury by involving the DOJ and then filing a lawsuit to second-guess DOJ's efforts. *See Lane*, 703 F.3d at 675; *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972) (declining "to authorize judicial review at the behest of organizations or individuals who seek to do no more than vindicate their own value preferences through the judicial process"); *cf. IAP, Inc. v. Mercedes-Benz of N. Am., Inc.*, 571 F. Supp. 262, 269 (D.N.J. 1983) (finding "no pressing need" for the plaintiff "to have filed this suit at all" because "when the complaint was filed here there was already a civil proceeding brought by the United States, the theory of which was copied here").

That is not a perceptible impairment with a consequent drain on SCNAACP's resources. Put simply, any loss of resources relates solely to SCNAACP's unilateral and uncompelled budgetary choices. *See N.C. State Conf. of the NAACP*, 981 F.3d at 301 (clarifying "that the *Havens Realty* standard is not met simply because an organization makes a 'unilateral and

uncompelled' choice to shift its resources away from its primary objective to address a government action"); *People for the Ethical Treatment of Animals v. U.S. Dep't of Agr.*, 797 F.3d 1087, 1099 (D.C. Cir. 2015) (holding "a plaintiff's voluntary expenditure of resources to counteract governmental action that only indirectly affects the plaintiff does not support standing").

*       *       *       *

"Private plaintiffs are not accountable to the people and are not charged with pursuing the public interest in enforcing a defendant's general compliance with [the] law." *TransUnion LLC*, 141 S. Ct. at 2207. Although Plaintiffs amended their complaint, after a year and a half of litigation and two motions to dismiss, it is more of the same. Overstated harms and references to unnamed juveniles are insufficient to trigger the Court's jurisdiction. The Court should therefore dismiss the amended complaint because Plaintiffs lack standing under any theory of the case.[10]

      B.     *Plaintiffs are not in the zone of interests protected by Section 1983.*

"Federal courts' standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, . . . and prudential standing, which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Doe v. Porter-*

---

[10] Plaintiffs also lack third-party standing. Generally, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499. The "limited" exception to this rule does not apply. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (1991). Plaintiffs do not argue juvenile detainees' ability to protect their own interests is hindered. Nor could they. Plenty of juveniles have filed individual state-court lawsuits. *E.g.*, *Andre Long v. SCDJJ*, No. 2022-CP-40- 02216 (S.C. Ct. Comm. Pl. filed Apr. 28, 2022); *Sequan Smith v. SCDJJ*, No. 2022-CP-40-02142 (S.C. Ct. Comm. Pl. filed Apr. 25, 2022); *Jonathan Paz v. SCDJJ*, No. 2022-CP-40-02144 (S.C. Ct. Comm. Pl. filed Apr. 25, 2022); *Myan McCray v. SCDJJ*, No. 2022-CP-40-01960 (S.C. Ct. Comm. Pl. filed Apr. 15, 2022); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239-40 (4th Cir. 1989) (noting the Court can take judicial notice of state court dockets). Plaintiffs' reliance on the distorted version of third-party standing from abortion cases is similarly misplaced. *See Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2275 (2022) (stating "*Roe* and *Casey* have led to the distortion of many important but unrelated legal doctrines, and that effect provides further support for overruling those decisions," including that "abortion cases" "ignored the Court's third-party standing doctrine").

16

*Gaud Sch.*, No. 2:22-cv-02093-DCN, 2023 WL 122028, at *3 (D.S.C. Jan. 6, 2023) (internal citations omitted).

"Prudential standing encompasses several judicially-created limits on federal jurisdiction, 'such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *CGM, LLC v. Bellsouth Telecomms., Inc.*, 664 F.3d 46, 54 (4th Cir. 2011) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

The Supreme Court has clarified that, even though it was "under the 'prudential' rubric in the past," the proper nomenclature for this analysis is "zone of interests." *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125–27 (2014). "Whether a plaintiff comes within 'the zone of interests' is an issue that requires [a court] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id.* at 127.

