IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| South Carolina State Conference of NAACP, Disability Rights South Carolina, Justice 360, | ) ) ) ) ) | Case No. 0:22-cv-1338-JDA-PJG |
| Plaintiffs, | ) ) | |
| v. | ) ) | **OPINION AND ORDER** |
| South Carolina Department of Juvenile Justice; Eden Hendrick, *in her official capacity as Executive Director of the South Carolina Department of Juvenile Justice*, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the Court on a motion to dismiss the Amended Complaint filed by Defendants. [Doc. 119.] In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., this matter was referred to United States Magistrate Judge Paige J. Gossett for pre-trial proceedings.

On December 6, 2023, the Magistrate Judge issued a Report and Recommendation (the "Pending Report") recommending that the motion to dismiss be granted in part and denied in part. [Doc. 139.] The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Pending Report and the serious consequences if they failed to do. [*Id.* at 27.] Both parties filed objections to the Pending Report on December 20, 2023, and both filed replies on January 10, 2024.[1] [Docs. 144; 145; 151; 152.] This matter is ripe for review.

---

[1] This case was reassigned to the undersigned on February 16, 2024. [Doc. 154.]

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of any portion of the Pending Report to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The Court will review the Pending Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" (internal quotation marks omitted)).

## BACKGROUND

Plaintiffs—three civil rights advocacy organizations in South Carolina—seek relief based on alleged unlawful conditions of confinement existing across five secure facilities administered by the South Carolina Department of Juvenile Justice ("DJJ"). [Doc. 117 ¶¶ 4–8, 11–17, 56.]

Plaintiff South Carolina State Conference of the NAACP ("NAACP")—a state conference branch of the national NAACP civil rights organization—is a nonprofit, nonpartisan membership organization that, on behalf of its members and other constituents, "advocates for a society in which all individuals have equal rights, all children

have access to a free, high quality public education, and all persons are free from disproportionate incarceration and racially motivated practices." [*Id*. ¶¶ 12–13.] Plaintiff Disability Rights South Carolina ("Disability Rights") is a South Carolina nonprofit corporation that serves as South Carolina's Protection and Advocacy ("P&A") system, as defined in the Protection and Advocacy for Individuals with Mental Illness Act of 1986 (the "PAIMI Act"), 42 U.S.C. §§ 10801, et seq.; and is thus authorized to "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State." [*Id*. ¶ 14.] Plaintiff Justice 360 is a South Carolina nonprofit organization whose mission is to "promote fairness, reliability, and transparency in the criminal justice system for children facing lengthy sentences and individuals facing the death penalty in South Carolina"; this organization provides direct representation to juveniles in the custody of DJJ. [*Id*. ¶¶ 16–17.] All three organizations "provide legal and other services to youth who are or may in the future be in the custody of DJJ." [*Id*. ¶ 18.]

Plaintiffs allege that DJJ's constitutional and statutory violations directly harm not only Plaintiffs' juvenile constituents but also Plaintiffs themselves. [*Id*. ¶¶ 8–9.] The Amended Complaint identifies nine children who are constituents of Disability Rights, are in Defendants' custody, and have suffered harm as a result of their conditions of confinement in DJJ facilities.[2] [*Id*. ¶¶ 301–13.] Plaintiffs also allege that specific, individual clients of Justice 360 have been harmed by the unlawful conditions in DJJ's facilities [*id*. ¶¶ 233–35], and that all three Plaintiffs have been directly harmed by having

---

[2] The Amended Complaint identifies 13 children in total ("Child 1," "Child 2," etc.), specifying that Children 1–4 are represented by Justice 360 [*id*. ¶¶ 233–34, 244, 259, 266, 272] and Children 5–13 are Disability Rights's constituents [*id*. ¶ 302].

to "re-direct their limited resources to make up for DJJ's failures" and because "their ability to serve the children has been impeded due to the trauma those children are experiencing" [*id*. ¶ 8; *see id*. ¶¶ 231–300, 330–33].

Plaintiffs allege various violations of the United States Constitution and certain federal statutes. Specifically, the Amended Complaint asserts four causes of action against Defendant Eden Hendrick pursuant to 42 U.S.C. § 1983 based on the following purported violations of the Fourteenth Amendment: (1) "Failure to Protect Children Entrusted to DJJ Care"; (2) "Prolonged and Punitive Use of Solitary Confinement for Children"; (3) "Failure to Provide Rehabilitative Services"; and (4) "Substandard Conditions of Confinement." [*Id*. ¶¶ 334–58.] The remaining causes of action against DJJ assert violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq.; the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, et seq.; and the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, et seq. [*Id*. ¶¶ 359–86.] As their remedy, Plaintiffs seek various forms of injunctive relief as well as costs and fees. [*Id*. at 73–79.]