Section 1983, the relevant statute here, provides as follows:

> Every person who, under color of [state law,] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to *the party injured* in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (emphasis added). Under "the language of § 1983," "[t]he appropriate plaintiff is obvious." *Andrews v. Neer*, 253 F.3d 1052, 1056 (8th Cir. 2001). Only "*the* party injured" may bring an action, not "*a* party injured." *See Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) ("[G]rammar and usage establish that 'the' is a function word indicating that a following noun or noun equivalent is definite or has been previously specified by context." (cleaned up)); *Cochise*

*Consultancy, Inc. v. U.S. ex rel. Hunt*, 139 S. Ct. 1507, 1514 (2019) (stating "the use of the definite article indicates that there is generally only one person covered" (cleaned up)).

Plaintiffs do not allege or possess constitutional rights to vindicate, and they are not "*the* party injured." As the Court previously held, "the person deprived and the party injured must be the same." ECF No. 99, at 15; *see also Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) ("a word is known by the company it keeps," and courts must "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving 'unintended breadth to the Acts of Congress'" (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961))). That makes sense: "to state a civil rights claim upon which relief can be granted under [Section] 1983, one must allege that he, himself, sustained a deprivation of a right, privilege or immunity secured to him by the Constitution and laws of the United States." *Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977); *see also Howerton v. Fletcher*, 213 F.3d 171, 173 (4th Cir. 2000) ("A section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else." (quoting *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990))).

To the extent any colorable claim existed, it would belong only to an "injured" juvenile detainee. 42 U.S.C. § 1983; *see also* ECF No. 99, at 16. Plaintiffs, however, were not deprived of constitutional rights *and* injured by any such deprivation. Consequently, their claims fall outside the zone of interests protected by Section 1983, and the Court should dismiss those claims. *See* ECF No. 99, at 16 (finding Plaintiffs are "simply not the persons subject to the constitutional deprivation of which they complain" and they "lie outside the zone of interests protected by § 1983, which provides a remedy only for *federally protected* rights").

Because courts "generally presume that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute," *Lexmark Int'l, Inc.*, 572 U.S.

at 132, the Court must also examine "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits," *id.* at 133. Put another way, "the constitutional deprivation alleged here must be the proximate cause of the organizational plaintiffs' injury." ECF No. 99, at 18. This Court and the district court have already concluded Plaintiffs' alleged organizational harms are "indirect." ECF No. 99, at 13; ECF No. 68, at 8. And where, "as here, the organizational plaintiffs' harm is purely derivative of the 'misfortunes visited upon a third person by the defendant's acts,' the proximate cause requirement is not satisfied." ECF No. 99, at 18 (quoting *Lexmark Int'l, Inc.*, 572 U.S. at 133). That has not changed in the amended complaint.

*    *    *    *

Plaintiffs must meet Article III standing requirements and fall within the zone of interests of the statutory causes of action they seek to press. *See Doe*, No. 2:22-cv-02093-DCN, 2023 WL 122028, at *3. Here, they satisfy neither test. *Maddonna v. United States Dep't of Health & Hum. Servs.*, 567 F. Supp. 3d 688, 714 (D.S.C. 2020). The Court should dismiss the amended complaint.

II.    *Plaintiffs failed to plausibly allege entitlement to relief.*

Plaintiffs' amended complaint again makes generalized grievances about DJJ's operations and gives surface-level summaries of alleged incidents involving unspecified juvenile detainees, some of whom are not their clients. *But see Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("Federal courts may not 'decide questions that cannot affect the rights of litigants in the case before them' or give 'opinion[s] advising what the law would be upon a hypothetical state of facts.'" (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990))).

When Plaintiffs reach Counts 1 through 7, they again provide conclusory recitations of the elements. *See ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019) (holding that "simply reciting the cause of actions' elements and supporting them by conclusory

statements does not meet the required standard"). "These allegations are precisely the type of 'threadbare recitals' of an element of a cause of action that are prohibited." ECF No. 99, at 10. Further, a review of the relief sought reveals Plaintiffs are trying to elevate their personal policy preferences—a standard of perfection—into matters of federal and constitutional law. And Plaintiffs' demands, which did not change from the original to the amended complaint, are premised an unreasonable (and physically impossible) 30-day timetable for implementation.[11] Plaintiffs failed to state a plausible claim for relief.