Plaintiffs filed their original Complaint in this Court on April 26, 2022. [Doc 1.] Defendants moved to dismiss Plaintiffs' original Complaint, challenging Plaintiffs' standing to bring this case.[3] [Doc. 10.] On August 31, 2022, the Magistrate Judge filed

---

[3] In addition to arguing that Plaintiffs lacked Article III and statutory standing [Doc. 10 at 11–18], Defendants argued that Plaintiffs' relief raised federalism, comity, and separation of powers concerns [*id*. at 10–11], that most of Plaintiffs' claims were moot because DJJ consummated a settlement with the DOJ related to many of the same issues raised in Plaintiffs' original Complaint (the "DOJ Settlement") [*id*. at 18–20], that Plaintiffs failed to exhaust their administrative remedies [*id*. at 20–26], that Defendant Eden Hendrick could not be held liable in her individual capacity [*id*. at 26–27], and that the Eleventh Amendment barred Plaintiffs' official-capacity claims [*id*. at 27–31].

a Report and Recommendation (the "First Report") recommending that Defendants' motion to dismiss for lack of subject matter jurisdiction be granted because no Plaintiff had standing [Doc. 45], but the Honorable Mary Geiger Lewis rejected that recommendation on February 2, 2023, concluding that at least Justice 360 had organizational standing to raise each cause of action in the original Complaint.  [Doc. 68 at 6–9.]  Judge Lewis also referred the matter back to the Magistrate Judge, in part to address the other issues in the motion to dismiss.  [*Id*. at 9.]

Following Judge Lewis's ruling, the Magistrate Judge held a status conference with the parties on March 1, 2023, during which she directed Defendants to file an amended motion to dismiss within 14 days.  [Doc. 73.]  Defendants filed an amended motion to dismiss on March 17, 2023, arguing that the Complaint failed to plausibly allege entitlement to relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[4]  [Doc. 81 at 25–33.]  The Magistrate Judge issued a Report and Recommendation (the "Second Report") on April 28, 2023, recommending that Defendants' amended motion to dismiss be granted without leave to amend the Complaint[5] because Plaintiffs' Complaint failed to

---

[4] Defendants also argued that Plaintiffs' requested relief raised federalism, comity, and separation of powers concerns; Plaintiffs lacked prudential or statutory standing; Plaintiffs could not collaterally attack the DOJ Settlement; Plaintiffs failed to raise an actual case or controversy under Article III; Plaintiffs failed to exhaust their administrative remedies; the Eleventh Amendment bars Plaintiffs' official-capacity claims; and the doctrine of laches bars Plaintiffs' claims.  [Doc. 81 at 7–25.]

[5] In recommending that the motion to dismiss be granted *without* leave to amend the Complaint, the Magistrate Judge observed that

> throughout the year-long pendency of this case and in the face of multiple motions to dismiss, the plaintiffs have forgone opportunities to amend the complaint.  They have not asserted that they should be given leave to amend if the court

state a claim for relief. [Doc. 99]. On September 14, 2023, Judge Lewis accepted in part the Magistrate Judge's recommendation and granted the motion to dismiss but allowed Plaintiffs leave to amend their Complaint, concluding that Plaintiffs had not "forgone opportunities" for amendment and had not represented that they were unable to plead additional facts. [Doc. 115 at 4–5 (internal quotation marks omitted).]

Plaintiffs filed the Amended Complaint on September 28, 2023, asserting another 15 pages of new allegations detailing the alleged harm suffered by Plaintiffs and the juveniles they represent who are incarcerated at DJJ. [*See* Doc. 117 at 50–64; *compare with* Doc. 1.] Defendants filed a motion to dismiss the Amended Complaint on October 12, 2023, renewing their arguments that Plaintiffs lack standing and have failed to state a claim upon which relief can be granted as to each cause of action.[6] [Doc. 119.] Plaintiffs filed a response on October 26, 2023 [Doc. 122], and Defendants filed a reply on November 2, 2023 [Doc. 124]. On December 6, 2023, the Magistrate Judge issued her Pending Report recommending that the motion to dismiss be granted in part and denied in part. [Doc. 139.]

After this case was reassigned to the undersigned, this Court held a status conference on November 1, 2024, to discuss any legal or factual developments that would impact the Court's ruling on Defendants' motion to dismiss. [Docs. 168; 169.] Following

---

should find that the instant Complaint fails to state a claim for relief, nor have they represented to the court that they can plead other facts that would cure the deficiencies identified herein.

[Doc. 99 at 25.]

[6] Defendants also again argue that Plaintiffs cannot collaterally attack the DOJ settlement. [Doc. 119 at 29–31.]

the status conference, the parties filed supplemental authority on November 6, 2024 [Docs. 171; 172], and replies to the supplemental authority on November 11, 2024 [Docs. 174; 175]. Plaintiffs filed a status report on November 12, 2024, advising the Court as to which juveniles identified in the Amended Complaint were still housed at DJJ [Doc. 176], and Defendants filed a reply to Plaintiffs' status report on November 15, 2024 [Doc. 180].

## APPLICABLE LAW

**Rule 12(b)(1) Standard**

A challenge to standing "implicates this Court's subject matter jurisdiction and is governed by Rule 12(b)(1)." *Crumbling v. Miyabi Murrells Inlet, LLC*, 192 F. Supp. 3d 640, 643 (D.S.C. 2016). Article III of the United States Constitution limits the jurisdiction of federal courts to deciding only actual "cases" and "controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). The doctrine of standing sets apart those "cases" and "controversies" that are of the justiciable sort referenced in Article III. *Id.* at 560. "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

"To establish injury in fact, a plaintiff must show that he . . . suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotation marks omitted). "For an injury to be particularized, it must affect the plaintiff in

a personal and individual way." *Id*. (internal quotation marks omitted). For an injury to be concrete, the Supreme Court has "emphasized repeatedly" that it "must be concrete in both a qualitative and temporal sense. The complainant must allege an injury to himself that is distinct and palpable, as opposed to merely abstract." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (alteration, internal quotation marks, and citation omitted).