A.    *Plaintiffs' Section 1983 claims are implausible on their face.*

Consider first the Section 1983 claims. As argued above, Plaintiffs fall outside the zone of interests protected by Section 1983. *See supra* Section I.B. The Fourteenth Amendment rights that DJJ allegedly violated are "rights of South Carolina youth." ECF No. 117, at ¶¶ 340–41, 349, 354 & 358. Plaintiffs make no allegation in the four Section 1983 claims that DJJ violated *their* constitutional rights. *See Owens*, 561 F.2d at 562–63 ("[T]o state a civil rights claim upon which relief can be granted under [Section] 1983, one must allege that *he, himself*, sustained a deprivation of a right, privilege or immunity *secured to him by the Constitution* and laws of the United States." (emphasis added)); *Howerton*, 213 F.3d at 173 ("A section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else." (quoting *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990))). Nor could they. *See* ECF No. 99, at 14–19.

Moving to the substantive allegations, Plaintiffs' Section 1983 claims still fail. As an initial point, Plaintiffs' causes of action under Section 1983 have not changed substantially, if at all, in

---

[11] *Cf. Alexander S.*, 876 F. Supp. at 777–78 (giving 120 days to submit a plan after 4 years of litigation, 22 "hearings and status conferences," 54 "pretrial orders," 3 visits to DJJ facilities totaling over 24 hours, 5 court-appointed experts, and a 2-month trial consisting of 66 "witnesses (including seventeen expert witnesses)" and 126 "exhibits consisting of several thousand pages").

their amended complaint.  *On the first claim*, Plaintiffs allege DJJ fails to adequately supervise juvenile detainees.  But they neglect to identify a single policy enforced by a DJJ employee, acting under color of state law, that violates the Constitution.  Instead, Plaintiffs merely allege "deliberate indifference" because DJJ has had issues in the past dating back to 1995.  That is neither a fair nor a logical leap.  Plaintiffs do not mention the improvements agreed to in the DOJ agreement or acknowledge the steps taken to implement those improvements thus far.  Because Count 1 consists of merely conclusory allegations and an (incomplete) recitation of the elements, Plaintiffs failed to state a plausible claim for relief under Section 1983.  *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' . . . will not do." (quoting *Twombly*, 550 U.S. at 555)).

*As to the second claim*, Plaintiffs argue DJJ's isolation policy violates the Fourteenth Amendment.  For starters, that policy predated this lawsuit.  Thus, Plaintiffs' allegations of deliberate indifference contradict the exhibits to their own complaint.  *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  It is simply not true that DJJ "has done nothing to alleviate this risk of harm."  ECF No. 117, at ¶ 348.  Their arguments in this regard are self-defeating.  Plaintiffs, then, are left only with their demand for a two-hour initial isolation period instead of a four-hour isolation period along with a host of other conditions that tweak the DOJ agreement.  But as the Court said in *Alexander S.*, its role "is limited to establishing minimal constitutional standards."  876 F. Supp. at 779.  Perfection is not the standard.  And Plaintiffs altogether fail to plausibly allege how the isolation policy harms them.  Plaintiffs failed to state a plausible claim for relief in Count 2.

*Turning to the third claim*, Plaintiffs do not explain how or which of DJJ's current practices fail to meet the "professional judgment" standard.  Plaintiffs simply say, "recreational and outdoor time, access to mental health services, and trauma-informed care" constitute "the professional

21

standard for juvenile detention and rehabilitation," ECF No. 117, at ¶ 352, and "DJJ substantially departs from this standard," *id.* at ¶ 353. Plaintiffs do not identify the standard to which they are referring. *See Bell*, 441 U.S. at 543 n.27 (stating advocacy groups' reports "simply do not establish constitutional minima; rather, they establish goals recommended by the organization[s] in question"). Nor do they explain which officials failed to exercise professional judgment. Plaintiffs' allegations not only ignore the DOJ agreement but also fail to explain how this alleged practice harms their organizations. Thus, Plaintiffs failed to state a plausible claim in Count 3.