When the plaintiff is an organization, it can satisfy the standing requirements of Article III through either organizational standing or associational standing. *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005). Under organizational standing, the organizational plaintiff has standing to redress injuries directly inflicted on the organization, whereas under associational standing, the organizational plaintiff has standing to sue as a representative for one of its members to seek redress for the member's injury.[7] *Id*.

**The Rule 12(b)(6) Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted. When considering

---

[7] The United States Supreme Court has suggested that standing as a representative of an organization's members is known as "representational standing or organizational standing." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023). However, to maintain consistency and avoid confusion with the organizational standing versus associational standing distinction used in this case in previous Reports and Orders, the Court will maintain the nomenclature traditionally used by this Court and courts within this Circuit. *See, e.g.*, *People for Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Md., Inc.*, 843 F. App'x 493, 495 (4th Cir. 2021) (stating that an organization "can assert standing in its own right to seek judicial relief for injury to itself . . . [which is] referred to as organizational standing"); *White Tail Park*, 413 F.3d at 459 n.3 ("We have generally labeled an organization's standing to bring a claim on behalf of its members 'associational standing.'"); *Defs. of Wildlife v. Boyles*, 608 F. Supp. 3d 336, 342 (D.S.C. 2022). Thus, as used here, "organizational standing" refers to an organization's standing based on injuries suffered by the organization itself

a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  Even so, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference.  *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31–32 (4th Cir. 1985).  If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(d).

As for well pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

---

and "associational standing" refers to standing based on harm suffered by a member whom the organization represents.

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

## DISCUSSION

**The Magistrate Judge's Recommendations and the Parties' Objections**

The Magistrate Judge concluded that Justice 360 has organizational standing and that Disability Rights has associational standing, but recommends that Defendants'

motion to dismiss be (a) granted with respect to Plaintiffs' organizational claims, (b) granted with respect to Plaintiffs' associational claims brought under the ADA, Rehabilitation Act, and IDEA, and (c) denied with respect to Plaintiffs' associational claims brought under § 1983.[8]  [*See* Doc. 139.]  Defendants object to the Magistrate Judge's conclusion that Justice 360 has organizational standing and that Disability Rights has associational standing, and object to the Pending Report's recommendation that Plaintiffs' associational claims based on § 1983 be permitted to move forward.  [Doc. 144.]  Plaintiffs object to the Magistrate Judge's recommendation that their claims based on organizational standing and their associational claims brought under the ADA, Rehabilitation Act, and IDEA be dismissed.  [Doc. 145.]

**Standing**

The Court will first address the standing issue.  *See Garey v. James S. Farrin, P.C.,* 35 F.4th 917, 921 (4th Cir. 2022) ("Because standing is a threshold jurisdictional question, we address it first." (cleaned up)).  As noted, to establish organizational standing, the organizational plaintiff must plead injuries directly inflicted on the organization, whereas under associational standing, the organizational plaintiff has standing to sue as a representative for one of its members to seek redress for the member's injury.  *White Tail Park*, 413 F.3d at 458; *see also S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir.

---

[8] Additionally, the Magistrate Judge disagreed with Defendants that this case should be dismissed because it is a "collateral attack" on the DOJ Settlement.  [Doc. 139 at 25–26.]  No party has objected to this finding by the Magistrate Judge.  Having reviewed the Pending Report and the applicable law regarding this issue, the Court finds no clear error.  Thus, the Court accepts the Magistrate Judge's conclusion and incorporates this portion of the Pending Report by reference.

2013).  A plaintiff must establish standing as to "each claim" presented and "each form of relief" sought.  *Davis v. FEC*, 554 U.S. 724, 734 (2008) (internal quotation marks omitted).

The Court, therefore, must determine whether any of the Plaintiffs has demonstrated organizational standing and/or associational standing.  *See Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014) ("[T]he Supreme Court has made it clear that 'the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.'" (quoting *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006))).

### *Organizational Standing*

The Magistrate Judge concluded in the Pending Report that Justice 360 has organizational standing, explaining that because Judge Lewis already determined that Justice 360 has organizational standing and the Amended Complaint only *adds* allegations about the harm purportedly suffered by the Plaintiff organizations, there is no need for the Court to revisit the issue of organizational standing as to any of the Plaintiffs. [Doc. 139 at 8–9.]

In their objections, Defendants argue that "[f]acts on the ground have changed" and the Magistrate Judge "erred by not reexamining this jurisdictional issue," contending that Plaintiffs' new allegations "yield a different conclusion" as to organizational standing. [Doc. 144 at 17–20.]  Specifically, Defendants argue that Justice 360's allegations that it is directly harmed because (1) its resources are diverted and its mission frustrated, and (2) it has had to divert some of its time and attention away from education and into trainings designed to improve conditions-related advocacy do not satisfy the standard for organizational standing set forth in *Havens Realty Corporation v. Coleman*, 455 U.S. 363,

379 (1982). [*Id*. at 19–20.] In *Havens Realty*, the Supreme Court held that a nonprofit organization had organizational standing to bring a claim under the Fair Housing Act because it alleged that the defendant's racial steering practices frustrated the organization's counseling and referral services and drained its resources. *Id*. at 369, 379. The Court reasoned that, a "concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes [organizational standing]." *Id*. at 379.