*Finally, the fourth claim* suffers from the same defects. Plaintiffs contend "South Carolina children detained at DJJ facilities are subject to an inhumane physical and psychological environment" that "fail[s] to provide minimum standards of safety and health." ECF No. 117, at ¶ 357. Plaintiffs failed to articulate what those standards are. At the risk of beating a dead horse, Plaintiffs also ignore the DOJ agreement that addresses BRRC and DJJ is implementing the reforms systemwide. All this puts aside, for the moment, how the alleged conditions from an unknown timeframe "harm" three special interest groups who do not live at any of the facilities. Count 4, on its face, fails to state a plausible claim for relief.

Further, as to each Section 1983 claim, Plaintiffs "simply are not the persons subjected to the [purported] constitutional deprivation of which they complain." ECF No. 99, at 16. They do not have "any liberty interest" rooted in the Constitution that could be impaired to begin with. *Id.* And even if they did, they have failed to plausibly allege in nonconclusory statements that they are entitled to relief. The amended complaint "is devoid of allegations that plausibly show that any protected liberty interest of [Plaintiffs] is harmed by the juveniles' [purported] constitutional . . . injuries." *Id.* at 10. The Court should therefore dismiss Plaintiffs' Section 1983 claims under Rule 12(b)(6).

B.    *Plaintiffs fail to state claims for relief under the ADA and the Rehabilitation Act.*

"To the extent possible, [courts] construe the ADA and Rehabilitation Act to impose similar requirements" because "they require a plaintiff to demonstrate the same elements to establish liability." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012)). This time, Plaintiffs seek to assert claims on behalf of Justice 360 and DRSC. *See* ECF No. 117, at ¶¶ 360 & 370. Yet the amended complaint contains no allegations of harm for Justice 360 based on a violation of the ADA. *See id.* at ¶ 368 (alleging only DRSC "has suffered" and "will continue to suffer harm"). Even still, Plaintiffs failed to state a claim for relief under the ADA or the Rehabilitation Act.

"[T]o prove a violation of either Act, the plaintiff must establish that (1) he has a disability, (2) he is otherwise qualified to participate in the defendant's program, and (3) he was excluded from the program on the basis of his disability." *Halpern*, 669 F.3d at 461 (footnote omitted). As to the first requirement, Plaintiffs still do not allege what disabilities DRSC's and Justice 360's purported juvenile constituents and clients possess to bring them under the umbrella of the ADA and the Rehabilitation Act's definition of disability. Instead, they recite anecdotal purported instances of unnamed juveniles and then allege, in conclusory fashion, that "[m]any of Justice 360's clients and all of DRSC's incarcerated juvenile constituents are qualified individuals with disabilities as defined by the ADA" and as "defined in Section 504 of the Rehabilitation Act." ECF No. 117, at ¶¶ 360 & 370. Who are these juveniles and what disabilities do they have? Without this critical information, Plaintiffs fail to state a claim for relief. *See* ECF No. 99, at 20 (finding Plaintiffs "fail to include facts about what disabilities those juveniles [have] that could show that they are covered by the ADA and Rehabilitation Act's definition of disability").

"Regarding the second requirement, an individual is not otherwise qualified if he poses a significant risk to the health or safety of others by virtue of the disability that cannot be eliminated by reasonable accommodation." *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995). "The two statutes differ only with respect to the third element, causation. To succeed on a claim under the Rehabilitation Act, the plaintiff must establish he was excluded 'solely by reason of' his disability; the ADA requires only that the disability was 'a motivating cause' of the exclusion." *Halpern*, 669 F.3d at 461–62.