Additionally, Defendants argue that Justice 360 represents only three juveniles currently in DJJ custody, which undercuts Plaintiffs' allegations that Justice 360's resources are so negatively affected by the representations as to satisfy the *Havens Realty* standard. [Doc. 144 at 20–21.] Defendants also note that Justice 360 "does not allege that its mission has been significantly or perceptively impaired, causing a drain on its resources," but "merely says it has ha[d] to divert some of its time and attention away from education."[9] [*Id*. at 21 (internal quotation marks omitted).]

In reply, Plaintiffs argue that the Amended Complaint satisfies the *Havens Realty* standard by providing "over 60 paragraphs of detailed allegations demonstrating how Defendants' constitutional violations drain its resources and significantly undermine its organizational mission." [Doc. 152 at 18.] Plaintiffs also dispute Defendants' argument "that the magnitude of Justice 360's injuries is insufficient to assert organizational

---

[9] Because the Magistrate Judge did not analyze the remaining Plaintiffs' organizational standing, Defendants do not make specific objections regarding the other Plaintiffs but incorporate by reference their arguments regarding NAACP and Disability Rights's lack of organizational standing in their motion to dismiss and reply in support of their motion to dismiss. [Doc. 144 at 22 (citing Docs. 119 at 14–16; 124 at 4–5).]

standing" and argue that "other courts have recognized" that "Justice 360's alleged harms are perfectly sufficient to confer standing."  [*Id*. at 18–19 (citing *Torres v. U.S. Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1053 (C.D. Cal. 2019)).]

In a notice of supplemental authority filed November 6, 2024, Defendants notified the Court of a recent Supreme Court decision that addresses the question of organizational standing and limits the holding of *Havens Realty*.  [Doc. 171 at 1–3 (summarizing *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367 (2024).]  In *Hippocratic Medicine*, the Court held that the plaintiffs, medical advocacy associations that incurred costs opposing FDA's actions related to a certain prescription medication, lacked organizational standing to challenge the FDA's regulation of the medication because "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action."  602 U.S. at 394.  The Court distinguished *Havens Realty*, explaining that the defendant's actions in *Havens Realty* "directly affected and interfered with [the plaintiff's] core business activities" of operating a housing counseling service, whereas the medical associations failed to suffer "any similar impediment to [their] advocacy businesses."  *Id*. at 395.

The Court concludes that Plaintiffs have plausibly alleged that Justice 360 has organizational standing.[10]  Plaintiffs' allegations outline how the conditions at DJJ that

---

[10] Because the alleged organizational harm stems from the same alleged actions of Defendants, the Court analyzes all of Plaintiffs' claims together for standing purposes. *See Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 396 n.28 (E.D.N.Y. 2021) ("Because the alleged harm stems from the same actions (or non-actions) on the part of Defendants, the Court analyzes all of these claims . . . together for standing purposes." (cleaned up)).

Plaintiffs complain of cause Justice 360's "[j]uvenile clients [to] show up to attorney visits sleep-deprived, exhausted, and anxious" such that they "struggle to focus" when Justice 360's attorneys attempt to meet with them about their cases.  [Doc. 117 ¶ 238.]  Plaintiffs detail how the complained-of conditions significantly increase the time it takes Justice 360 to represent their juvenile clients, thereby hampering their mission by reducing the number of children Plaintiffs can represent.  [*See, e.g.*, *id*. ¶¶ 240–41, 243, 269, 278.] These allegations of how Defendants' actions impede Justice 360's efforts to help their clients and increase the resources Justice 360 is required to expend to do so are closely analogous to the allegations the *Havens Realty* Court held were sufficient to establish organizational standing.  *See* 455 U.S. at 379 (allegation that "Plaintiff HOME has been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services" and "has had to devote significant resources to identify and counteract the defendant's [*sic*] racially discriminatory steering practices" (internal quotation marks omitted)); *see also Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 396 (4th Cir. 2024) (concluding that organizational standing was established when the plaintiffs alleged that the defendants' complained-of "actions and inaction directly impact[ed] [the plaintiffs'] core organizational missions of election security and providing services aimed at promoting Republican voter engagement and electing Republican candidates for office" (internal quotation marks omitted)); *Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012) ("An organization may suffer an injury in fact when a defendant's actions impede its efforts to carry out its mission.").

***Associational Standing***

<u>The Magistrate Judge's Analysis and the Parties' Arguments</u>

As for associational standing, the Magistrate Judge concluded in the Pending Report that Disability Rights has associational standing because the Amended Complaint sufficiently alleges that Disability Rights has nine identifiable juvenile constituents who are incarcerated at DJJ.[11]  [Doc. 139 at 10–14.]  Acknowledging that the Fourth Circuit has not yet decided whether P&A organizations such as Disability Rights have sufficient indicia of membership to invoke associational standing and that the courts that have addressed it are split on the issue, the Magistrate Judge cited a string of relevant cases, including two Eastern District of North Carolina cases conferring standing, and concluded that Disability Rights's constituents have sufficient indicia of membership to invoke associational standing.  [*Id*. at 12–13 (citing, among others, *Wilson v. Thomas*, 43 F. Supp. 3d 628, 632 (E.D.N.C. 2014); *Disability Rts. N.C. v. N.C. State Bd. of Elections*, No. 5:21-CV-361-BO, 2022 WL 2678884, at *2 (E.D.N.C. July 11, 2022)).]  The Magistrate Judge further concluded that "protecting the conditions in which children with mental illness are incarcerated is germane to Disability Rights's statutory authority to pursue legal, administrative, or other appropriate remedies or approaches to ensure the