Because Plaintiffs' claim under the ADA contains no allegations that DRSC's alleged juvenile constituents' purported disabilities were "a motivating cause" of DJJ's alleged deprivations, the claim is implausible on its face.[12] *Id.* And because Plaintiffs' claim under Section 504 of the Rehabilitation Act contains no allegations that juvenile detainees were excluded "*solely* by reason of" their purported disabilities, that claim is also implausible on its face. *Id.*

---

[12] To the extent Plaintiffs are also attempting to bring a disparate impact claim based on the ADA, the amended complaint fails on that front too. Plaintiffs assert, "[a]s alleged above, the dangerous and nontherapeutic conditions at DJJ also have a disproportionate impact on children with disabilities." ECF No. 117, at ¶ 366. But again, Plaintiffs do not explain how. And it is not clear what "[a]s alleged above means." Simply saying it does not make it so. *See ACA Fin. Guar. Corp.*, 917 F.3d at 212 (holding that "simply reciting the cause of actions' elements and supporting them by conclusory statements does not meet the required standard"). Plaintiffs do not allege a facially neutral DJJ policy or practice has a disparate impact on any unidentified juvenile with a specific qualified disability. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (noting "disparate-impact claims 'involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity'" (quoting *Teamsters v. United States*, 431 U.S. 324, 335–36 n. 15 (1977))); *see also B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016) ("To establish a prima facie case under a disparate impact theory, [a] plaintiff must demonstrate (1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." (internal quotation marks omitted)). In fact, Plaintiffs say those juveniles are allegedly discriminated against "because of their disabilities." ECF No 117, at ¶ 367. *See* ECF No. 99, at 22 ("[I]n addition to the [plaintiffs'] previously identified failure to allege what disabilities the juveniles have that are impacted by DJJ's policies, the plaintiffs provide no facts to show *how* DJJ's policies disparately impact disabled juveniles compared to other juveniles.").

(emphasis added); *see also* ECF No. 99, at 20 (finding the original complaint "repeats the causation standard for showing violations of the ADA and Rehabilitation Act without pleading any facts that could plausibly show that DJJ's [alleged] failure to provide activities, programs, and services to the juveniles is motivated by or solely caused by their disabilities"). Likewise, Plaintiffs stop well short, as they must, of arguing that Defendants engaged in "bad faith" or "gross misjudgment" in providing educational services to move forward on their Section 504 claim. *D.N. ex rel. Nolen v. Louisa Cnty. Pub. Schs.*, 156 F. Supp. 3d 767, 776 (W.D. Va. 2016) (quoting *M.Y. ex rel. J.Y. v. Special Sch. Dist. No. 1*, 544 F.3d 885, 890 (8th Cir. 2008)).

Plaintiffs failed to allege and cannot show the alleged juvenile detainees for whom they seek systemwide relief (without pleading a class action) have a "disability" to trigger these Acts. Nor do they allege the necessary causation elements under the ADA and the Rehabilitation Act. And Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Counts 5 and 6 thus fail to state a plausible claim for relief.

C.    *Plaintiffs fail to state a claim for relief under IDEA.*

The IDEA provides federal funds to states in exchange for a commitment to furnish a FAPE to children with disabilities and establishes formal administrative procedures for resolving disputes between parents and schools concerning the provision of a FAPE. *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 748 (2017). "As defined in the Act, a FAPE comprises special education and related services—both instruction tailored to meet a child's unique needs and sufficient supportive services to permit the child to benefit from that instruction." *Id.* at 748–49 (internal quotation marks omitted). However, "while a state 'must provide specialized instruction and related services sufficient to confer some educational benefit upon the handicapped child, . . . the Act does not require the furnishing of every special service necessary to maximize each handicapped child's

potential.'" *MM ex rel. DM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 527 (4th Cir. 2002) (quoting *Hartmann v. Loudoun Cnty. Bd. of Educ.*, 118 F.3d 996, 1001 (4th Cir. 1997)).

Plaintiffs again conflate the standard and do not allege what DJJ would need to do to comply with the IDEA. *See* ECF No. 99, at 23 ("Nor does the allegation indicate what DJJ would need to do to provide [juveniles] with the benefits necessary to comply with the statutes."). Even if they did, they have no individuals to whom they can tailor these standards to develop better individualized education programs (IEPs)[13] or ensure a FAPE. Despite the inherently personal and individualized nature of IEPs, as well as the IDEA in general, we do not have a single named plaintiff here. Rather, Plaintiffs allege, in conclusory fashion, that "[m]any of Justice 360's clients and all of DRSC's incarcerated juvenile constituents are or should be identified for special education and related services under the IDEA . . . [so] they qualify as children with disabilities for purposes for the IDEA." ECF No. 117, at ¶ 381.