---

[11] As noted in the Pending Report, Justice 360 has no members and does not assert associational standing, and NAACP does not appear to assert associational standing based on the Amended Complaint.  [Doc. 139 at 10 n.3.]  Neither party objects to this finding.  [*See generally* Docs. 144; 145.]

protection of, and advocacy for, the rights of individuals with disabilities." [*Id*. at 14 (internal quotation marks omitted).]

In their objections, Defendants first argue that the United States Supreme Court's decision in *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009), forecloses Plaintiffs from asserting associational standing here. [Doc. 144 at 6–13.] Specifically, Defendants contend that Plaintiffs did not *identify* their constituents under *Summers* because they did not actually *name* the protected members in the Amended Complaint. [*Id*. at 7–10.] Defendants also argue that the Magistrate Judge erred in her associational standing analysis by recommending that the Court find that Disability Rights plausibly alleged the requisite indicia of membership despite the split of authority on the issue. [*Id*. at 13–14.] Finally, Defendants argue that the juveniles' individual participation in this case is required here and that the Magistrate Judge's recommendation on this point contradicts the First Report. [*Id*. at 11–12.]

<u>Discussion</u>

The doctrine of associational standing does not concern any direct injury to the organization, but rather allows organizations, when the requirements of associational standing are established, to bring an action on behalf of their members "in a representational capacity," *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 345 (1977), by "assert[ing] the standing of their members," *Summers*, 555 U.S. at 494; *see United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996) (observing that the injury-in-fact requirement of the *Hunt* test for associational standing is "an Article III necessity for an association's representative suit"). To establish associational standing, an organization must show that: (1) its members would otherwise

17

have standing to sue as individuals; (2) the interests at stake are germane to the group's purpose; and (3) neither the claim made nor the relief requested requires the participation of individual members in the suit.  *Hunt*, 432 U.S. at 343.

Only the first prong is meaningfully at issue in this case.[12]  The threshold questions raised by Defendants related to the first prong are whether Disability Rights (a) has members and (b) has sufficiently identified those members in its Amended Complaint.  As the Magistrate Judge explained, Disability Rights does not have members in the traditional sense but serves constituents who have mental illnesses and are receiving care or treatment in South Carolina.  [Doc. 139 at 10–11.]  An organization that does not have traditional members may have associational standing to bring claims on behalf of its constituents if the constituents "possess all of the indicia of membership in an organization."  *Hunt*, 432 U.S. at 344.  Although there is a split of authority on the narrow question of whether P&A organizations have sufficient indicia of membership to invoke

---

[12] Defendants do not appear to object to the Magistrate Judge's conclusion that the second prong of the *Hunt* test has been met.  [*See generally* Doc. 144 at 6–14.]  Further, personal participation of Disability Rights's constituents is not required under the third prong because Plaintiffs seek only prospective injunctive relief.  *See United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 546 (1996) ("[I]ndividual participation is not normally necessary when an association seeks prospective or injunctive relief for its members." (internal quotation marks omitted)).  Defendants appear to argue that the Magistrate Judge's finding that personal participation of Disability Rights's constituents is not necessary here contradicts her First Report.  [Doc. 144 at 11.]  However, the portion of the First Report quoted by Defendants [*see* Doc. 45 at 20] does not address whether personal participation is necessary when an organization seeks only injunctive relief.  Rather, the quote from the First Report addresses only Plaintiffs' earlier—and now irrelevant—argument that the Court should assume imminent injury on behalf of their members despite their failure to allege specific facts showing that their constituents have standing to bring claims.  [*See id*.]  Thus, the Court overrules this objection and concludes that the third prong has been met.

associational standing,[13] the facts alleged here support the conclusion that Disability Rights's constituents have sufficient indicia of membership. Disability Rights is South Carolina's P&A and Client Assistance Program as defined by the PAIMI. [Doc. 117 ¶ 293.] Under the PAIMI, Disability Rights is "responsible for pursuing administrative, legal, and other appropriate remedies on behalf of all individuals with mental illness who are receiving care or treatment" in the state. [*Id.* ¶ 295 (internal quotation marks omitted).] Further, the PAIMI requires that Disability Rights's board "includes significant representation of individuals with mental illness who are or have been eligible for services, or who have received or are receiving mental health services, and family members, guardians, advocates, or authorized representatives of such individuals." [*Id.* ¶ 297 (internal quotation marks omitted).] The Court concludes that these requirements under the PAIMI connote the "indicia of membership" required for associational standing under *Hunt*. *See, e.g.*, *Stincer*, 175 F.3d at 884 ("The very purpose of [the P&A statute is] to