Again, who are these juveniles and what disabilities do they have to qualify under the IDEA? Plaintiffs' conclusory allegations that merely recite legal elements do not push them across the goal line into the zone of plausibility.[14] *See* ECF No. 99, at 22 (stating Plaintiffs "cannot rely

---

[13] "[U]nder the IDEA, an 'individualized education program,' called an IEP for short, serves as the 'primary vehicle' for providing each child with the promised FAPE." *Fry*, 137 S. Ct. at 749 (citing *Honig v. Doe*, 484 U.S. 305, 311 (1988)). "The IEP spells out a personalized plan to meet all of the child's 'educational needs' and documents the child's current 'levels of academic achievement,' specifies 'measurable annual goals' for how she can 'make progress in the general education curriculum,' and lists the 'special education and related services' to be provided so that she can 'advance appropriately toward [those] goals.'" *Id.* at 749 (internal citations omitted).

[14] The Court should also dismiss for failure to exhaust. To date, Plaintiffs have not cited a case from the Fourth Circuit that allows them to circumvent the mandatory exhaustion requirements of the IDEA by resting on a conclusory allegation of the need for "systemic relief." To be sure, some courts have recognized "[s]ystemic claims under the IDEA" when "the plaintiff has alleged a 'pattern and practice of systematic IDEA violations unable to be addressed at the due process hearings provided.'" *M.F. v. New York State Educ. Dep't*, No. 517CV1385GLSATB, 2020 WL 1820125, at *2 (N.D.N.Y. Apr. 10, 2020). But when "conclusory allegations fail to state a claim"

on their conclusory claim that [DRSC's] constituents fall within the definition of disability under the IDEA."); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). And it is well-settled that the Court "need not accept as true 'legal conclusions drawn from the facts' or any other 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Kashdan v. George Mason Univ.*, 70 F.4th 694, 700 (4th Cir. 2023) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008))). The Court should dismiss Plaintiffs' IDEA claim.

*       *       *       *

In all events, Plaintiffs failed to plausibly allege entitlement to declaratory and mandatory injunctive relief. Plaintiffs "have not pled the elements of a declaratory judgment action with specificity." *Keener v. United States*, No. 22-cv-1640-DCN, 2023 WL 2478367, at *9 (D.S.C. Mar. 13, 2023). The amended complaint does not present "an actual controversy *between the parties* of sufficient immediacy and reality to warrant issuance of a declaratory judgment." 28 U.S.C. § 2201 (emphasis added). It does not allege a cognizable injury in fact to Plaintiffs' organizations directly caused by DJJ, and the sluggishness in bringing this action contradicts any notion of immediacy. Plaintiffs seek to purloin injuries of still-unidentified juvenile detainees to

---

for systemic relief, courts have not hesitated to dismiss for failure to exhaust. *Id.* at *2. Here, Plaintiffs have not alleged why, regardless of the systemic relief sought, "in pursuing these claims . . . that the underlying purposes of exhaustion would not be served by requiring procedural compliance." *Ellenberg v. New Mexico Mil. Inst.*, 478 F.3d 1262, 1277 (10th Cir. 2007) (citing *Ass'n for Cmty. Living in Colorado v. Romer*, 992 F.2d 1040, 1044 (10th Cir. 1993)). Considering the administrative procedures in place in South Carolina—recognized by the Fourth Circuit—and that Plaintiffs cannot get around the exhaustion requirement, dismissal is required. Indeed, exhaustion is excused only when DRSC can show the administrative procedures "will not be resolved within a reasonable time" or if legal action is necessary "to prevent or eliminate imminent serious harm to a[n] individual with mental illness." 42 U.S.C. § 10807(a)–(b); *see also* 42 C.F.R. § 51.32. DRSC is not pursuing this action for any individual. *See* S.C. Code Ann. § 43-33-540 (providing state law remedy).