---

[13] *Compare Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1111 (9th Cir. 2003) (concluding that the "constituents" of Oregon's P & A system "possess many indicia of membership— enough to satisfy the purposes that undergird the concept of associational standing: that the organization is sufficiently identified with and subject to the influence of those it seeks to represent as to have a personal stake in the outcome of the controversy" (internal quotation marks omitted)), *and Doe v. Stincer*, 175 F.3d 879, 886 (11th Cir. 1999) (concluding that the requirements under the PAIMI ensure that "[m]uch like members of a traditional association, the constituents of the [P & A system] possess the means to influence the priorities and activities the [system] undertakes"), *with Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994) (concluding that Texas's P & A system bore "no relationship to [a] traditional membership group[ ], because most of its 'clients' . . . are unable to participate in and guide the organization's efforts"), *and Mo. Prot. & Advoc. Servs., Inc. v. Carnahan*, 499 F.3d 803, 810 (8th Cir. 2007) (concluding same with respect to Missouri's P & A system).

confer standing on [P&A] systems . . . as representative bodies charged with the authority to protect and litigate the rights of individuals with mental illness.").

Defendants further argue that *Summers* requires Plaintiffs to provide the specific names of each of its harmed members to assert associational standing. [Doc. 144 at 6–10.] The Court disagrees. Although *Summers* provides that "plaintiff-organizations [must] make specific allegations establishing that at least one identified member had suffered or would suffer harm," 555 U.S. at 498, Disability Rights's descriptions of its constituents, designated as "Child 1, Child 2," etc., are sufficient to "identify" its harmed members at this stage, *see, e.g.*, *S.C. State Conf. of NAACP v. Alexander*, No. 3:21-cv-03302-JMC, 2022 WL 453533, at *3 (D.S.C. Feb. 14, 2022) (rejecting argument that the NAACP must name its affected members to survive a motion to dismiss claiming the plaintiffs lacked standing). Further, as the Magistrate Judge explained in more detail, the Amended Complaint gives examples of the ways the nine identified children have been exposed to alleged constitutional and statutory violations arising out of their conditions of confinement. [Doc. 139 at 13; *see* Doc. 117 ¶¶ 301–29.] For this same reason, the Court concludes that the first prong of the *Hunt* test is met because Plaintiffs have sufficiently alleged constitutional and statutory violations for which Disability Rights's constituents would have standing to sue as individuals.[14] Therefore, for the reasons discussed above, the Court concludes that Disability Rights has associational standing as to Plaintiffs' constitutional and statutory claims based on the facts alleged in the Amended Complaint.

---

[14] The Court notes that both parties have provided supplemental authority on the issue of whether *Summers* requires an organizational plaintiff to identify its injured members by name [*see* Docs. 171 at 3–4; 172 at 1–2] but concludes that these additional cases do not change its analysis.

***Mootness of Plaintiffs' Associational Standing Claims***

On November 12, 2024, at the Court's request, Plaintiffs filed a status report notifying the Court that out of the 13 children identified in the Amended Complaint, only Child 1 and Child 4—two of Justice 360's clients—remain in DJJ custody. [Doc. 176 at 1; *see* Doc. 117 ¶¶ 245, 272.] As such, none of Disability Rights's identified constituents are currently in DJJ custody. [*Id.*] This development creates the possibility that the claims based on associational standing are now moot. Although Defendants have not argued for dismissal based on mootness, "[b]ecause mootness implicates [a court's] Article III jurisdiction," the Court has "an obligation to address it sua sponte." *Wild Va. v. Council on Env't Quality*, 56 F.4th 281, 292 (4th Cir. 2022).

While "standing is measured at the time suit is filed," *Columbia Cas. Co. v. McCabe Trotter & Beverly, PC*, No. 2:20-cv-3680-DCN, 2021 WL 2337188, at *3 (D.S.C. June 8, 2021), "[m]ootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)," *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (internal quotation marks omitted). *But see Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (noting some differences between standing and mootness). The doctrine of mootness prevents the Court "from advising on legal questions when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Eden, LLC v. Justice*, 36 F.4th 166, 169 (4th Cir. 2022) (internal quotation marks omitted). In other words, "federal courts may not opine on the merits of a case when doing so would have no practical effect on the outcome of the matter." *Holloway v. City of Va. Beach*, 42 F.4th

266, 275 (4th Cir. 2022) (internal quotation marks omitted).  This limit applies "throughout the course of litigation, to the moment of final appellate disposition."  *Catawba Riverkeeper Found. v. N.C. Dep't of Transp.*, 843 F.3d 583, 588 (4th Cir. 2016) (internal quotation marks omitted).

There is no uniform approach among the Circuits—and the Fourth Circuit has not yet weighed in—concerning whether an organization's associational standing claim becomes moot when the members upon whom the claims are based cease to have a live case or controversy.  *See Circuit Approaches to Mootness in the Associational-Standing Context*, 136 Harv. L. Rev. 1434 (2023).  The relevant case law on this issue is not well developed.  Courts have approached the issue with varying levels of flexibility in their application of the mootness doctrine to associational claims, and the precise principles underlying many of these decisions are unclear.  *See id.* at 1437–45 (collecting cases). Nonetheless, the Court is persuaded that the proper approach is that identified in *Munsell v. Department of Agriculture*, 509 F.3d 572 (D.C. Cir. 2007), where the court held that "[a]n association has standing only if . . . at least one of its members would have standing to sue in his own right," and that it therefore follows that if an organization seeks to appear on behalf of an individual or company with standing to sue and the individual's claims become moot, the organization's claims are moot as well.  *Id.* at 584 (internal quotation marks omitted); *see also Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of City of Milwaukee*, 708 F.3d 921, 930–33 (7th Cir. 2013) (declining to apply the "continuing and brooding presence" mootness exception and holding that the organizational plaintiff's claims were moot because its member who had standing to sue in her own right no longer had a redressable claim).