27

air generalized grievances—framed as purported harm to their organizations—and elevate their policy preferences over that of DOJ and DJJ. But "granting Justice 360 [and the other Plaintiffs] the relief it seeks" here "would amount to no more than an impermissible advisory opinion." *Just. 360 v. Stirling*, 42 F.4th 450, 460 (4th Cir. 2022). The Court cannot do that.

Nor do Plaintiffs allege how "*they* [a]re likely to suffer irreparable harm without the injunction." *Di Biase v. SPX Corp.*, 872 F.3d 224, 235 (4th Cir. 2017) (emphasis added). Plaintiffs also cannot succeed on the merits of this action. And the balance of the equities certainly does not tip in their favor: despite knowing of the 2017 LAC report, Plaintiffs sat on the sidelines for years and filed suit only when they did not get exactly what they wanted out of the DOJ agreement. *See De La Fuente*, 164 F. Supp. 3d at 806 (applying laches in analyzing balance of the equities and finding it "weighed heavily against" plaintiff). Balance of the equities and public interest, of course, "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, neither weighs in favor of the Court tearing up an agreement between DOJ and DJJ—guided by the assistance of jointly selected subject-matter experts—and taking over DJJ. Given the jurisdictional, merits, and equitable problems, Plaintiffs are not entitled to the "sweeping, mandatory preliminary injunctive relief" they demand.[15] *Taylor v. Freeman*, 34 F.3d

---

[15] The requested mandatory injunctive relief also fails under the Prison Litigation Reform Act (PLRA) because it is both overbroad and premature. *See* 18 U.S.C. § 3626(a)(1) ("Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs."). In fashioning an appropriate remedy, courts are to "give substantial weight to any adverse impact on public safety or the operation of the criminal justice system caused by the relief." *Id.* And "civil action with respect to prison conditions" broadly includes "any civil proceeding arising under Federal law with respect to the conditions of confinement and the effects of actions by government officials on the lives of persons confined in prisons." 18 U.S.C. § 3626(g)(2). Under the PLRA, any order "that has the purpose or effect of reducing or limiting a prison population, or that directs the release from or nonadmission of prisoners to a prison" is exclusively within the province of a three-judge panel. 18 U.S.C. § 3626(g)(4). Importantly, the panel cannot enter a prisoner release order unless it "has previously entered an order for less intrusive relief that has failed to remedy the deprivation

266, 274 (4th Cir. 1994); *see also* ECF No. 99, at 23 (asserting that "even if the Complaint provided all of that information, it would not justify the sweeping, systemic injunctive relief sought by the plaintiffs" here).

III.    *Plaintiffs cannot collaterally attack the DOJ settlement with this untimely lawsuit.*

Last, the Court should reject this collateral attack on the DOJ settlement by groups who asked and let DOJ do all the work investigating, negotiating, and remedying alleged violations only to come in and question the result.  *E.g.*, ECF No. 117, at ¶ 332.

A declaratory judgment "should not be used . . . 'to interfere with an action which has already been instituted.'"  *State Farm Fire & Cas. Ins. Co. v. Sproull*, 329 F. Supp. 3d 238, 246 (D.S.C. 2018) (quoting *Allied-Gen. Nuclear Servs. v. Commonwealth Edison Co.*, 675 F.2d 610, 611 (4th Cir. 1982))).

Courts generally "recognize that settlements are not subject to collateral attack."  *Duell v. Heidenrich*, 39 F.3d 1176 (4th Cir. 1994).  "A 'collateral attack' is a tactic whereby a party seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court."  *Pratt v. Ventas, Inc.*, 365 F.3d 514, 519 (6th Cir. 2004).  Here, Plaintiffs brought this action 6 days after the Court assumed and retained jurisdiction over the DOJ agreement.  *S.C. Dep't of Juv. Justice*, No. 3:22-cv-01221-MGL, ECF No. 8, at 1–2.  So Plaintiffs' lawsuit is "properly characterized as a collateral attack on the settlement agreement" because "their suit, if successful," will "affect[]" that agreement.  *Baccus v. Parrish*, 45 F.3d 958, 961 (5th Cir. 1995).  Further, the "unique nature" of the DOJ agreement "heightens its conflict with [Plaintiffs'] suit" here.  *Id.*  If Plaintiffs were "to succeed with their claims, the entire basis for the [DOJ] settlement . . . would unravel."  *Id.*

---

of the Federal right sought to be remedied" and "the defendant has had a reasonable amount of time to comply with the previous court orders."  18 U.S.C. § 3626(a)(1)–(2).