This approach is in line with the purpose of Article III and the Supreme Court's justiciability doctrine. *See Summers*, 555 U.S. at 492 ("In limiting the judicial power to 'Cases' and 'Controversies,' Article III of the Constitution restricts it to the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law."). With none of Disability Rights's identified juveniles still in a position to have their injuries redressed by the relief sought in this case, there is no longer a live controversy and Disability Rights thus has no one to represent. *See Chamber of Com. of the U.S. v. EPA*, 642 F.3d 192, 207 (D.C. Cir. 2011) ("If [the association] has standing, it is only because at least one of the [two identified members] has standing, and if the claims of both are moot, then [the association's] claims are moot as well." (internal citation omitted)); *see also Pro. Helicopter Pilots Ass'n Loc. 102 v. U.S. Dep't of the Army*, No. 1:13-CV-164-WKW, 2013 WL 6837555, at *6 (M.D. Ala. Dec. 26, 2013) ("Because the [organization's] associational standing hinges on the standing of its individual members, the later mooting of its members' claims also moots [the organization's] claims." (footnote omitted)). The possibility that some of Disability Rights's unidentified juveniles may be similarly harmed is insufficient to support a live claim, as establishment of a controversy depends upon specific allegations of identified members. *Cf. Summers*, 555 U.S. at 497–98 (rejecting the proposition that an organization could establish associational standing by showing "a statistical probability that some of [its] members are threatened with concrete injury" and concluding that sanctioning that "novel approach to the law of [associational] standing would make a mockery of [the Supreme Court's] prior cases, which have required plaintiff-

organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm").

Nor do Plaintiffs' claims based on associational standing fit into any recognized exceptions to the mootness doctrine. Specifically, they do not fit into the "capable of repetition, yet evading review" exception that several courts have applied in employing a more flexible approach to the mootness doctrine in the associational standing context. *See, e.g.*, *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1342–43 (11th Cir. 2014). That exception applies only if "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (internal quotation marks omitted). The Fourth Circuit has recognized that this exception is "a narrow one, reserved for 'exceptional' circumstances." *Int'l Brotherhood of Teamsters, Loc. Union No. 639 v. Airgas, Inc.*, 885 F.3d 230, 237 (4th Cir. 2018) (citation omitted).

In considering the applicability of this exception, the Court notes again that it is the live controversy between the identified members of the organization and the defendant that is the basis for an organization's associational standing—the organization's role is only as a representative of the members who themselves have standing. *Summers*, 555 U.S. at 494. For that reason, the Court concludes that faithfulness to the "same complaining party" requirement demands that the "capable of repetition, yet evading review" exception applies only when there is a reasonable expectation that one of the identified juveniles will be subject to the same action again. *See Circuit Approaches to Mootness in the Associational-Standing Context*, 136 Harv. L. Rev. at 1446–48. In this

case, there is no basis for a reasonable expectation that any of the identified juveniles will return to DJJ and thus be subject to the complained-of actions again. *See Incumaa v. Ozmint*, 507 F.3d 281, 289 (4th Cir. 2007) (holding that the "same complaining party" element of the "capable of repetition, yet evading review" exception was not satisfied when the prisoner plaintiff could have been subject again to the conditions he was challenging only if he violated prison policies and that it would be improper for the court to "forecast bad behavior" by the plaintiff); *Slade v. Hampton Rds. Reg. Jail*, 407 F.3d 243, 249 (4th Cir. 2005) (finding plaintiff's claim moot and holding that "because we presume that [the plaintiff pretrial detainee] will abide by the criminal laws of Virginia in the future, we do not believe there is a reasonable probability he will return to the Jail as a pretrial detainee").

Plaintiffs' claims also do not fit within the exception to the mootness doctrine providing that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982); *see also United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) ("[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot."). There is no indication here that the release of any of the identified juveniles was part of an effort by Defendants to moot this case. Accordingly, the removal of these juveniles does not constitute the "kind of 'voluntary cessation' that the exception covers," *Incumaa*, 507 F.3d at 288, and thus this exception does not save Plaintiffs' claims from mootness.

In sum, with none of Disability Rights's identified juveniles remaining in DJJ custody, Plaintiffs' claims based on associational standing no longer present a live controversy, and with no exception to the mootness doctrine applicable, the claims based on associational standing must be dismissed.