Although this lawsuit is "now before the same court which has jurisdiction over the" DOJ agreement, "it seems inappropriate to subject the state defendants to two lawsuits unless it is absolutely necessary." *O'Burn v. Shapp*, 70 F.R.D. 549, 553 (E.D. Pa. 1976), *aff'd sub nom. Lutz v. Shapp*, 546 F.2d 417 (3d Cir. 1976) & *Oburn v. Shapp*, 546 F.2d 418 (3d Cir. 1976). As in *O'burn*, it is not necessary here. This case does not "present[] a situation wherein the plaintiffs had no alternative but to institute an independent lawsuit . . . to challenge the" DOJ settlement "because this Court continues to maintain jurisdiction over" it. *Id.* As one district court has noted, "[t]his factor of continuing jurisdiction is quite significant." *Id.*

A case from the Sixth Circuit is also instructive. *See Black & White Child. of Pontiac Sch. Sys. v. Sch. Dist. of Pontiac*, 464 F.2d 1030 (6th Cir. 1972) (per curiam). There, the plaintiffs sought an injunction against a school district, and "[t]he complaint was referred to the same District Judge who had entered the [prior] order, the effect of which this suit sought to enjoin." *Id.* at 1030. The district court "dismissed the complaint" because "plaintiffs' suit was an attempt collaterally to attack the [prior] order entered in the principal case," recognizing as follows:

> Plainly, plaintiffs have mistaken their remedy. Most of their briefing and argument alleges difficulties in the carrying out of the desegregation order involved in the principal case. The District Court has maintained jurisdiction of the case. The proper avenue for relief if there were unanticipated problems which had developed in the carrying out of the court's order, was an application to intervene and a motion for additional relief in the principal case.

*Id.* So too here. After all, having to comply with a different order here could require DJJ to materially breach its agreement with DOJ—over which Judge Lewis maintains continuing jurisdiction—and face penalties as a result. *Cf. Feller*, 802 F.2d at 725 ("The NAACP and its co-plaintiffs then brought a contempt action in District of Columbia district court because certification in compliance with the West Virginia preliminary injunction violated the injunction in *NAACP II*.

The District of Columbia district court held that DOL was . . . violating its outstanding injunction."

(citing *NAACP, Jefferson Cnty. Branch v. Brock*, 619 F. Supp. 846, 849–50 (D.D.C. 1985))).  For

these reasons, the Court should reject Plaintiffs' improper collateral attack on the DOJ settlement.

CONCLUSION

The Court should dismiss the amended complaint under Rule 12(b)(1) for want of subject

matter jurisdiction because Plaintiffs lack standing to press their generalized grievances.  On the

merits, the Court should dismiss under Rule 12(b)(6)—without leave to amend—because Plaintiffs

failed to and cannot state a plausible claim for relief under any theory of the case.

Respectfully submitted,

/s/Vordman Carlisle Traywick, III
Robert E. Tyson, Jr. (7815)
J. Michael Montgomery (10290)
Vordman Carlisle Traywick, III (12483)
Sarah C. Frierson (13825)
ROBINSON GRAY STEPP & LAFFITTE, LLC
Post Office Box 11449
Columbia, South Carolina 29211
(803) 929-1400
rtyson@robinsongray.com
mmontgomery@robinsongray.com
ltraywick@robinsongray.com
sfrierson@robinsongray.com

Clarence Davis (Fed. ID 433)
GRIFFIN | DAVIS LLC
Post Office Box 999
Columbia, South Carolina 29202
(803) 744-0800
cdavis@griffindavislaw.com

*Counsel for Defendants SCDJJ and*
*Executive Director Eden Hendrick*

Columbia, South Carolina
October 12, 2023