**Plaintiffs' Section 1983 Claims Based on Organizational Standing**

Having concluded that only Plaintiffs' claims based on organizational standing continue to present a live controversy, the Court now turns to the merits of those claims.[15] Section 1983 is "not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks omitted). To state a claim upon which relief can be granted under § 1983, Plaintiffs must allege: (1) that their rights secured by the Constitution or laws of the United States were violated, and (2) that the alleged violations were committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Relevant to Plaintiffs' § 1983 claims, the Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Supreme Court has held that the Fourteenth Amendment's substantive protections apply to those who are involuntarily committed by the State. *See Youngberg v. Romeo*, 457 U.S. 307, 315 (1982)

---

[15] The Pending Report recommends that all of Plaintiffs' organizational standing claims be dismissed under Rule 12(b)(6), [*see* Doc. 139 at 15–16], but Plaintiffs object to the Pending Report's findings only as to the § 1983 claims [*see* Doc. 145 at 9–18]. Having reviewed the Pending Report and the applicable law regarding Plaintiffs' statutory organizational standing claims, the Court finds no clear error. Thus, the Court accepts the Magistrate Judge's conclusion and incorporates this portion of the Pending Report by reference.

(stating that a person involuntarily committed to a state mental institution is not deprived of all substantive liberty interests under the Fourteenth Amendment merely because he was committed under proper procedures).  This Court has recognized that the Due Process Clause guarantees to juveniles who are in custody "the right to reasonably safe conditions of confinement, freedom from unreasonable bodily restraint, and minimally adequate training to protect those interests." *Alexander S. By & Through Bowers v. Boyd*, 876 F. Supp. 773, 797–98 (D.S.C. 1995).

The safety guaranteed by the Due Process Clause is a right to reasonable protection from the aggression of other juveniles and staff.  *Id*. at 798.  Freedom from unreasonable bodily restraint includes freedom from unduly restrictive conditions of confinement that are not reasonably related to the legitimate security or safety needs of the institution.  *Id*. at 798.  The minimally adequate training required can generally be defined as training that is reasonable in light of the identifiable liberty interests and the circumstances of the case. *See Youngberg*, 457 U.S. at 319 & n.25.  In other words, the hallmark of the Due Process Clause's protection is the reasonableness of the State's methods of protecting the juveniles, but the Court must show deference to the judgment of professionals who administer the facility, and federal intrusions into the operation of state institutions should be minimized.  *Id*. at 322–23.

As discussed above, a claim based on organizational standing seeks to vindicate the rights of the organization itself, whereas a claim based on associational standing is brought on behalf of its members. *White Tail Park*, 413 F.3d at 458.  The Pending Report concluded that Plaintiffs have failed to state a § 1983 claim based on organizational standing because, as with their Original Complaint, the Amended Complaint does not

allege that the Plaintiff organizations were deprived of their own constitutional or statutory rights. [Doc. 139 at 15–16.] Specifically, the Magistrate Judge reasoned that for each cause of action, the Amended Complaint asserts that DJJ is violating the rights of "South Carolina youth" or of "the children in the custody of DJJ" but does not allege that Plaintiffs seek to vindicate the rights of the organizations themselves. [*Id*. at 16 (internal quotation marks omitted).]

In their objections, Plaintiffs contend that they have adequately alleged that the organizations themselves have been injured by alleging that the organizations' missions have been frustrated and the organizations have been compelled to divert resources as a "direct consequence of the unconstitutional conditions" in DJJ facilities. [Doc. 145 at 9–10 (citing Doc. 117 ¶¶ 231–91).] As examples, Plaintiffs point to their allegations that Disability Rights's ability to visit DJJ facilities has been frustrated and children have been assaulted as "snitches" after they meet with Disability Rights staff.[16] [*Id*. at 10 (citing Doc. 117 ¶ 299).]

The Court overrules Plaintiffs' objections. Although Plaintiffs allege that they have suffered diversions of resources and frustrations of purpose because of Defendant Hendrick's alleged unconstitutional treatment of children at DJJ, they have failed to allege how their *own* Fourteenth Amendment rights have been violated. "[T]o state a civil rights

---

[16] Plaintiffs further argue that the Pending Report is contradictory in concluding that they adequately allege organizational harm under Rule 12(b)(1) but not under Rule 12(b)(6). [Doc. 145 at 11.] The Court disagrees, as motions raised pursuant to Rules 12(b)(1) and 12(b)(6) are governed by different legal standards. *See, e.g.*, *Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which [the plaintiffs] could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.").

claim upon which relief can be granted under [Section] 1983, one must allege that he, himself, sustained a deprivation of a right, privilege or immunity secured to him by the Constitution and laws of the United States."[17]  *Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977).

Therefore, for the reasons discussed above, the Court grants Defendants' motion to dismiss Plaintiffs' claims based on organizational standing.

<u>**CONCLUSION**</u>

Based upon the foregoing, the Court accepts in part and rejects in part the Report and Recommendation of the Magistrate Judge [Doc. 139] and incorporates it by reference as to Plaintiffs' claims based on organizational standing.  Defendants' motion to dismiss [Doc. 119] is GRANTED as to Plaintiffs' claims based on associational standing because they are moot and as to Plaintiffs' claims based on organizational standing because they fail to state a claim for relief, and the case is therefore DISMISSED without prejudice.

IT IS SO ORDERED.

<u>s/ Jacquelyn D. Austin</u>
United States District Judge

December 18, 2024
Columbia, South Carolina

---

[17] Plaintiffs also argue that their § 1983 claims fall within the "zone of interests" protected by the Fourteenth Amendment and § 1983.  [Doc. 145 at 9 n.1, 11–18.]  Because the Court accepts the Magistrate Judge's recommendation that Plaintiffs have failed to allege a deprivation of their own constitutional or statutory rights, it need not analyze Plaintiffs' additional zone of interests argument.